## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 6:13-CV-00072-RWS |
| v. | § § | |
| HEWLETT-PACKARD COMPANY, HEWLETT-PACKARD ENTERPRISE COMPANY, | § § § § | |
| Defendants. | | |

## FINAL JURY INSTRUCTIONS

### 1.    Introduction

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

## 1.1    General Instruction

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date, and sign the form.

Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions to reach that result.  A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.  With respect to each question asked, your answers and your verdict must be unanimous.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess.  We met because often during a trial something comes up that does not involve the jury.  You should not speculate on what was discussed during such times.

## 1.2    Considering Witness Testimony

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified

falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

## 1.3    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition.  Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.   Deposition testimony is entitled to the same

consideration as testimony given by a witness in person from the witness stand. Accordingly, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness to be more credible.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. It is your job to decide how much weight to give the direct and circumstantial evidence. As a general rule, the law makes no distinction between direct and circumstantial evidence, nor does it say that one is any better evidence than the other,

but simply requires that you find the facts from all the evidence, both direct and circumstantial.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness. Demonstrative exhibits are not evidence. They are a party's picture or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

## 1.4    Objections to Evidence

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence.

So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

## 1.5    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field (he or she is called an expert witness) is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to decide whether the witness's testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it.  In deciding whether to accept or rely upon the opinion of an expert witness, you may consider the reasons given for the opinions, the witness's education and experience, the other evidence in the case, and any bias of the witness.

## 2.    Contentions of the Parties

I will first give you a summary of each side's contentions in this case.  I will then tell you what each side must prove to win on these issues.

As I previously told you, Network-1 contends that HP has infringed claims 6, 13, 14, 17, 20, and 22 of U.S. Patent No. 6,218,930 ("the '930 patent") by making, using, selling, and offering to sell products that provide or use power transferred through Ethernet cables.  HP denies that it infringes the asserted claims.  HP also contends that each claim asserted against it is invalid.  HP contends that Network-1 is not entitled to damages for infringement.  HP further contends that Network-1

breached its contract to license the '930 patent on reasonable and non-discriminatory terms.

Your job is to decide whether the asserted claims have been infringed by HP and whether any of the asserted claims are invalid. Infringement and invalidity are separate questions and should be considered and answered separately. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Network-1 as compensation for the infringement. If you decide that Network-1 breached its contract to license the '930 patent on reasonable and non-discriminatory terms, you will then need to decide any money damages to be awarded to HP as compensation for the breach.

## 3.    Burdens of Proof

In any lawsuit, facts must be proved by a required amount of evidence, known as the "burden of proof." As I mentioned at the beginning of the trial, there are two burdens of proof that you will apply in this case: preponderance of the evidence and clear and convincing evidence. Beyond a reasonable doubt is the burden of proof or standard used in a criminal case, and it has no application in a civil case such as this.

The burden of proof is on Network-1 for its patent infringement claims. Network-1 has the burden of proving infringement and damages by a preponderance of the evidence. Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true.

The burden of proof is on HP for its breach of contract claim. HP has the burden of proving breach of contract by a preponderance of the evidence.

As an issued patent, the '930 patent is presumed to be valid. HP has the burden of proving invalidity of the '930 patent by clear and convincing evidence. Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by a preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider any stipulations as to facts, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

## 4.     The Patent Claims

Before you can decide many of the issues in this case, you will need to understand the role of the patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the

patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends on what its claims cover. You will first need to understand what the asserted claims cover in order to decide whether or not there is infringement.

The law says that it is the Court's role to define the terms of the claims and it is your role to apply these definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms at issue in this case. I have provided to you the definitions of these terms in your juror notebook. You must accept the definitions of these words in the claims as being correct. You should not take the definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide. The meaning of the word in the patent must be the same when deciding both infringement and invalidity. It is your job to take these definitions and apply them in deciding the issue of infringement. The claim language I have not interpreted for you in your notebook is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

## 4.1    How a Patent Claim Defines What It Covers

I will now explain how a patent claim defines what it covers.

A claim sets forth, in words, a set of requirements.  Each claim sets forth its requirements in a single sentence divided into parts or steps.  If a method or device satisfies each of these requirements, then it is covered by the claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."  In this case, the asserted claims are claims 6, 13, 14, 17, 20, and 22 of the '930 Patent.

Claims 6, 13, 14, 17, and 20 are method claims and recite a patented method. To infringe one of the method claims (claims 6, 13, 14, 17, or 20), each of the elements or "steps" of the method must be performed. If less than all steps of a claim are performed then that claim is not infringed.

Claim 22 is an apparatus claim. When a thing (such as a product, process, or system) meets all of the requirements of an apparatus claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim.  In other words, an apparatus claim covers a product, process, or system where each of the claim elements or limitations is present in that product, process, or system. Conversely, if the product, process, or system meets only some, but not all, of the claim elements or limitations, then that product, process, or system is not covered by the claim.

## 4.2    Independent and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. An independent claim sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, asserted claims 6, 20, and 22 are independent claims.

This case also involves dependent claims. Claims 13, 14, and 17 are dependent claims.

A dependent claim includes each of the requirements of the independent claim to which it refers and one or more additional requirements. In this case, for example, claim 13 of the '930 patent depends from claim 6 of the '930 patent. In this way the claim "depends" on another claim. The dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.

If you decide that the independent claim has been infringed, you must then separately determine whether each additional requirement of the dependent claim has also been included in the accused process. If each additional requirement has been included then the dependent claim has been infringed. Conversely, if the

Defendant's product or process omits any additional requirement recited in Plaintiff's asserted patent claims, Defendant does not infringe that claim.

## 4.3   Open-Ended or "Comprising" Claims

The beginning portion of the claims is called the preamble. In this case the preamble of each asserted claim uses the word "comprising." "Comprising" means "including but not limited to" or "containing but not limited to." Thus, if you decide that all of the steps or elements in the asserted claim have been performed or covered by a product, process, or system, then the claim is infringed. This is true even if steps or elements in addition to the ones recited in the claim are also performed or present in the product, process, or system.

## 5.   Infringement – Generally

Patent law gives the owner of a patent the right to exclude others from importing, making, using, offering to sell, or selling the patented invention. Any person or business entity that has engaged in any of those acts without the patent owner's permission infringes the patent.

You can have more than one patent governing an area of technology, although it may relate to different aspects of that technology. I will now instruct you as to the rules you must follow when deciding whether Network-1 has proven that HP infringed the asserted claims.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the asserted patent claims, as I have defined them, to the accused products and acts of infringement and determine whether or not there is infringement.  You must not compare the accused products or methods with any specific example set out in the patents.  The only correct comparison is with the language of the claims themselves, with the meanings I have given you.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.  You must analyze each of the asserted claims separately and compare each accused method with each asserted claim.  Therefore, there may be infringement as to one claim but no infringement as to another claim in a patent.

## 5.1    Direct Infringement

### 5.1A   Direct Infringement – Literal

If any person makes, uses, offers to sell, or sells in the United States or imports into the United States what is covered by the claims of a patent without the patent owner's permission, that person is said to directly infringe the patent.  To determine direct infringement in this case, you must compare the accused products and methods with the asserted claims, using my instructions as to the meaning of the words of the claims.

A patent method claim is literally infringed only if the accused products or methods perform each and every element, or method step, of that patent claim.  If the accused products or method do not perform one or more of the elements, or steps, recited in a claim, then that claim is not infringed.

You must consider each of the Asserted Claims individually.  You must be certain to compare the accused products and method with each claim that is alleged to be infringed.   If you find that the accused products or methods perform each element of the claim, then that claim is infringed even if the accused products or methods contain or perform additional elements that are not recited in the claim.  However, if you find an element of the claim is not in the accused product or method, then there cannot be infringement.  To determine infringement, the accused products

and methods should be compared to the limitations recited in the patent claim, not to any preferred or commercial embodiment of the claimed invention.

A person or company may directly infringe a patent even though in good faith that person or company believes that what it is doing is not an infringement of any patent and even if it did not know of the patent. Direct infringement does not require proof that the patent was copied or that any product of the patent owner was copied.

If you find that Network-1 has proved by a preponderance of the evidence that each and every limitation of a claim is present in the accused products or methods, then you must find that such products or methods infringe that claim.

### 5.1B   Direct Infringement – Doctrine of Equivalents

If you decide that the accused products or methods do not literally infringe an Asserted Claim of the '930 patent, you must then decide whether it is more probable than not that the products or methods infringe the Asserted Claim under what is called the "doctrine of equivalents." Under the doctrine of equivalents, a product or method can infringe an Asserted Claim if it includes parts or steps that are equivalent to those elements of the claim that are not literally present in the product or method. If the product or method is missing an equivalent part to even one element of the Asserted Claim, the product or method cannot infringe that claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual element of the Asserted Claim and decide whether the

accused product or method has an equivalent part to the individual claim element(s) that are not literally present in the accused product or method. An equivalent of an element is a component or action that is insubstantially different from the claimed element. To show that an element is insubstantially different, Network-1 must show that it performs substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the element that is not literally present in the accused product or method. In deciding whether any difference between a claim requirement and the accused product or method is not substantial, you may consider whether, at the time of the alleged infringement, a person of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the product or method is not necessary to find infringement under the doctrine of equivalents. The law requires that such evidence be presented for each asserted claim on a limitation-by-limitation basis.

## 5.2    Indirect Infringement – Active Inducement of Infringement

Network-1 also alleges that HP has indirectly infringed the asserted claims by actively inducing someone else to directly infringe the asserted claims of the '930 patent. As with direct infringement, you must determine whether there has been indirect infringement by active inducement on a claim-by-claim basis.

HP is liable for active inducement of a claim if Network-1 proves the following by a preponderance of the evidence:

(1)   HP customers actually carried out acts that directly infringe the claim by using an accused HP product in a method that performed all of the steps of the claim;

(2) HP took action intending to cause the infringing acts by its consumers; and

(3) HP was aware of or willfully blind to the patent and knew that the acts by its consumers, if taken, would constitute infringement of the asserted claims of the '930 patent.

HP's intent and knowledge can be shown by circumstantial evidence but the mere knowledge of possible infringement will not suffice.   To prove willful blindness, Network-1 must prove by a preponderance of the evidence that HP knew there was a high probability that use of the accused products would infringe the '930 patent and that HP took deliberate actions to avoid learning of the infringement.

If you find that HP was aware of the patent, but believed that the acts it encouraged did not infringe that patent, HP cannot be liable for active inducement of infringement.   In order to establish active inducement of infringement, it is not sufficient that HP itself directly infringes the claim.   Nor is it sufficient that HP was aware of the act(s) by its consumers using the accused products that allegedly constitute the direct infringement.   Rather, in order to find active inducement of

infringement, you must find either that HP specifically intended its consumers using the accused products to infringe the '930 patent or that HP believed there was a high probability that its consumers using the accused products would infringe the '930 patent, but deliberately avoided learning the infringing nature of the acts of the consumers using the accused products.  The mere fact, if true, that HP knew or should have known that there was a substantial risk that the acts of its consumers using the accused products would infringe the '930 patent would not be sufficient for active inducement of infringement.  A belief that the patent is invalid is not a defense to induced infringement.

## 5.3     Indirect Infringement – Contributory Infringement

Network-1 alleges that HP is also liable for indirect infringement by contributing to the direct infringement by others of the asserted claims.  As with direct infringement, you must determine whether there has been contributory infringement on a claim-by-claim basis.

To prove contributory infringement of a claim, Network-1 must prove by a preponderance of the evidence the following:

(1)     HP sold or supplied to a customer in the United States a component of a product, or apparatus for use in a process, during the time the '930 patent was in force,

(2)     the component or apparatus had no substantial, non-infringing use;

(3)     the component or apparatus constituted a material part of the invention;

(4)     the customer's use of the component or apparatus directly infringed the claim of the '930 patent; and

(5)     HP was aware of the '930 patent, or was willfully blind to its existence, and HP knew that the products or processes for which the component or apparatus had no other substantial use may have been covered by a claim of the '930 patent; and

In order to prove contributory infringement, Network-1 must prove that each of the above requirements is met. HP's knowledge can be shown by circumstantial evidence. Willful blindness is established by showing that HP knew there was a high probability that the component was especially made or adapted for use in infringing a claim of the patent, and HP took deliberate actions to avoid learning of that fact.

If, however, you find that HP was aware of the '930 patent, but had a reasonable, good-faith belief that the acts it encouraged did not infringe the patent, HP cannot be liable for contributory infringement.

## 6.    Invalidity - Generally

I will now instruct you on the rules you must follow in deciding whether or not HP has proven by clear and convincing evidence that the claims of the '930 patent are invalid. Patent invalidity is a defense to patent infringement. For a patent

to be valid, the invention must be new, useful, and not obvious.  A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.

Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To be prior art, the item or reference must have been made, known, used, published, or patented either before the invention was made on March 10, 1999 or more than one year before the filing date of the patent application.

Validity is determined on a claim-by-claim basis.  If one claim of a patent is invalid, this does not mean any other claim is necessarily invalid.  The meaning of a claim term is construed the same way for determining infringement as for determining invalidity.

In making your determination as to invalidity, you should consider each claim separately.

## 6.1    Invalidity – Obviousness

HP contends that the asserted claims of the '930 patent are invalid as obvious. HP contends that the Fisher patents, the Fisher system, Woodmas, and Chang are prior art.

Even though an invention may not have been identically disclosed or

described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the relevant field of technology of the patent at the time the invention was made.

A patent claim is invalid if clear and convincing evidence shows that the claimed invention would have been obvious to persons having ordinary skill in the field of the invention at the time the invention was made.  In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that, as of the priority date of the patent, there was a reason that would have prompted a person of ordinary skill in the field of the invention to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known

problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient. In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on the obviousness or not of the claimed invention, such as:

(1) Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or

market-pressure advertising or similar activities);

(2) Whether the invention satisfied a long-felt need;

(3) Whether others had tried and failed to make the invention;

(4) Whether there were changes or related technologies or market needs contemporaneous with the invention;

(5) Whether others had skepticism about the invention or its likelihood of working;

(6) Whether the invention achieved unexpected results;

(7) Whether others in the field praised the invention;

(8) Whether persons having ordinary skill in the field of the invention expressed surprise or disbelief regarding the invention;

(9) Whether others sought or obtained rights to the patent from the patent holder; and

(10) Whether the inventor proceeded contrary to accepted wisdom in the field.

With regard to the secondary considerations that may be relevant to nonobviousness, there must be a connection or a nexus between the claimed invention and each secondary consideration regarding nonobviousness. Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

## 6.2    Corroboration

Oral testimony alone is insufficient to prove prior invention or that something is prior art.  A party seeking to prove prior invention or that something is prior art must provide evidence that corroborates a witness's oral testimony. Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the testimony has been corroborated.

If you find that the party has not corroborated a witness's oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.

If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:

- The relationship between the corroborating witness and the alleged prior user;
- The time period between the event and this trial;
- The interest of the corroborating witness in the subject matter of this suit;
- Contradiction or impeachment of the witness's testimony;
- Extent and detail of the corroborating witness's testimony;
- The witness's familiarity with the subject matter of the patented invention and the alleged prior use;

- Probability that a prior use could occur considering the state of the art at the time; and

- Impact of the invention on the industry, and the commercial value of its practice.

### 7.    Patent Infringement Damages – Generally

I will now instruct you on damages related to Network-1's claim for patent infringement.  If you find that HP has infringed any asserted claims of the '930 patent, you must determine the amount of money damages to which Network-1 is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail regarding alleged infringement of the patent claims.   These instructions are provided to guide you on the calculation of damages if you find the asserted claims of the '930 patent are valid and infringed.

If you find infringement,  the amount of damages must be adequate to compensate Network-1 for the infringement.   At the same time, your damages determination must not include additional sums to punish HP or to set an example.

In this case, Network-1 seeks damages in the form of a reasonable royalty.  A reasonable royalty is defined as the money amount Network-1 and HP would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

## 7.1    Patent Infringement Damages – Burden of Proof

Network-1 has the burden to prove the amount of damages by a preponderance of the evidence.  Network-1 must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision. Network-1 is not entitled to damages that are remote or speculative.  You should award only those damages that Network-1 establishes that it more likely than not suffered.

## 7.2    Patent Infringement Damages – Reasonable Royalty

If you find that any asserted claim of the '930 patent is both valid and infringed, then Network-1 is entitled to damages calculated as a reasonable royalty to compensate it for that infringement.  A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of money that a willing patent holder and a willing prospective licensee would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began.  In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and prospective licensee would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you

determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

### 7.3 Patent Infringement Damages – Reasonable Royalty Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner (Merlot Communications) and the licensee (HP) would consider in setting the amount the licensee should pay. I will list for you a number of factors you may consider. This is not every possible factor, but it will give you an idea of the kinds of things to consider in setting a reasonable royalty. As used in this list, the term "patented invention" refers to the infringed patent claim.

- The royalties received by the patent owner for licensing of the '930 patent, proving or tending to prove an established royalty.

- The rates paid by the licensee for the use of other patents comparable to the asserted patent.

- The nature and scope of the license, as exclusive or nonexclusive; or as restricted or non-restricted in terms of territory, or with respect to the parties to whom the product may be sold.

- The duration of the patent and the term of the license.

- The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

- The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the patent owner, and the benefits to those who have used the invention.

- The extent of the licensee's use of the patented invention and any evidence probative of that use.

- The portion of the profits that is due to the patented invention, as compared to the portion of the profit due to other factors, such as unpatented elements or unpatented manufacturing processes, or features or improvements developed by the licensee or others.

- The commitment by Merlot and Network-1 that they were "prepared to license an unrestricted number of applicants on a worldwide, non-discriminatory basis and on reasonable terms and conditions.

- Expert opinions as to what would be a reasonable royalty.

- The amount that the patent owner and the licensee would have agreed upon if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount that the infringer would have been willing to pay as a royalty and yet be able to make a reasonable profit and which

amount would have been acceptable to the patent owner if it would have been willing to grant a license.

For each of these factors, you should consider only the benefits, advantages, and value resulting from the patented technology itself, separate and apart from any benefits, advantages, and value from unpatented features of the product or from standardizing technology in an IEEE standard.  No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty.  You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties, whether that evidence is of a specific figure or range of figures.

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question, or for rights to similar technologies.  A license agreement need not be perfectly comparable to a hypothetical license that would be negotiated between the patent owner and the licensee in order for you to consider it.

However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically

negotiated license between the patent owner and the licensee when you make your reasonable royalty determination, including the type of technology licensed, whether the license contained a cross-license and/or similar patent protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use (if any) of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license, and whether, contrary to the hypothetical negotiation, the licensee in the real world license, at the time of entering the license, believed that the patent was either not infringed or was invalid. Damages for patent infringement must be apportioned to reflect the incremental value the invention contributes to the accused products or features and must not include value any other factors, products, features, patents, or technologies that are not attributable to the patent.

In determining damages, you should not consider the value of the IEEE 802.3af/at standard as a whole, or any value the patented technology gained by its inclusion in the standard. You may, however, consider any added value resulting from the superiority of the patented technology.

A product may have both infringing and non-infringing components. In such products, royalties should be based on the smallest salable unit that practices the

patent. Further, you may not award damages for the value of features or technologies within the smallest saleable unit that are unrelated to the claimed invention.  Where the smallest salable patent practicing unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature, damages must only be based on the portion of the value of that product attributable to the patented technology. This may involve estimating the value of a feature that may not have ever been individually sold.

## 7.4    Acceptable, Non-infringing Substitutes

In considering a reasonable royalty, you may also consider whether or not HP had a commercially acceptable non-infringing alternative to taking a license from the patent owner and whether that would have affected the reasonable royalty the parties would have agreed upon.  A non-infringing alternative must be an acceptable product or method that is licensed under the patent or that does not infringe the patent.

## 7.5    Patent Infringement Damages – Reasonable Royalty – Reasonable and Non-Discriminatory Terms

Merlot Communications and Network-1 committed to license the '930 patent on a worldwide, non-discriminatory basis and on reasonable terms and conditions to comply with the IEEE 802.3-2008 Standard including the 802.3af amendment and 802.3at amendment.  You must ensure that any damages award is consistent with and does not exceed the amount permitted under that obligation.  The parties dispute

whether or not the '930 patent is essential to the IEEE standard. By referring to standard essential patents, the Court is not instructing you that the '930 is actually essential to any standard. It is up to you, the jury, to decide whether or not the patent is standard essential.

If you conclude the patent is standard essential, you must ensure that your damages award reflects only the incremental value that the patented invention adds to the product, and not other aspects of the standard or the additional value that resulted from standardization. In other words, you may not consider the success of the standard itself in determining a reasonable royalty for the '930 patent.

Therefore, first, the patented feature must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented feature, not any value added by the standard's adoption of the patented technology. When a technology is incorporated into a standard, it is typically chosen from among different options. Once incorporated and widely adopted, that technology is not always used because it is the best or the only option; it is used because its use is necessary to comply with the standard. In other words, widespread adoption of a standard essential technology is not entirely indicative of the added usefulness of an innovation over the prior art.

To ensure that a royalty reflects the incremental value of the patented technology, you must consider the following two factors in setting a royalty:

1. Any royalty for the patented technology must be apportioned from the value of the standard as a whole; and

2. The royalty must be based on the value of the invention, not any value added by the standardization of that invention.

## 8.    Breach of Contract

HP counterclaims that Network-1 breached its contractual commitment to the IEEE by failing to offer to license the '930 patent on reasonable and non-discriminatory terms.  You must decide whether HP has proved its breach of contract counterclaim by a preponderance of the evidence.

The parties have stipulated to the following facts:

- a contract exists between former patent owner Merlot and the IEEE to license the '930 patent on the terms stated in Merlot's 2003 Letter of Assurance;

- Network-1 is bound by Merlot's Letter of Assurance;

- HP is a third-party beneficiary of the contract between Merlot and the IEEE; and

- the Letter of Assurance applies to the 802.3af and 802.3at standards.

To prove its breach of contract counterclaim, HP must prove by a preponderance of the evidence that:

(1) Network-1 failed to do something that the contract required it to do or did something that the contract prohibited it from doing, and

(2) HP was harmed by Network-1's breach.

## 9.    Breach of Contract – Damages

I will now instruct you on damages related to HP's counterclaim for breach of contract. If you decide that Network-1 has violated the 2003 Letter of Assurance, then you will need to decide whether Network-1's violation harmed HP by having to defend itself in this lawsuit. If so, then you may award HP nominal damages such as $1. By instructing you on this point, I do not suggest that one or the other party should prevail regarding HP's alleged breach of contract counterclaim

## Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. All persons, including corporations, and other organizations stand

equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations.  If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial.  After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on the notes.  Your notes are not evidence.  A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.  Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.  I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.  I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.