**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | |
| Plaintiff, | |
| vs. | CASE NO. 6:13-cv-072-RWS-KNM |
| | JURY TRIAL DEMANDED |
| HEWLETT-PACKARD COMPANY AND HEWLETT PACKARD ENTERPRISE COMPANY | **FILED UNDER SEAL** |
| Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND**
**MOTION FOR NEW TRIAL ON VALIDITY**

# TABLE OF CONTENTS

**Page**

I.     PLAINTIFF'S RENEWED REQUEST FOR JMOL SHOULD BE DENIED ................. 3

    A.     Legal Standard: JMOL Must Be Denied If There Is Sufficient Evidence to Support the Theory of Invalidity............................................................................... 3

    B.     The Fisher System is Prior Art....................................................................... 3

        1.     There is Substantial Evidence that the Fisher System was in Public Use. ............................................................................................ 4

        2.     The Fisher System Itself and Dr. Fisher's Patents Corroborate Dr. Fisher's Compelling Testimony ........................................................ 7

        3.     HP is Not Estopped from Asserting the Prior Art Combination.............. 11

    C.     The Remainder of Plaintiff's Motion Includes Grounds Not Preserved Under Rule 50(a).................................................................................................. 13

    D.     Substantial Evidence Exists for a Reasonable Jury to Conclude the Patent is Obvious ......................................................................................... 14

        1.     The Obviousness Combination Disclosed "Low-level current" ................................................................................................. 14

        2.     The Obviousness Combination Disclosed "Secondary Power Source" .................................................................................... 18

        3.     The Obviousness Combination Disclosed "Main Power Source".................................................................................................. 20

    E.     There is Substantial Evidence for a Reasonable Jury to Find a Motivation to Combine the Prior Art References ................................................. 21

    F.     Plaintiff's Reliance on Secondary Considerations of Non-Obviousness Does Not Overcome HP's prima facie Obviousness Evidence ........................... 25

II.    PLAINTIFF'S RULE 59 REQUEST FOR NEW TRIAL SHOULD BE DENIED.................................................................................................................26

    A.     The Jury's Verdict Is Supported by the Great Weight of Evidence .................... 27

    B.     The Fisher System was Properly Admitted ........................................................ 27

C.      Plaintiff's Late Complaints of Jury Confusion and Improper Closing Statements Lack Merit ........................................................................................... 28

      1.      The Cummings Patent was Properly Referenced During Closing in Conjunction with the Host of Prior Art Showing Early Detection Methods. ......................................................................... 29

      2.      Mr. Godici's Testimony was Properly and Accurately Included in Closing .............................................................................................. 29

III.      CONCLUSION ....................................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*Agrizap, Inc. v. Woodstream Corp.*,
  20 F.3d 1337 (Fed. Cir. 2008) ...................................................................................... 14, 25

*Alza Corp. v. Mylan Labs., Inc.*,
  464 F.3d 1286 (Fed. Cir. 2006) ......................................................................................... 21

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343, 1351 (Fed. Cir. 2001) ................................................................................ 16

*Ameranth, Inc. v. Menusoft Sys. Corp.*,
  No. 2:07-CV-271-RSP, 2011 WL 2110384 (E.D. Tex. May 26, 2011) ................................ 26

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*,
  2009 WL 886514, *2 (D. Ariz. 2009) ................................................................................. 17

*Barry v. Medtronic, Inc.*,
  230 F. Supp. 3d 630 (E.D. Tex. 2017) .................................................................................. 6

*Biscotti Inc. v. Microsoft Corp.*,
  No. 2:13-CV-01015-JRGRSP, 2017 WL 2526231 (E.D. Tex. May 11, 2017) ..................... 11

*Blackboard, Inc. v. Desire2Learn, Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ......................................................................................... 13

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
  No. 6:14-CV-251, 2016 WL 6884076 (E.D. Tex. Aug. 30, 2016) ....................................... 18

*Checkpoint Sys., Inc. v. All-Tag Sec. SA*,
  412 F.3d 1331 (Fed. Cir. 2005) ...................................................................................... 7, 27

*Clock Spring, L.P. v. Wrapmaster, Inc.*,
  560 F.3d 1317 (Fed. Cir. 2009) ........................................................................................... 5

*Computer Sys. Eng'g, Inc. v. Qantel Corp.*,
  740 F.2d 59 (1st Cir. 1984) ................................................................................................ 27

*Cordance Corp. v. Amazon.com, Inc.*,
  658 F.3d 1330 (Fed. Cir. 2011) ............................................................................... 3, 18, 26

*Dawson v. Wal-Mart Stores, Inc.*,
  978 F.2d 205 (5th Cir. 1992) .............................................................................................. 26

*Dresser-Rand Co. v. Virtual Automation, Inc.*,
    361 F.3d 831 (5th Cir. 2004) ............................................................................. 26

*Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*,
    464 F.3d 1356 (Fed. Cir. 2006) ......................................................................... 25

*Edwards v. Sears, Roebuck & Co.*,
    512 F.2d 276 (5th Cir. 1975) ............................................................................. 29

*Eli Lilly & Co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ........................................................................... 6

*Finnigan Corp. v. Int'l Trade Comm'n*,
    180 F.3d 1354 (Fed. Cir. 1999) ..................................................................... 9, 10

*Flowers v. S. Reg'l Physician Svcs., Inc.*,
    247 F.3d 229 (5th Cir. 2001) ............................................................................. 12

*Frazier v. Honeywell Int'l, Inc.*,
    518 F. Supp. 2d 831 (E.D. Tex. 2007) ................................................................. 3

*Galderma Labs., L.P. v. Tolmar, Inc.*,
    737 F.3d 731 (Fed. Cir. 2013) ........................................................................... 24

*Harrington Mfg. Co. v. Powell Mfg. Co.*,
    815 F.2d 1478 (Fed. Cir. 1986) ........................................................................... 5

*HP Inc. v. MPHJ Tech. Invs., LLC*,
    817 F.3d 1339 (Fed. Cir. 2016) ......................................................................... 11

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    No. CV 13-453-SLR, 2016 WL 7341713 (D. Del. Dec. 19, 2016) ...................... 12

*Int'l Ins. Co. v. RSR Corp.*,
    426 F.3d 281 (5th Cir. 2005) ............................................................................... 3

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*,
    751 F.3d 1327 (Fed. Cir. 2014) ......................................................................... 21

*JumpSport, Inc. v. Jumpking, Inc.*,
    191 F. App'x 926 (Fed. Cir. 2006) ....................................................................... 5

*Knorr v. Pearson*,
    671 F.2d 1368 (C.C.P.A. 1982) ......................................................................... 10

*Koninklijke Philips N.V. v. Wangs Alliance Corp.*,
    No. 14-12298-DJC (D. Mass. Jan. 2, 2018)...........................................................................12

*Kridl v. McCormick*,
    105 F.3d 1446 (Fed. Cir. 1997)............................................................................................10

*KSR Intern. Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007).................................................................................................13, 14, 21

*Learmonth v. Sears, Roebuck & Co.*,
    631 F.3d 724 (5th Cir. 2011) ................................................................................................28

*Liner v. J.B. Talley & Co., Inc.*,
    618 F.2d 327 (5th Cir. 1980) ................................................................................................28

*Lough v. Brunswick Corp.*,
    86 F.3d 1113 (Fed. Cir. 1996)................................................................................................5

*McGinley v. Franklin Sports, Inc.*,
    262 F.3d 1339 (Fed. Cir. 2001)............................................................................................22

*Meiresonne v. Google, Inc.*,
    849 F.3d 1379 (Fed. Cir. 2017).......................................................................................22, 24

*Netscape Commc'ns Corp. v. Konrad*,
    295 F.3d 1315 (Fed. Cir. 2002)..............................................................................................6

*Newell Cos., Inc. v. Kenney Mfg. Co.*,
    864 F.2d 757 (Fed. Cir. 1988)..............................................................................................25

*Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*,
    848 F.2d 613 (5th Cir.1988) ................................................................................................27

*Northpoint Tech., Ltd. v. MDS Am., Inc.*,
    413 F.3d 1301 (Fed. Cir. 2005)............................................................................................26

*Realtime Data, L.L.C. v. Actian Corp.*,
    No. 6:15-cv-463 (E.D. Tex. Apr. 3, 2017).......................................................................16, 17

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009).......................................................................................24, 25

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016).......................................................................................11, 12

*Sibley v. Lemaire*,
    184 F.3d 481 (5th Cir. 1999) ................................................................................................26

*Smith v. Transworld Drilling Co.*,
  773 F.2d 610 (5th Cir. 1985) ................................................................. 26

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
  587 F. Supp. 2d 794 (E.D. Tex. 2007) ................................................... 24

*Tone Bros., Inc. v. Sysco Corp.*,
  28 F.3d 1192 (Fed. Cir. 1994) ................................................................. 6

*TP Labs., Inc. v. Prof'l Positioners, Inc.*,
  724 F.2d 965 (Fed. Cir. 1984) ................................................................. 6

*Wyers v. Master Lock Co.*,
  616 F.3d 1231 (Fed. Cir. 2010) ............................................................. 25

*z4 Techs., Inc. v. Microsoft Corp.*,
  507 F.3d 1340 (Fed. Cir. 2007) ............................................................. 26

**Statutes**

35 U.S.C. § 311(b). ................................................................................... 11

35 U.S.C. § 315(e)(2) ............................................................................... 11

**Rules**

Fed. R. Civ. P. 50(a). ................................................................................. 3

# TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| 1 | HP-Dkt.[1] 75 – 11/6/17 trial transcript (excerpts) |
| 2 | HP-Dkt. 76 – 11/7/17 p.m. trial transcript (excerpts) |
| 3 | HP-Dkt. 77 – 11/8/17 a.m. trial transcript (excerpts) |
| 4 | HP-Dkt. 80 – 11/9/17 p.m. trial transcript(excerpts) |
| 5 | HP-Dkt. 82 – 11/10/17 a.m. trial transcript (excerpts) |
| 6 | HP-Dkt. 83 – 11/10/17 p.m. trial transcript (excerpts) |
| 7 | HP-Dkt. 84 – 11/13/17 trial transcript (excerpts) |
| 8 | P1 – U.S. Patent No. 6,218,903 |
| 9 | P186 - Settlement Agreement and Patent License Agreement – between Network-1 & Sony |
| 10 | P187 - Settlement Agreement and Patent License Agreement – between Network-1 & ALE |
| 11 | P188 - Settlement Agreement, Patent License Agreement, Stipulation Of Dismissal, And Order Dismissing – between Network-1 & Alcatel-Lucent |
| 12 | P253 – Information Disclosure Sheet |
| 13 | DX27 - September 29, 2003 Email from Corey Horowitz to George Conant titled Merlot Patents2 |
| 14 | DX89 - Fisher System Images |
| 15 | DX119 - U.S. Patent No. 5,345,592 ("Woodmas") |
| 16 | DX123 - WO 98/54843 ("Fisher International") |
| 17 | DX124 - WO 98/57248 ("Chang International") |
| 18 | DX138 - U.S. Patent No. 6,496,105 ("Fisher") |
| 19 | DX139 - U.S. Patent No. 6,710,704 ("Fisher") |
| 20 | DX144 - U.S. Patent No. 5,991,885 ("Chang") |
| 21 | DX157 - U.S. Patent No. 5,994,998 ("Fisher") |
| 22 | DX314 – Settlement and License Agreement between Network-1 and Cisco |
| 23 | DX315 - Settlement and License Agreement between Network-1 and Transition Networks |
| 24 | DX316 - Settlement and License Agreement between Network-1 and Motorola |
| 25 | DX317 - Settlement and License Agreement between Network-1 and GarrettCom |
| 26 | DX319 - Settlement and License Agreement between Network-1 and NEC |
| 27 | DX320 - Settlement and License Agreement between Network-1 and Samsung |
| 28 | DX322 - Settlement and License Agreement between Network-1 and ShoreTel |
| 29 | DX324 - Settlement and License Agreement between Network-1 and Dell |
| 30 | DX325 - Settlement and License Agreement between Network-1 and Polycom |
| 31 | DX500 - Fisher System – Physical Exhibit |
| 32 | DDX5 – Dr. Dean Neikirk's Demonstratives |
| 33 | Rebuttal Expert Report of Nathaniel Davis on Infringement (excerpts) |
| 34 | Amended Expert Report of Dean Neikirk on Invalidity (excerpts) |
| 35 | DX146 - U.S. Patent No. 5,406,260 |

---

[1] "HP-Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Hewlett-Packard Company and Hewlett Packard Enterprise Company*, Case No. 6:13-cv-00072.

On the first day of trial, Plaintiff's Chief Executive Officer and sole corporate witness, Corey Horowitz, agreed that "there is a risk that the detection scheme [in the '930 Patent[2]] is an obvious solution thereby rendering the patent invalid." *See* Ex. 1 at 281:22-282:8; Ex. 13 (DX27). Seven days later, following extensive testimony on Plaintiff's claimed inventions and the vast body of prior art, the jury agreed with Mr. Horowitz—the '930 Patent is invalid.  *See* HP-Dkt. No. 69 [Jury Verdict].

Faced with this result, Plaintiff now takes a shotgun approach to the jury's general invalidity finding, but it only properly preserved three issues pre-verdict in its Rule 50(a) motion: (1) whether the Fisher System was in public use, (2) whether Dr. Fisher's testimony was corroborated, and (3) whether HP[3] is estopped from presenting its invalidity case.  Ex. 6 at 179:21-181:3.  Regardless, HP established each element in the prior art, and Plaintiff's limited objections coupled with the record in this case do not warrant disturbing the jury's verdict.

To the contrary, the jury's finding on the question of validity was consistent with controlling legal requirements and the weight of the evidence.  HP presented testimony and physical evidence that the Fisher System was in public use in 1996.  Likewise, both physical and documentary evidence were presented to corroborate Dr. Fisher's testimony of the Fisher System.  And Plaintiff's estoppel argument ignores binding Federal Circuit authority.   Plaintiff's main assertion seems to be that its prior settlement licenses are entitled to some form of heightened evidentiary weight— assuming without supporting testimony that others decided to settle and take a license on the '930 Patent (rather than face the costs and burdens of a trial) because of the Patent's objective validity.   This is simply not the law.  Indeed, this Court undercut that assumption when it first invalidated claim 1 as indefinite and then invalidated claims 21 and 23 as impermissibly

---

[2] United States Patent No. 6,218,930 (the "'930 Patent") [Ex. 8 (P1)].
[3] Defendants Hewlett-Packard Company and Hewlett Packard Enterprise Company (together "HP").

broad in view of the original claims.  *See Network-1 Security Solutions, Inc. v. Cisco Systems, Inc.*, No. 6:08-CV-30-LED, Dkt. No. 251 (E.D. Tex. Feb. 16, 2010); *Network-1 Technologies, Inc. v. Alcatel-Lucent USA Inc.*, 6:11-CV-492-RWS-KNM, Dkt. No. 693 (E.D. Tex. Nov. 4, 2016); *Network-1 Technologies, Inc.*, 6:11-CV-492-RWS-KNM, Dkt. No. 1035 (E.D. Tex. Oct. 18, 2017).  The claims of the '930 Patent are not immune from invalidity challenges.

Plaintiff's assumption regarding the reasons for the settlement licenses further ignores that

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████ ███████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████.  HP pointed to these provisions throughout the trial and explained to the jury that other accused infringers may have settled for reasons completely unrelated to validity.  Plaintiff's renewed motion for judgment as a matter of law on validity should be denied.  As this Court found in denying Plaintiff's pre-verdict motion: "there's a legally sufficient evidentiary basis on all of these issues for a jury to find in the Defendants' favor."  *See* Ex. 6 at 184:25-185:1.

Finally, Plaintiff did not meet its heavy burden to show why a new trial should be granted. The jury's verdict was supported by the great weight of invalidity evidence, including Dr. Fisher's properly admitted testimony.  Moreover, although Plaintiff objected to certain arguments during closing, it wholly failed to object to its now-complained-of arguments in HP's closing statement; consequently, it is barred from raising any prejudice arguments now.  HP's counsel's statements were accurate, supported by the record, and this Court properly instructed the jury regarding the

consideration to give closing statements. Simply put, Plaintiff raises nothing new; as such, its motion for new trial should also be denied.

## I. PLAINTIFF'S RENEWED REQUEST FOR JMOL SHOULD BE DENIED

### A. Legal Standard: JMOL Must Be Denied If There Is Sufficient Evidence to Support the Theory of Invalidity

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "A general jury verdict of invalidity should be upheld if there was sufficient evidence to support any of the alternative theories of invalidity." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1339 (Fed. Cir. 2011).

The moving party is entitled to judgment as a matter of law, "only if the evidence points so strongly and so overwhelmingly in favor of the nonmoving party that no reasonable juror could return a contrary verdict." *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005); *Frazier v. Honeywell Int'l, Inc.*, 518 F. Supp. 2d 831, 835 (E.D. Tex. 2007) ("The jury's verdict is afforded great deference, and a post-judgment motion for judgment as a matter of law should be granted only when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" (citations omitted)).

### B. The Fisher System is Prior Art

In the 1996 time frame, nearly 3 years before the '930 Patent invention date[4], Dr. Fisher and his colleagues at 3Com had the idea of attaching an access point from the ceiling of an office to provide wireless networking. *See* Ex. 5 at 123:21-128:14. However, they encountered a problem. How were they going to power the remote access device? *Id.* To solve the problem, Dr.

---

[4] Notably, Plaintiff does not challenge that Dr. Fisher's invention (or even Mr. Chang's or Mr. Woodmas's inventions) came first and qualify as prior art to the '930 Patent.

Fisher and his team came up with a solution of running both power and data over the same Ethernet cable to the remote access device.  *Id*; Ex. 14 (DX89); Ex. 16 (DX123); Ex. 18 (DX138); Ex. 19 (DX139); Ex. 21 (DX157); and Ex. 31 (DX500) (pictured to the right). Indeed, Dr. Fisher received three U.S. Patents for this



Power-over-Ethernet ("PoE") invention.  *See* Ex. 18 (DX 138), Ex. 19 (139), Ex. 21 (157); Ex. 5. at 131:9 ("it was the first Power over Ethernet").  The system Dr. Fisher developed, his patents, and the testimony describing his PoE inventions were all presented to and properly considered by the jury.  Dr. Fisher's and Dr. Neikirk's testimony establish the Fisher System was in public use and the physical devices and documentary evidence corroborate that use.  *See* Ex. 5 at 138:13-17; Ex. 6 at 22:7-20.  As such, the Court should deny Plaintiff's motion.

**1.    There is Substantial Evidence that the Fisher System was in Public Use.**

HP's invalidity expert, Dr. Neikirk, unquestionably confirmed that the Fisher System was in public use:

Q.  Dr. Neikirk, was Mr. Fisher's system, was it in public use?

A.  Yes, I believe it was.

Ex. 6 at 22:7-20.  Based upon his conversations with Dr. Fisher, his analysis of the Fisher System [Ex. 31 (DX500)] and the testimony that Dr. Fisher provided during trial, Dr. Neikirk's testimony delivered substantial evidence to support the jury's invalidity verdict.  Dr. Neikirk's testimony also disproves Plaintiff's assertion that no witness other than Dr. Fisher "provided any testimony that would even suggest … any use of the Fisher system occurred in public."  Mot. at 6; Ex. 6 at 22:7-20.

In addition, HP presented physical evidence and other testimony supporting the Fisher System's public use. Dr. Fisher demonstrated the Fisher System to the jury—the system bearing a motherboard showing 3Com's 1996 Copyright. Ex. 5 at 129:4-25; 130:6-136:14. He also testified that 3Com actually implemented powering an access device using PoE—Dr. Fisher's invention—in 1995 or 1996. *Id.* at 131:20-132:1. Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *JumpSport, Inc. v. Jumpking, Inc.*, 191 F. App'x 926, 935 (Fed. Cir. 2006) (citing *Lough v. Brunswick Corp.,* 86 F.3d 1113, 1119 (Fed. Cir. 1996).[5] Dr. Fisher's testimony confirmed the Fisher System was used by others at 3Com and there is no evidence that the use was concealed in a veil of privacy. Ex. 5 at 131:20-132:1; 138:13-17.

Still more, Plaintiff showed the jury four pages of evidence from Dr. Davis's expert report that support public use of a functional Fisher System. During counsel's cross-examination of Dr. Davis, he published to the jury portions of Dr. Davis's expert report concerning the state of the art prior to the '930 patent. *See, e.g.*, Ex. 4 at 94:13-18; 97:8-9; and 98:25-99-4. The pages of the report that were published to the jury provide additional evidence that the Fisher System was in public use and not experimental. For example, in reference to Dr. Fisher's invention, Dr. Davis's expert report—published to the jury—states: ███████████████

---

[5] Plaintiff's reliance on *Clock Spring* and *Harrington* are inapposite. In *Clock Spring*, the Federal Circuit affirmed summary judgment of invalidity based on prior public use, because the patent owner's public use of the claimed inventions fell under the experimental use exception. *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1322 (Fed. Cir. 2009). Here, there are no facts to support an argument that Dr. Fisher simply "experimentally used" the Fisher System in order to perfect his invention. *Id.* at 1326-27. Similarly, in *Harrington*, the Federal Circuit affirmed summary judgment of invalidity in the face of the patent owner's assertion of the experimental use exception. *Harrington Mfg. Co. v. Powell Mfg. Co.*, 815 F.2d 1478, 1481 (Fed. Cir. 1986). There, the Federal Circuit found no evidence in the record to negate the public use of the invention or any promise of secrecy. The same holds true here.

████████████████████████████████████████ *See* Ex. 33 [N. Davis Rebuttal

Report] at 43 (emphasis added).  Further, the jury was shown a portion of the report that stated:



*Id.*  Dr. Davis's expert opinions further confirm that the Fisher System was in non-experimental,

public use.

Where, as here, "a *prima facie* case is made of public use, the patent owner must be able

to point to or must come forward with convincing evidence to counter that showing." *Tone Bros.,*

*Inc. v. Sysco Corp.*, 28 F.3d 1192, 1199 (Fed. Cir. 1994)(quoting *TP Labs., Inc. v. Prof'l*

*Positioners, Inc.*, 724 F.2d 965, 971 (Fed. Cir. 1984)).  Moreover, whether a public use has

occurred is a mixed question of law and fact.  *See, e.g., Netscape Commc'ns Corp. v. Konrad*, 295

F.3d 1315, 1320 (Fed. Cir. 2002).  The inquiry is characterized as:

> a mixed question of law and fact given to a jury without a special
> verdict form delineating the questions of fact, the jury's conclusion
> must be upheld "unless the jury was not presented with substantial
> evidence to support any set of implicit findings sufficient under the
> law to arrive at its conclusion."

*Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 654 (E.D. Tex. 2017) (citing *Eli Lilly & Co. v.*

*Aradigm Corp.*, 376 F.3d 1352, 1362–63 (Fed. Cir. 2004)).  Here, Plaintiff did not rebut HP's

*prima facie* case, and Plaintiff's failure to adduce rebuttal evidence once the burden shifted is

dispositive.

Plaintiff's attempt to limit the Fisher System to a product that was merely tested

confidentially and concealed from the public ignores the evidence presented to the jury and

completely distorts testimony.  Plaintiff's only "testing" evidence is Dr. Fisher's testimony

demonstrating the Fisher System during his deposition in 2017 and discussing whether to "test" it

during the deposition to see if the system still worked 20 plus years after it was manufactured.  Ex. 5 at 130:1-131:19.  But that testimony has no bearing on whether Dr. Fisher's system was in public use.  And Plaintiff's additional representations are also suspect.  For example, Plaintiff presented no evidence that the Fisher System was concealed from the public.  Indeed, Plaintiff's counsel's attempt to elicit concealment testimony was rejected by Dr. Fisher when he testified that he was not aware of any evidence showing that the system was anything other than public.  Ex. 5 at 138:13-17.

Because Plaintiff did not counter the clear and convincing evidence presented to the jury through Dr. Fisher testimony, the Fisher Patents, the actual Fisher System, Dr. Davis's expert report, and Dr. Neikirk's expert testimony, Plaintiff cannot prevail as a matter of law on the question of whether the Fisher System was in public use.

### 2. The Fisher System Itself and Dr. Fisher's Patents Corroborate Dr. Fisher's Compelling Testimony

Plaintiff's argument begs the question:  What better evidence exists to corroborate a prior art system than the system itself?  The Court's Final Jury Instructions provide the answer: "Documentary or other physical evidence that is made contemporaneously with the inventive process provide *the most reliable* proof that the testimony has been corroborated."  Ex. 7 at 67:9-11 (emphasis added).  Using physical evidence from the Fisher System, Dr. Fisher testified about and demonstrated to the jury how the Fisher System operated in 1996.  Ex. 31 (DX500); Ex. 5 at 130:1-131:19, 134:135:23.  Following his testimony, the jury was even permitted to inspect the wireless access device portion of the Fisher System to see the "All Rights Reserved © 1996" and "3Com" on the silkscreen of the Fisher System.  Ex. 31 (DX500); Ex. 6 at 22:12-25.  "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the

alleged inventor or an interested party, may corroborate." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.,* 412 F.3d 1331, 1339 (Fed. Cir. 2005).

If that were not enough, the relevant portions of the Fisher System were also corroborated by three U.S. Patents and an international patent application (the "Fisher Patents").   Ex. 16 (DX123), Ex. 18 (DX138), Ex. 19 (DX139), and Ex. 21 (DX157).    Using the corroborative physical and documentary evidence, Dr. Fisher and Dr. Neikirk provided substantial testimony linking the relevant portions of the Fisher System with the Fisher Patents.  Ex. 5 at 134:1-135:23, Ex. 6 at 23:1-27:21.   Indeed, Dr. Fisher was asked: "Can you please explain to the jury how the '998 patent [one of the Fisher Patents] and the Fisher system disclosed providing Power over Ethernet to a remote device?"  Ex. 5 at 134:13-15.  In response, Dr. Fisher meticulously mapped Figure 1 of the '998 Patent to the Fisher System.  *Id.* at 134:16-22.



Following  Dr.  Fisher's  mapping  of  the  physical  evidence  [Ex.  31  (DX500)]  to  the documentary  evidence  [Ex.  21  (DX157)],  Dr.  Neikirk  proceeded  to  further  corroborate  Dr. Fisher's  testimony  based  on  his  expert  analysis  of  the  Fisher  System  and  Fisher  Patents.   Dr. Neikirk testified that not only does the Fisher System have a 1996 Copyright date, but also that

Figure 2 of the '998 Patent [Ex. 21 (DX157)] corresponded to portions of the Fisher System that

Dr. Fisher described to the jury.[6]  Ex. 6 at 25:17-26:6.  Moreover, Dr. Neikirk testified:

> Q.  And has it [Fisher System] been corroborated here that it was in public use?
>
> A.  Yes.  Dr. Fisher told us this morning that they build a system, they plugged it into the network at their offices and used it.

Ex. 6 at 22:10-14.  The demonstratives Dr. Neikirk used to portray the evidence to the jury are

reproduced below.



Demonstrative Exhibits from D. Neikirk's Presentation [Ex. 32 (DDX-5.36 & 5.37)] (emphasis

added).  Undoubtedly, the jury was presented substantially more than "mere testimonial evidence"

without "other evidence [to] corroborate[] that testimony."  *Finnigan Corp. v. Int'l Trade Comm'n*,

180 F.3d 1354, 1366 (Fed. Cir. 1999).  Plaintiff's heavy reliance on portions of *Finnigan* is

misplaced, and pays little respect to portions that are directly relevant to this case—where tangible

devices and documentary evidence were introduced to corroborate the testimony.  In *Finnigan*, the

defendant asserted anticipation based on public use, but the ***sole evidence*** was the inventor's

---

[6] The jury was also properly instructed to reject Dr. Fisher's testimony if they felt it was not properly corroborated.  Ex. 7 at 67:12-16 ("If you find that the party has not -- has not corroborated a witness's oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.")

testimony.  *Id.* at 1369-70 (emphasis added).  Here, we have not only Dr. Fisher's testimony, but also (1) the actual PoE system that Dr. Fisher developed in 1996 (with a stenciled Copyright date) [Ex. 14 (DX089) & Ex. 31 (DX500)], (2) the Fisher Patents that feature Dr. Fisher's Power-over-Ethernet invention [Ex. 16 (DX123); Ex. 18 (DX138); Ex. 19 (DX139); & Ex. 21 (DX157)], and (3) Dr. Neikirk's expert testimony related to the Fisher System and the Fisher Patents.  HP presented exactly the type of "devices, schematics, or other materials that typically accompany the inventive process" in order to corroborate Dr. Fisher's compelling testimony.  *See Finnigan*, 180 F.3d at 1366.   Dr. Fisher's testimony is clear and convincing evidence and it is backed up by a system and United States patents.

Unexpectedly, Plaintiff also attacks the Fisher System for missing "elements" related to "'staged powering up' with a 'current limit,' and an 'authentication process' that would 'keep the power limited' during authentication."   This attack is particularly suspect, because HP's obviousness combination did not rely on the Fisher System to prove the questioned "elements". *See* Ex. 6 at 23:22-24:5 (Dr. Neikirk testifying that the Fisher System discloses (1) data node, (2) access device, (3) data signaling pair, and (4) main power source); Ex. 32 (DDX-5.11).  Instead, HP relied on, and the evidence demonstrated, that the "staged powering up," "detection," and "authentication," elements in the '930 Patent were disclosed by the Chang Patents[7] and the Woodmas Patent[8].  Ex. 17 (DX124), Ex. 20 (DX144), Ex. 15 (DX119); Ex. 6 at 27:24-33:25.  Even so, Plaintiff's attack seeks to impose an overly technical corroboration requirement.  *See Knorr v. Pearson*, 671 F.2d 1368, 1374 (C.C.P.A. 1982) ("The law does not impose an impossible standard of 'independence' on corroborative evidence by requiring that every point [necessary to prove

---

[7] United States Patent No. 5,991,885 and W/O 98/57248 (the "Chang Patents") [Ex. 20 (DX144) and Ex. 17 (DX124)].
[8] United States Patent No. 5,345,592 (the "Woodmas Patent") [Ex. 15 (DX119)].

invalidity] be corroborated by evidence having a source totally independent of the inventor; indeed, such a standard is the antithesis of the rule of reason."); *Kridl v. McCormick*, 105 F.3d 1446, 1451, 41 U.S.P.Q.2d 1686, 1688 (Fed. Cir. 1997) ("An evaluation of *all* pertinent evidence must be made so that a sound determination of the credibility of the inventor's story may be reached." (citation omitted))..

HP need not provide specific evidence to corroborate each individual feature of the Fisher System.  Dr. Fisher's testimony related to the existence and use of the Fisher System were supported by the actual device [Ex. 31 (DX500)] that Dr. Fisher created and the Fisher Patents [Ex. 16 (DX123); Ex. 18 (DX138); Ex. 19 (DX139); & Ex. 21 (DX157)] that Dr. Fisher was awarded.  The Fisher System and the Fisher Patents provide clear and convincing evidence supporting Dr. Fisher's testimony related to his PoE invention.

### 3.      HP is Not Estopped from Asserting the Prior Art Combination

Plaintiff correctly acknowledges that its estoppel argument is foreclosed by the inclusion of the Fisher System in the obvious combination considered by the jury.  An IPR is limited to invalidity grounds "that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b).  Therefore, a prior art "system" cannot be raised during IPR proceedings and, thus, a defendant cannot be estopped from asserting the "system" art at trial.  *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRGRSP, 2017 WL 2526231, at *8 (E.D. Tex. May 11, 2017).  Plaintiff's estoppel argument should be rejected on that basis alone.  However, Plaintiff's argument fails even if the Court does not consider the Fisher System in the prior art analysis.

Section 315(e) limits a defendant's ability to assert invalidity grounds in the district court when an IPR results in a final written decision. The restriction is narrowly limited to invalidity grounds that were raised or reasonably could have been *during that IPR*.  *See* 35 U.S.C. § 315(e)(2)

("... may not assert . . . that the claim is invalid on any ground that the petitioner raised or reasonably could have raised *during that inter partes review*.") (emphasis added).  But an "IPR does not begin until it is instituted."  *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016).  The grounds a petitioner can present *during* an IPR are limited to those advanced in the petition, and further to those grounds on which the Patent Trial and Appeals Board ("P.T.A.B.") instituted the IPR.  Thus, Section 315(e) does not apply to grounds that were not presented in any IPR.  *See HP Inc. v. MPHJ Tech. Invs., LLC,* 817 F.3d 1339, 1347 (Fed. Cir. 2016) ("[T]he noninstituted grounds do not become a part of the IPR. Accordingly, the noninstituted grounds were not raised and, as review was denied, could not be raised in the IPR."); *Intellectual Ventures I LLC v. Toshiba Corp.*, No. CV 13-453-SLR, 2016 WL 7341713, at *26-27 (D. Del. Dec. 19, 2016) (holding that estoppel did not apply to references "never presented to the PTAB at all" and noting that "the court cannot divine a reasoned way around the Federal Circuit's interpretation in *Shaw*"); *Koninklijke Philips N.V. v. Wangs Alliance Corp.*, No. 14-12298-DJC (D. Mass. Jan. 2, 2018) ("The Federal Circuit in *Shaw* held that the phrase "during inter partes review" applies only to the period of time after the PTAB has instituted review, and notwithstanding Philips' claims to the contrary, D. 183 at 13, that holding was not limited to Section 315(e)(1) nor was it mere dicta.").

The Fisher, Chang, and Woodmas Patents were never part of an instituted IPR; thus, they could not have been raised during an IPR.  *See Shaw*, 817 F.3d at 1300.  The PTAB instituted an IPR of the '930 Patent on two grounds (1) anticipation based on Matsuno, and (2) obviousness based on De Nicolo and Matsuno.  *See* IPR2013-00071 [Dkt. No.[9] 811 at Ex. 4], IPR2013-00495 [Dkt. No. 811 at Ex. 7].  Because an IPR was not instituted based on the Fisher, Chang, or

---

[9] "Dkt. No." refers to the docket in *Network-1 Technologies, Inc. v. Alcatel-Lucent USA Inc.,* 6:11-cv-492-RWS-KNM.

Woodmas Patents, it follows that no arguments could be made on those grounds during the IPR proceeding.  As such, even if HP had not asserted the Fisher System, which it did, under the Federal Circuit's precedent of *Shaw*, HP is not estopped from asserting the combination of the Fisher Patents, Chang Patents, and Woodmas Patent.

### C.    The Remainder of Plaintiff's Motion Includes Grounds Not Preserved Under Rule 50(a)

"If a party fails to move for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on an issue at the conclusion of all of the evidence, that party waives both its right to file a renewed post-verdict Rule 50(b) motion and also its right to challenge the sufficiency of the evidence on that issue on appeal."  *Flowers v. S. Reg'l Physician Svcs., Inc.*, 247 F.3d 229, 238 (5th Cir. 2001).  Here, Plaintiff's Rule 50(a) motion failed to raise the "missing elements" arguments that Plaintiff now scrambles to assert.  Specifically, Plaintiff only alleged a lack of corroboration and public use of the Fisher System, estoppel with respect to the Fisher, Chang, and Woodmas Patents combination, and general allegation that HP's expert admitted validity.  Ex. 6 at 179:21-181:3.[10]  HP addresses each of these arguments in response.  Because Plaintiff failed to identify any specific missing elements or address the sufficiency of any prior art other than the Fisher System, it cannot do so now.  *Id.*

A Rule 50(a) motion must put the opposing party on notice of the moving party's position as to the insufficiency of the evidence. *See Blackboard, Inc. v. Desire2Learn, Inc.,* 574 F.3d 1371, 1379–80 (Fed. Cir. 2009).  In its Rule 50(a) motion, Plaintiff never asked the Court to find that any specific element was not disclosed by the prior art evidence.  Plaintiff's pre-verdict motion certainly failed to provide notice of the particular evidentiary deficiencies now being alleged post-

---

[10] Network-1 also addresses HP's promissory estoppel claim, however, that claim was withdrawn.

verdict in Section II (B-E) of Plaintiff's brief.  As such, each of these arguments is waived.  The Court need not reach them in denying Plaintiff's motion.

### D.  Substantial Evidence Exists for a Reasonable Jury to Conclude the Patent is Obvious

Notwithstanding Plaintiff's waiver as to invalidity arguments directed to specific claim elements, these arguments also fail on the merits.  An obviousness analysis must take into account "the background knowledge possessed by a person having ordinary skill in the art," as well as "the inferences and creative steps that a person of ordinary skill in the art would employ." *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).  HP presented unrebutted evidence that detecting remote devices and providing PoE were well known and well within the technical skill of those in the art at the time of the invention. Ex. 1 at 281:17-282:8; Ex. 5 at 133:13-17; Ex. 6 at 17:12-24; Ex. 13 (DX027).  The '930 Patent's method of detecting and providing power added nothing to the art.  The jury was entitled to infer that "[t]his is a textbook case of when the asserted claims involve a combination of familiar elements according to known methods that does no more than yield predictable results." *Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008); *accord KSR*, 550 U.S. at 414-16.  "Granting patent protection to advances that would occur in the ordinary course without real innovation retards progress and may, in the case of patents combining previously known elements, deprive prior inventions of their value or utility." *KSR*, 550 U.S. at 419.

### 1.  The Obviousness Combination Disclosed "Low-level current"

Although Plaintiff did not preserve its new "low-level current" theory at trial, HP's obviousness case was based on a collection of prior art that included each element of the asserted claims of the '930 Patent.  Dr. Neikirk explained the combination in detail.  Notably, HP did not assert that every element, including "low-level current," was disclosed by every prior art reference.

Instead, and like any obviousness case, some elements were disclosed in certain prior art and some elements in other prior art.  For "low-level current," HP provided clear and convincing evidence that under Plaintiff's application of "low-level current," the Woodmas Patent disclosed "a non-data signal current that is sufficient to begin start up of the access device but that is not sufficient to sustain start up.  *See* Ex. 15 (DX119); Ex. 6 at 31:7-33:25; 65:4-9.  Dr. Neikirk testified as follows:

> Q. -- is there any doubt in your mind that **with respect to the Court's claim construction of low level current** and the combination we put before this jury, that the combination does indeed show a low level current?
>
> A. **No. There's absolutely no doubt in my mind whatsoever.**

Ex. 6 at 65:4-9 (emphasis added).  Plaintiff's arguments to the contrary ignore the full trial record.

Following Plaintiff's attempt at trial to misconstrue Dr. Neikirk's opinion, he specifically testified that applying the Court's claim construction of "low-level current" to the Woodmas Patent, the '930 Patent is obvious:

Q.  By delivering this 15mA current before full operating power is supplied and looking for a return voltage representative of the full low level current, both the presence and functionality of power delivery unit 76 are checked before full power is imposed on cable 30 [Referring to Figure 1 in Woodmas]. Do you see that?

A.  I do. That's –

Q.  And that would be **applying Judge Schroeder's claim construction of beginning to start up the access device but insufficient to sustain start up,** as Dr. Knox [Plaintiff's expert] is applying it, right?

A.  **Yes, that's correct.**

Q.  Using his analysis and the way he's applying it, these patents are invalid?

A.  **Yes, they are.**



**HP'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR JMOL ON INVALIDITY** – Page 15

Ex. 6 at 67:6-20 (emphasis added); Ex. 32 (DDX-5.32).  The testimony could not be clearer—the Woodmas Patent disclosed "low-level current" using the Court's claim construction as applied by Dr. Knox; therefore, the '930 Patent is invalid.  And that was not the only instance of Dr. Neikirk applying the Court's claim construction to find the "low-level current" element disclosed in the Woodmas Patent.  Dr. Neikirk repeatedly testified that "low-level current," as construed by the Court, was disclosed by the Woodmas Patent.  *See, e.g.*, Ex. 6 at 32:22-23 ("applying the Court's construction it's clearly teaching us a great deal about low level currents"); 33:22-25 ("And I'll go ahead and check off low level current, again, pointing out that we'll see that it's truly the low level current as construed by the Court when we look at the combination."); 43:2-7 ("Q. Sir, in your opinion, does Woodmas disclose or teach a low level current using the Court's definition . . . A. Applying the Court's constructions as . . . -- as the Plaintiff has, then yes, it is present.").

Moreover, Dr. Neikirk's invalidity opinions were properly based on Dr. Knox's application of the Court's construction of "low-level current."[11]  This same red herring was considered and rejected during the pre-trial phase of the case.  *See* Dkt. Nos. 808 and 1065.  Plaintiff now attempts a second bite at its failed *Daubert* challenge to exclude Dr. Neikirk's opinions and should likewise be rejected.  Plaintiff's argument fails because Dr. Neikirk applied the Court's claim construction.

Now, as before, Plaintiff's argument is contrary to this Court's findings in *Realtime Data*. In *Realtime Data*, the expert based his "invalidity opinions on [plaintiff's] infringement theories." *See Realtime Data, LLC v. Actian Corp.*, No. 6:15-cv-463-RWS-JDL Dkt. No. 491 at 2 (E.D. Tex. Apr. 3, 2017).  "In other words, [the expert] relie[d] on [plaintiff's] interpretation of the claims in

---

[11] Where, as here, Plaintiff takes a broad view of its patent rights, it is only fair for HP to be able to explain to the jury that such a broad interpretation renders the patent invalid. "Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).

conducting his analysis, despite stating that he does not necessarily agree with those interpretations." *Id*. Just as Network-1 argues here, the plaintiff in *Realtime Data* argued the invalidity opinions were improper because the expert "performed a claim analysis, not based on the Court's construction (as he was required to do), but expressly based on his 'interpretation' of [plaintiff's] infringement theories against Defendants' products." *Id*. at 4. The Court rejected this argument and allowed the invalidity opinion. *Id.* at 7.

In *Realtime Data*, this Court determined that if an expert "applied the Court's claim constructions" he "was further entitled to conduct his analyses in reliance on [plaintiff's] infringement contention theories." *Id.* at 5. With respect to Dr. Neikirk's obviousness opinions, Plaintiff argues that for "low-level current", Dr. Neikirk presented improper opinions based on Dr. Knox's application of the phrase, even though Dr. Neikirk disagrees with the application. Contrary to this argument, the Court in *Realtime Data* held that "[s]uch an approach allows [defendant to] set forth relevant, alternative invalidity . . . arguments for the jury to consider in the event it ultimately finds that [plaintiff's] interpretation of the claims is correct." *Realtime Data*, No. 6:15-cv-463-RWS-JDL at 6. And that is exactly what happened here. The jury heard Plaintiff's infringement theory and then Dr. Neikirk's invalidity opinions, which consistently apply the Court's definition of "low-level current." Ex. 3 at 66:23-67:7; Ex. 6 at 66:3-67:20. Using that application, the jury properly found the asserted claims invalid. It is of no moment whether Dr. Neikirk thought the Court's construction was improper.

Further, Network-1 has not shown that Dr. Neikirk is "endorsing an opinion he . . . considers unreliable." *Id.* While Dr. Neikirk disagreed with Plaintiff's infringement theory for several reasons (as the defendant's expert did in *Realtime Data* at 6), Plaintiff identified no reliability issues in Dr. Neikirk applying Dr. Knox's interpretation of "low-level current" as part

of his invalidity analysis. In a desperate attempt to prove otherwise, Plaintiff turns to statements outside of the record, including deposition excerpts and expert reports that were never published to the jury, and closing statements. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, No. CV-03-0597-PHX-MHM, 2009 WL 886514, at *2 (D. Ariz. 2009) ("[C]onsideration of evidence outside the record is improper under [Rule] 50(b) because such motions challenge the sufficiency of the evidence based on the record 'as it existed when the trial was closed.'" (citation omitted)).

HP presented clear and convincing evidence that the Fisher, Chang, Woodmas combination discloses the "low-level current" element, and the jury properly considered that substantial evidence in finding the '930 patent claims invalid.[12]   The Court should not disrupt the jury's finding.[13]

## 2.   The Obviousness Combination Disclosed "Secondary Power Source"

Once again, Plaintiff failed to preserve its argument regarding "secondary power source." HP nevertheless carried its burden.  This Court, addressing *Koito* and *Fresenius*, found that a defendant "must present *some evidence* to show a jury that the prior art reference" discloses an element of the asserted claim. *Cellular Commc'ns Equip., LLC v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 6884076, at *4 (E.D. Tex. Aug. 30, 2016). "It is for the jury to decide whether in fact what the experts reference is sufficient to render the claims invalid." *Id.*

At trial, HP relied on the Chang Patents for its disclosure of the "secondary power source." Ex. 17 (DX124); Ex. 20 (DX144); Ex. 32 (DX-5.27).  Dr. Neikirk analyzed the Chang Patents,

---

[12] HP also presented clear and convincing evidence that detection methods were well known in the art at the time of the alleged inventions. *See, e.g.*, Ex. 4 at 13:1-17:5; Ex. 1 at 281:22-282:8; Ex. 5 at 133:13-17; Ex. 6 at 17:12-24; Ex. 13 (DX27); Ex. 20 (DX144); Ex. 21 (DX157).
[13] "A general jury verdict of invalidity should be upheld if there was sufficient evidence to support any of the alternative theories of invalidity." *Cordance*, 658 F.3d at 1339.

and his testimony combined with the Chang Patents (summarized by demonstrative exhibits supporting Dr. Neikirk's conclusions), at a minimum, are "some evidence" for the jury to decide that the Chang Patents disclosed a "secondary power source."   Ex. 6 at 27:23-31:1.  Specifically, Dr. Neikirk testified that the Chang Patents teach "the data node and the network interface adapter . . . the access device" and how they provide "electrical power from the hub [the data node] to the remote adapter, to the access device using the network's wiring."  *Id.* at 28:5-16.   Dr. Neikirk went on to show the jury where the Chang Patents disclose the "secondary power source" [DDX-5.27 (below)] and also testified that the Chang Patents disclose the "controlling" element, which Plaintiff must, and does, admit.  Ex. 6 at 30:12-31:1; Mot. at 17.



Without question, Dr. Neikirk provided "some evidence" that would allow the trier of fact to weigh the evidence regarding whether or not the Chang Patents disclosed a "secondary power source."    Plaintiff's argument further fails to acknowledge that the "controlling" element in the '930 Patent states "*controlling power supplied* by the *secondary power source* to said access device in response to a preselected condition of said voltage level."  Claim 6 (emphasis added).  Thus, in order to disclose the "controlling" element the Chang Patents must include the "secondary

power source."  And as Plaintiff recognizes, the jury heard extensive testimony from about what "secondary power source" means, including the Court's claim construction.  *See, e.g.*, Ex. 2 at 24-48.  The jury did not receive Dr. Neikirk's testimony in a vacuum.  Drawing all reasonable inferences in favor of HP, the non-moving party, the Court should deny Plaintiff's request to enter a judgement of non-obviousness.

### 3.     The Obviousness Combination Disclosed "Main Power Source"

Plaintiff's argument misapprehends that HP presented an obviousness case and not an anticipation case.  To find a claim obviousness, the jury was instructed that it needed to find "as of the priority date of the patent, there was a reason that would have prompted a person of ordinary skill in the field of the invention ***to combine the known elements*** in a way the claimed invention does. . . ."  Ex. 7 at 64:15-19 (emphasis added).  No single reference need disclose both (1) supplying power to the data node and (2) delivering a low level current to the access device; instead the combined references disclose them.  For example, the Chang Patents, the Fisher System, and the Fisher Patents disclosed a power source supplying power to a data node [Ex. 6 at 23:22-24:5; 26:15-27:5; 30:10-15], and the Woodmas Patent disclosed delivering a "low-level current" to the access device [Ex. 6 at 31:7-33:25; 65:4-9].  When combined, these references, Fisher, Chang and Woodmas, disclose a "main power source" in the same way claimed in the '930 Patent.  Ex. 6 at 34:2-36:11; Ex. 32 (DDX-5.40).  Dr. Neikirk progressively walked the jury through building a combined system using the elements found in the prior art:



Ex. 32.  And Dr. Neikirk concluded that: "After you've combined everything together, all the pieces are there, and all the interrelationships are there."  Ex. 6 at 36:10-11.

Again, drawing all reasonable inferences in favor of HP, the non-moving party, the Court should deny Plaintiff's request to enter a judgement of non-obviousness.

### E.    There is Substantial Evidence for a Reasonable Jury to Find a Motivation to Combine the Prior Art References

There is no "rigid" requirement to prove a motivation to combine, rather the "overall inquiry must be expansive and flexible."  *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1347 (Fed. Cir. 2014) (citing *KSR*, 550 U.S. at 415, 419).   "There is flexibility in our obviousness jurisprudence because a motivation may be found *implicitly* in the prior art. We do not have a rigid test that requires an actual teaching to combine. . . ."  *Alza Corp. v. Mylan Labs., Inc.,* 464 F.3d 1286, 1291 (Fed. Cir. 2006).   Nevertheless, Dr. Neikirk provided a specific

motivation to combine the Fisher System, Fisher Patents, Chang Patents, and Woodmas Patent—

each of which address the detection of remote devices—and visually demonstrated to the jury how

the references could have been combined into an operating system.  Ex. 6 at 34:2-36:20; Ex. 32

(DDX-5.35-40).  And he stated:

> Q.  (By Ms. Doan) So with respect to wrapping up with respect to
> the prior art that you've analyzed in this case, what is your opinion
> after combining and analyzing each of the pieces and the elements
> in each of the claims of the '930 compared to what was known in
> the art at the time?
>
> A.  So it is my opinion that the patent claims are obvious in light of
> the prior art. **There's a motivation to combine the prior art in the
> way that -- that yields the claims of the patent.**  That, yes, it is
> obvious.

Ex. 6 at 38:2-10 (emphasis added).  "What the prior art teaches, whether a person of ordinary skill

in the art would have been motivated to combine references, and whether a reference teaches away

from the claimed invention are questions of fact."  *Meiresonne v. Google, Inc.*, 849 F.3d 1379,

1382 (Fed. Cir. 2017).   "When the jury is supplied with sufficient valid factual information to

support the verdict it reaches, that is the end of the matter.  In such an instance, the jury's factual

conclusion may not be set aside by a JMOL order."  *McGinley v. Franklin Sports, Inc.*, 262 F.3d

1339, 1355 (Fed. Cir. 2001).

Dr. Neikirk's combination analysis began with the Fisher System and Patents.  In Fisher,

one of ordinary skill in the art would learn

how to power a wireless access point using

an Ethernet cable, later known as PoE.

*See, e.g.*, Ex. 6 at 34:2-6; Ex. 21 (DX157);

Ex. 32 (DDX-5 at 18).  The Fisher Patents

themselves, however, did not teach how to



detect whether a remote access device was capable or incapable of receiving PoE.  Dr. Fisher

testified that this was one of the real concerns when they began supplying remote power to devices.

Ex. 5 at 127:7-128:14.  Plaintiff conveniently ignored this fact.  Dr. Fisher later developed a system

that included a detection capability; however, it was cumbersome and required an extra piece of

equipment beyond the "switch."  Ex. 5 at 140:20-25 ("So in the detection system that you invented,

the first thing that would happen is that some power would be sent to the access point, the access

point would start up, operate, and send some data back to the  security server; is that correct?



ANSWER: That's correct, uh-huh."); Ex. 6
at 34:10-19.  As Dr. Neikirk explained, a
person of skill in the art would be motivated
to find a way to perform the "detection"
operation in the Fisher System without the
need for extra equipment (*ie.* more

efficiently).  Ex. 6 at 34:16-19.  Looking for a way to use the PoE technology disclosed by the

Fisher Patents and the Fisher System with a "switch" that is able to detect whether a remote device

is PoE compatible, one of ordinary skill in the art would turn to the teaching in Chang.  Ex. 6 at

35:1-6; Ex. 17 (DX124); Ex. 20 (DX144).  As Dr. Neikirk explained to the jury, Chang taught one

of ordinary skill in the art how to use a single "switch" to determine whether or not a remote device

was capable or incapable of receiving both power and data from the switch and to provide the

remote power.  Ex. 6 at 27:24-30:4; 35:8-10; Ex. 20 (DX144); Ex. 32 (DDX-5.26).  Chang also

taught using a 10Base-T and 100Base-TX protocol (Ethernet over twisted-pair), which matches

the protocol discussed in the '930 Patent ("Cable 12 is preferably Category 5 wiring such as

100BaseX . . .").  Ex. 20 (DX144[Col.4, ln. 50-58; Col.5, ln. 20-25).  Next, Dr. Neikirk confirmed

that combining the Chang Patents' Ethernet communications system with the Woodmas Patent's remote detection and powering technique would allow detection and power over a data signaling pair without intruding on normal operations.  Ex. 6 at 35:3-36:2.  This was exactly the goal described in the Chang Patents: to "have a network system that recognizes remote devices connected to a connector of the network system in real time without intruding on the normal operation, provides appropriate electrical power as required without damaging the connected remote device, and automatically connects the device to a network hub running an appropriate protocol."  Ex. 20 (DX144) (Col. 2, ln. 56-62).[14]

Contrary to Plaintiff's assertions, Chang did not clearly discourage combining power and data over the same twisted pair.  One portion of Chang that Plaintiff relies on is simply a description of a separate and unrelated patent, and the other "merely expresses a general preference."  *Meiresonne*, 849 F.3d at 1382 ("A reference that 'merely expresses a general preference for an alternative invention but does not criticize, discredit, or otherwise discourage investigation into' the claimed invention does not teach away.") (citing *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013)).  Yet again, the jury was properly instructed to consider "whether the prior art teaches away from combining elements in the claimed invention" and they determined that it did not.  Given the substantial evidence presented by Dr. Neikirk and Dr. Fisher regarding the interrelation of the teachings of the prior art, the Court should not overturn the jury's finding of invalidity.

---

[14] Moreover, Dr. Neikirk performed several tests to confirm that combining the Woodmas Patent's signaling, detection and full operating power features with the Chang Patents' Ethernet communications had no detectable impact on performance.  Ex. 34, Neikirk Amended Report at 71-75.

**F.     Plaintiff's Reliance on Secondary Considerations of Non-Obviousness Does Not Overcome HP's prima facie Obviousness Evidence**

As Plaintiff aptly acknowledges, the jury saw evidence that "the ten largest players in the marketplace" licensed the '930 Patent to settle litigation, and they found it insufficient to overcome the obviousness evidence.   Mot. at 25; *Rothman v. Target Corp.*, 556 F.3d 1310, 1322 (Fed. Cir. 2009) ("[T]his court must presume that the jury adequately weighed this factual evidence and found it insufficient to support a finding of validity.   Indeed, a strong prima facie obviousness showing may stand even in the face of considerable evidence of secondary considerations.").   And justifiably so.   Litigation settlements come about for many reasons.   Settlements may indicate, for example, a party's unwillingness to incur litigation risk and costs, rather than acquiescence to patent validity.   *See Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 800 (E.D. Tex. 2007) ("Many considerations other than the value of the improvements patented may induce payment in such [settlements].   The avoidance of risk and expense of litigation will always be a potential motive for a settlement." (citations omitted)).   ███████████████

███████████████████████████████████████████████████████

█████████████████████████████    ████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████    Ex. 9 (P186); Ex. 10 (P187); Ex. 11 (P188); Ex. 29 (DX324); Ex. 30 (DX325); Ex. 23 (DX315); Ex. 24 (DX316); Ex. 25 (DX317); Ex. 26 (DX319); Ex. 27 (DX320); and Ex. 28 (DX322).

Moreover, "secondary considerations of nonobviousness . . . cannot overcome a strong prima facie case of obviousness."   *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010); *see, e.g., Agrizap*, 520 F.3d at 1344 ("Even when we presume the jury found that the

objective evidence of nonobviousness favored [Plaintiff], this evidence is insufficient to overcome the overwhelming strength of [Defendant]'s prima facie case of obviousness."); *Dystar Textilfarben GmbH & Co. v. C.H. Patrick Co.*, 464 F.3d 1356, 1371 (Fed. Cir. 2006) ("The presence of certain secondary considerations of nonobviousness are insufficient as a matter of law to overcome our conclusion."); *Newell Cos., Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768 (Fed. Cir. 1988) (secondary considerations "do not control the obviousness conclusion"). This is a jury issue. The Court properly instructed the jury that it "should consider any evidence" of secondary considerations and decide for itself "the relevance and importance" of that evidence. Ex. 7 at 65:18-67:3. Accordingly, "this court must presume that the jury adequately weighed this factual evidence and found it insufficient to support a finding of validity." *Rothman*, 556 F.3d at 1322.

## II.     PLAINTIFF'S RULE 59 REQUEST FOR NEW TRIAL SHOULD BE DENIED

Under Federal Rule of Civil Procedure 59, the court has the discretion to grant a new trial "based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *See, e.g., Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985). "But the burden a movant must meet is high. 'A motion for a new trial should not be granted unless the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence.'" *Ameranth, Inc. v. Menusoft Sys. Corp.*, No. 2:07-CV-271-RSP, 2011 WL 2110384, at *2 (E.D. Tex. May 26, 2011) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)). "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

A new trial may not be granted on grounds of prejudicial legal error unless the movant demonstrates that it creates "substantial and ineradicable doubt whether the jury has been properly guided in its deliberations" and, even if erroneous, that it could have "affected the

outcome of the case." *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1353 (Fed. Cir. 2007).

"'[T]he burden of showing harmful error rests on the party seeking the new trial.'" *Sibley v.

Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (citation omitted).   A request for a new trial under

Rule 59 should be denied if any basis of invalidity is supported.   *See Cordance*, 658 F.3d at 1339;

*Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1311 (Fed. Cir. 2005) ("Northpoint notes

that the defendants argued anticipation based on five different prior art references[.] . . . A failure

of proof with respect to any single item of evidence does not justify a grant of either JMOL or a

new trial.").   Plaintiff proposes three reasons for its request for new trial; none are availing.

### A.      The Jury's Verdict Is Supported by the Great Weight of Evidence

Here, Plaintiff simply echoes the same failed arguments it asserts in its JMOL.   For the

same reasons demonstrated above, Plaintiff fails to carry its heavy burden and certainly fails to

explain, beyond its conclusory assertions, what it believes the "great weight of the evidence"

confirms.   For example, as established above, a great weight of evidence exists to support the

jury's verdict of invalidity based on the prior art disclosed and published before the invention date

that "combined the known elements in a way the claimed invention does." Ex. 7 at 64:17-18 (Jury

Instructions).

### B.      The Fisher System was Properly Admitted

Plaintiff's argument that the jury "inadvertently consider[ed] inadmissible evidence"

should also be rejected.   As detailed above, Dr. Fisher's testimony was corroborated, admissible,

and not inadvertently considered by the jury.    Using the Fisher System, Dr. Fisher demonstrated

to the jury the actual Fisher System. Ex. 31 (DX500); Ex. 5 at 130:1-131:19, 134:135:23.   The

relevant portions of the Fisher System were also corroborated by the Fisher Patents.  Ex. 16

(DX123), Ex. 18 (DX138), Ex. 19 (DX139), and Ex. 21 (DX157).    Using the corroborative

physical and documentary evidence, Dr. Fisher and Dr. Neikirk provided substantial testimony

linking the relevant portions of the Fisher System with the Fisher Patents.  Ex. 5 at 134:5-135:23, Ex. 6 at 23:1-27:21.  "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested party, may corroborate." *Checkpoint Sys., Inc. v. All-Tag Sec.* SA, 412 F.3d 1331, 1339 (Fed. Cir. 2005).  Plaintiff's arguments do not meet the heavy burden required for a new trial.

### C.    Plaintiff's Late Complaints of Jury Confusion and Improper Closing Statements Lack Merit

Plaintiff failed to object during its now-complained-of portions of HP's closing statement; therefore, is barred from claiming it is entitled to a new trial.   *Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir.1988) (plaintiff's failure to object to the impropriety of the defendant's closing argument barred it "'from urging the improper arguments as grounds for a new trial after the jury had returned its verdict.'" (citing *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 69 (1st Cir. 1984)).

Moreover, Plaintiff does not contest that the Court instructed the jury as to the proper standards for assessing invalidity and the proper consideration to give closing statements.  The jury was cautioned that the statements of counsel were not evidence and to base their decision on evidence from the witness stand and admitted exhibits both before and after the closing statements were made.  Ex. 1 at 140:20-24; Ex. 7 at 42:12-17.; *see Learmonth v. Sears, Roebuck & Co.*, 631 F.3d 724, 732-33 (5th Cir. 2011) (district court's instruction that counsel's argument did not constitute evidence minimized any prejudice). Accordingly, Plaintiff's alleged "errors" were harmless and provide no basis for a new trial.  *See Liner v. J.B. Talley & Co., Inc.*, 618 F.2d 327, 329-30 (5th Cir. 1980) (noting "extreme reluctance" to grant relief on closing arguments in the absence of an objection made at trial and finding no error where court gave instructions that counsel's statements were not evidence).

1.      **The Cummings Patent was Properly Referenced During Closing in Conjunction with the Host of Prior Art Showing Early Detection Methods.**

The Cummings Patent[15] was introduced at trial, without objection, during Dr. Davis' testimony related to whether the '930 patent inventors invented the idea of doing detection of remote equipment over Ethernet lines.  Ex. 4 at 16:3-17:5 Ex. 35 (DX146).  Without objection, Dr. Davis described that the Cummings Patent disclosed detection "with a low level – a low current power signal . . . ."  *Id.*  That testimony and evidence were properly included in HP's closing statement, and Plaintiff never objected to their inclusion in closing thereby silencing its current complaint.  Plaintiff cannot point to any evidence suggesting that HP improperly suggested that the Cummings Patent disclosed the "low-level current" of the '930 Patent.  Rather, the evidence is clear that the Cummings Patent was simply used to demonstrate what Mr. Horowitz admitted during trial—that the detection scheme in the '930 Patent might be obvious.

2.      **Mr. Godici's Testimony was Properly and Accurately Included in Closing**

Plaintiff's final complaint regarding closing statements concerning Mr. Godici's testimony should also be rejected.  First, Plaintiff did not object.  Second, the "amount" of prior art is not material to any claim or defense of HP.   This is not a situation like the Court resolved in *Edwards*, where the defendant introduced an "admission" that the jury had never seen or heard about.  *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 285 (5th Cir. 1975).  Third, the jury heard substantial evidence about the large number of prior art references that placed the validity of the '930 Patent into question.  For example, Mr. Godici testified about the Fisher patent being cited to the United States Patent and Trademark Office ("PTO") "amongst many other patents."  Ex. 5 at 78:1-5.  He also testified about the two re-examinations where the PTO questioned the validity of

---

[15] United States Patent No. 5,406,260 (the "Cummings Patent") [Ex. 35, DX146].

the '930 Patent based on other prior art references.  Ex. 5 at 66:21-24; 70:21-72:15.  Mr. Godici further testified about the PTO considering prior art references other than the Fisher, Chang, Woodmas combination that was presented to the jury.  *See, e.g.*, Ex. 5 at 73:22-74:5. Plaintiff failed to object to any of this testimony.  Moreover, on cross-examination, Plaintiff's own counsel presented Mr. Godici with an Information Disclosure Sheet that listed 26 different patents that were presented to the PTO as potential prior art.  Ex. 5 at 106:3-18; P253.  Counsel's statements were not only truthful, they are supported by Mr. Godici's trial testimony and the evidence presented to the jury.  Therefore, Plaintiff is not prejudiced by the statements and a new trial is not warranted.

## III.    CONCLUSION

For the foregoing reasons, HP respectfully requests that the Court deny Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial on Validity.

Respectfully submitted,

*/s/ Jennifer H. Doan*

Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com

Hersh H. Mehta
IL Bar No. 6306586
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606-0029
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
hmehta@mwe.com

Jodi Benassi
CA Bar No. 309048
McDermott Will & Emery LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7415
Facsimile: (650) 815-7401
Email: jbenassi@mwe.com

Natalie A. Bennett
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, D.C.  20001
(202) 758-8000
Email:  nbennett@mwe.com

Mark E. Ferguson
IL Bar No. 6185448
Mark S. Ouweleen
IL Bar No. 6231188
Faye E. Paul
IL Bar No. 6306719
Bartlit Beck Herman Palenchar & Scott LLP
54 W. Hubbard Street, Ste. 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
Email: mark.ferguson@bbhps.com
Email: mark.ouweleen@bbhps.com
Email: faye.paul@bbhps.com

**ATTORNEYS FOR DEFENDANTS
HEWLETT-PACKARD COMPANY
AND HEWLETT PACKARD
ENTERPRISE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned certifies all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 2nd day of March, 2018.

*/s/ Jennifer H. Doan*
Jennifer H. Doan

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(B), I certify that the Protective Order in this case authorizes the filing of this document under seal.

*/s/ Jennifer H. Doan*
Jennifer H. Doan