**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC. | |
| *Plaintiff,* | |
| vs. | CASE NO. 6:13-cv-072-RWS |
| | **JURY TRIAL DEMANDED** |
| HEWLETT-PACKARD COMPANY AND HEWLETT PACKARD ENTERPRISE COMPANY | |
| *Defendants.* | |

**Network-1 Technologies, Inc.'s reply in support of
renewed motion for judgment as a matter of law and
motion for new trial on validity**

# **Table of Contents**

I.      HP failed to prove the Fisher system is prior art; HP was therefore estopped. .................. 1

A.      HP failed to prove public use of the Fisher system. ............................................... 1

1.      Dr. Fisher never testified that his system was publicly used. .................... 1

2.      Dr. Neikirk provided no evidence of public use. ....................................... 3

3.      The physical components and patents did not imply public use................ 3

4.      Dr. Davis's expert report has no evidence of public use. ........................... 3

B.      There was no corroboration of public use, or even of the design of the purported Fisher system. ..................................................................................... 4

C.      HP is estopped from asserting the remaining combination. ................................... 5

II.     The Court should conclude, as a matter of law, that the claims were not obvious............ 6

A.      HP fails to show that any JMOL issue was waived. ............................................... 6

B.      HP's obviousness combination was missing a "low level current."...................... 9

C.      HP's obviousness combination was missing a "secondary power source." ......... 11

D.      HP's obviousness combination was missing a "main power source.".................. 12

E.      HP failed to provide sufficient motivation to combine the Fisher-Chang-Woodmas references. ............................................................................................... 14

F.      The Court should conclude the claims were not obvious based on unusually strong objective evidence of non-obviousness. .................................... 14

III.    The Court should also conditionally grant a new trial on validity.................................... 15

# Table of Authorities

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ........................................................................ 3, 9

*Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*,
No. 6:12-CV-22 (E.D. Tex. March 30, 2016)...................................................... 6, 7

*Allied Colloids Inc. v. Am. Cyanamid Co.*,
64 F.3d 1570 (Fed. Cir. 1995) ................................................................................ 2

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371 (Fed. Cir. 2009). ............................................................................. 6

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
No. 6:14-CV-251, 2016 WL 6884076 (E.D. Tex. Aug. 30, 2016).................................. 11, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
2:07-CV-341, 2010 WL 11484496 (E.D. Tex. Dec. 29, 2010). ............................................. 16

*Delano Farms Co. v. California Table Grape Comm'n*,
778 F.3d 1243 (Fed. Cir. 2015) .............................................................................. 2

*Dey, L.P. v. Sunovion Pharm., Inc.*,
715 F.3d 1351 (Fed. Cir. 2013). ......................................................................... 1, 2

*Edwards v. Sears, Roebuck & Co.*,
512 F.2d 276 (5th Cir. 1975) .......................................................................... 15, 17

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) ........................................................................... 4, 5

*HP Inc. v. MPHJ Tech. Inv., LLC*,
817 F.3d 1339 (Fed. Cir. 2016) ............................................................................. 5

*In re Gill*,
92 F.2d 810 (5th Cir. 1937). ................................................................................ 15

*In re Isbell Records, Inc.*,
774 F.3d 859 (5th Cir. 2014) ................................................................................ 16

*InTouch Tech's, Inc. v. VGO Commc'ns, Inc.*,
751 F.3d 1327 (Fed. Cir. 2014) .................................................................. 9, 11, 14

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
424 F.3d 1374 (Fed. Cir. 2005) ............................................................................. 2

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)............................................................................................. 14

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ............................................................................... 15

*Orion IP, LLC v. Hyundai Motor Am.*,
605 F.3d 967 (Fed. Cir. 2010) ............................................................................... 6

*Pierce v. Ramsey Winch Co.*,
    753 F.2d 416 (5th Cir. 1985) ................................................................. 12

*Realtime Data, LLC v. Actian Corp*.,
    No. 6:15-cv-463-RWS-JDL (E.D. Tex. Apr. 3, 2017) ........................... 10

*Rosco, Inc. v. Mirror Lite Co.*,
    120 F. App'x 832 (Fed. Cir. 2005) .......................................................... 5

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
    817 F.3d 1293 (Fed. Cir. 2016) ............................................................... 5

*Stoker v. Stemco, LP*,
    No. 2:11-cv-00214-JRG-RSP, 2013 WL 3786346 (E.D. Tex. July 17, 2013) .................. 12, 13

*Tone Bros., Inc. v. Sysco Corp.*,
    28 F.3d 1192 (Fed. Cir. 1994) ................................................................. 4

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010) ............................................................. 14

*WMS Gaming, Inc. v. Int'l Game Tech*.,
    184 F.3d 1339 (Fed. Cir. 1999) ............................................................. 15

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998). ........................................................ 1, 2

**Statutes**

35 U.S.C. § 102(a) & (b).............................................................................. 1

35 U.S.C. § 315(e)(2)................................................................................. 5

**Table of Exhibits**

| Ex. 33 | HP-Dkt.[1] 78 – 11/8/2017 pm trial transcript (filed under sealed) |
|---|---|
| Ex. 34 | HP-Dkt. 80 – 11/9/2017 pm trial transcript, cont. |
| Ex. 35 | HP-Dkt. 82  – 11/10/2017 am trial transcript, cont. |
| Ex. 36 | HP-Dkt. 83 – 11/10/2017 pm trial transcript, cont. |
| Ex. 37 | HP-Dkt. 84 – 11/13/2017 trial transcript, cont. |
| Ex. 38 | Juror notebook |
| Ex. 39 | Network-1 demonstrative slide used with Nathaniel Davis, Ph.D. |
| Ex. 40 | HP demonstrative slides used with Dean P. Neikirk, Ph.D. |
| Ex. 41 | Deposition transcript of Dean P. Neikirk, Ph.D. (filed under seal) |
| Ex. 42 | Expert Rebuttal Report of James M. Knox, Ph.D. (filed under seal) |
| Ex. 43 | Supplemental Expert Rebuttal Report of James M. Knox, Ph.D. (filed under seal) |
| Ex. 44 | Amended Expert Report of Dean P. Neikirk, Ph.D. |
| Ex. 45 | Supplemental Expert Report of Dean P. Neikirk, Ph.D. |
| Ex. 46 | *Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:12-CV-22, Dkt. 667 |

---

[1] "HP-Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Hewlett-Packard Company and Hewlett Packard Enterprise Company*, severed case 6:13-cv-00072.

"Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Alcatel-Lucent USA Inc., et al.*, consolidated case 6:11-cv-00492.

## I.    HP failed to prove the Fisher system is prior art; HP was therefore estopped.

### A.    HP failed to prove public use of the Fisher system.

HP contends that the Fisher system is prior art because it was "publicly used" prior to the critical date. [2] Each of HP's arguments fails.

#### 1.    Dr. Fisher never testified that his system was publicly used.

HP contends Dr. Fisher's testimony supports public use because he "testified that 3Com actually implemented powering an access device using PoE—Dr. Fisher's invention—in 1995 or 1996," and "confirmed the Fisher System was used by others at 3Com." Opp. 5. This is testimony about use, but not about *public* use, which requires a prior use of the system that is "accessible to the public." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). And a use is not "accessible to the public" if it is not sufficiently available to members of the general public, i.e. "if members of the public are not informed of, and cannot readily discern, the claimed features of the invention in the allegedly invalidating" prior use. *Dey, L.P. v. Sunovion Pharm.*, *Inc.*, 715 F.3d 1351, 1354-55, 1359 (Fed. Cir. 2013).

HP asserts that Dr. Fisher and his colleagues at 3Com constitute the "public" because "[p]ublic use includes 'any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor.'" Opp. 5 (quoting *JumpSport, Inc. v. Jumpking, Inc.*, 191 F. App'x 926, 935 (Fed Cir. 2006) (non-precedential)). HP applies the wrong law. The "no limitation, restriction obligation of secrecy to the inventor" test quoted by HP applies only when the inventor (e.g. Katzenberg for the '930 patent) had some involvement with the use; not when the use was entirely by third parties (e.g. 3Com). As the

---

[2] HP does not dispute that, for the Fisher system to be prior art, HP must prove prior public use under section 102(a) or (b). 35 U.S.C. § 102(a) & (b). HP expressly waived reliance on any other potential ground to prove that Fisher was prior art. Ex. 32. And HP presented no evidence or argument, and proffered no jury instructions, on any other potential prior art ground.

Federal Circuit held, "language from our cases stating that '[p]ublic use includes 'any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor'… [is] not meant to apply to third-party use cases." *Dey, L.P. v. Sunovion Pharm., Inc*., 715 F.3d 1351, 1358-59 (Fed. Cir. 2013); *Woodland*, 148 F.3d at 1371 ("when an asserted prior use is not that of the applicant, § 102(b) is not a bar when that prior use or knowledge is not available to the public"); *Delano Farms Co. v. California Table Grape Comm'n*, 778 F.3d 1243, 1247 (Fed. Cir. 2015) ("when the allegedly public use is performed by an unaffiliated third party … such use must still be publicly accessible").

Here, HP contends that the prior use was by a third party (i.e., 3Com), not by the inventor of the '930 patent.  "Because a secret third-party use is not invalidating, our task is to assess whether the third party's use was sufficiently 'public' to impose the section 102 bar." *Dey*, 715 F.3d 1358-59 ("That [the accused infringer] Sunovion's [clinical] trial subjects owed no duty of confidentiality to Dey [the inventor/patent owner] is, of course, true, but it does not bear on that question.").  HP does not contend any prior use at 3Com was accessible to the public.  Opp. 3-5. Dr. Fisher testified solely as to use at 3Com for "research or development," "research," "development," a "prototype," and "to test it."  Ex. 35 at 123:21-124:14; 127:7-16; 130:1-131:19; 135:24-136:23; 137:8-25.  Such use is not "public" use.  *Dey,* 715 F.3d at 1358-60 (the accused infringer's prior use of the invention in "clinical trials" was not a public use of the invention); *Invitrogen Corp. v. Biocrest Mfg., L.P*., 424 F.3d 1374, 1383 (Fed. Cir. 2005) ("secretly us[ing] the cells internally to develop future products that were never sold, without more, is insufficient to create a public use bar"); *Allied Colloids Inc. v. Am. Cyanamid Co.*, 64 F.3d 1570, 1575 (Fed. Cir. 1995) (no public use because "tests were not observed by anyone other than Colloids' employees").

### 2.      Dr. Neikirk provided no evidence of public use.

To support HP's assertion that "Dr. Neikirk's testimony establish[es] the Fisher System was in public use," HP quotes the following five-word conclusion: "Yes, I believe it was."  Opp. 4.  But Dr. Neikirk was not a percipient witness (he had no personal knowledge about prior use of the Fisher system); he was providing expert opinions.  And a conclusory assertion from an expert ("I believe it was") has no evidentiary value.  *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) (JMOL proper when "testimony by [Defendant's] expert was conclusory and factually unsupported.").

Moreover, HP could not identify any testimony from Dr. Neikirk that would factually support his conclusion because Dr. Neikirk admitted that his sole basis was Dr. Fisher's testimony about a use that was *not* public: "Dr. Fisher told us this morning that they built a system, they plugged it into the network at their offices and used it."  Ex. 7 at 22:12-14.  Thus, Dr. Neikirk's unsupported, conclusory assertion is not evidence, much less substantial evidence.

### 3.      The physical components and patents did not imply public use.

HP fails to identify anything about the physical components suggesting that any public use occurred. [3]  And HP identifies nothing in the Fisher patents that describes any use, much less a public use, of the system.

### 4.      Dr. Davis's expert report has no evidence of public use.

HP asserts "Plaintiff showed the jury four pages of evidence from Dr. Davis's expert report that support public use."  Opp. 5.  This argument fails at every level.

*First*, nothing in the four pages that HP cites (including the two sentences quoted by HP

---

[3] HP asserts three times that "(C) 1996" was stenciled on the circuit board for the access point.  Opp. 5, 8, 10.  But HP never explains how marking a component with a copyright date implies that the system was publicly used.  Moreover, HP never addresses, much less refutes, our demonstration (Mot. 6-7) that a copyright marking does not give rise to any inference of public use.

in its brief) mentions or supports any inference of public use.  *See* HP-Ex. 33.  *Second*, the two

sentences quoted by HP were never shown to the jury.  The two sentences appear in paragraph

97 on page 43 of Dr. Davis's report.  *Id*. at 43.  But the only portion of pages 43-44 shown to the

jury was a demonstrative containing three lines from paragraph 98.  Ex. 34 at 94:13-18; Dovel

decl., ¶¶1-4.  *Third*, no portion of Dr. Davis's report was admitted in evidence, nor was

Plaintiff's demonstratives that included excerpts from the report. [4]

> **B.     There was no corroboration of public use, or even of the design of the
> purported Fisher system.**

HP contends that it met the corroboration requirement by presenting certain physical

components, the Fisher patents, and Dr. Neikirk and Dr. Fisher's testimony linking the Fisher

system and patents.  Opp. 7-10.  HP is wrong.

HP's evidence corroborated only (a portion of) the design of the Fisher system.  But

evidence corroborating the design of a system does not corroborate "public use" of that system.

*Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999) (holding that

Jefferts' article corroborating design of a system was "not corroborative of Jefferts' *use of the*

*claimed invention*" (emphasis in original)).  HP presented no evidence (much less corroboration)

of public use.

Moreover, HP failed even to corroborate Dr. Fisher's prior *design* of his invention

(whether the design was put in use or not).  HP asserts this failure can be overlooked because the

---

[4] HP also wrongly asserts that the "burden shifted" to Network-1 to "rebut HP's *prima facie* case" of public use, and this "failure to adduce rebuttal evidence once the burden shifted is dispositive."  Opp. 6-7.  *First*, HP never made out a prima facie case of public use.  *Second*, HP misstates the parties' burdens.  "At all times ... the burden of persuasion remains with the party asserting the [public use] bar."  *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1197 n.4 (Fed. Cir. 1994).  *Third*, Network-1 did present evidence that 3Com's use was not public.  It presented evidence that Dr. Fisher was in the best position to know of any public demonstration of his system (Ex. 6 at 123:14-20; 129:2-6; 130:1-5), and the only use he identified was internal research at 3Com.  Ex. 35 at 123:21-124:14; 127:7-16; 130:1-131:19; 137:21-24.

law does not require that "every point" be corroborated.  Opp. 10-11.  While HP need not

independently corroborate every detail of testimony, corroboration is required for all important

elements.  *Finnigan Corp.*, 180 F.3d at 1366, 1369 (holding that published article failed to

corroborate purported prior inventor's testimony because the article failed to disclose one

important element); *Rosco, Inc. v. Mirror Lite Co.*, 120 F. App'x 832, 836-37 (Fed. Cir. 2005)

(non-precedential) ("testimony was insufficient to establish prior public knowledge or use" when

corroborating physical example was missing one key element).

    Dr. Fisher provided uncorroborated testimony that his system performed "staged

powering up" with a "current limit" to perform "detection and authentication" for "determining

whether or not an access point was able to accept Power over Ethernet."  Ex. 6 at 131:16-133:12;

135:24-136:14; 140:9-142:13.  This was not an insignificant detail.  The testimony extended for

many pages and was presented (over Network-1's express objection) precisely because HP

wanted to link Fisher's system to the key detection feature of the '930 patent.  Because there was

no corroboration for Dr. Fisher's testimony on this important element, his "testimony was

insufficient to establish prior public knowledge or use."  *Rosco*, 120 F. App'x at 836.

### C.    HP is estopped from asserting the remaining combination.

    HP contends that it is not estopped because the combination of the Fisher patents,

Woodmas, and Chang was not presented in an IPR and "Section 315(e) does not apply to

grounds that were not presented in any IPR."  Opp. 12-13.  HP is wrong.  Estoppel applies to

"any ground that the petitioner . . . <u>reasonably could have raised.</u>"  35 U.S.C. § 315(e)(2). [5]

---

[5] HP's reliance on *Shaw* and *HP Inc.* is misplaced.  Both cases state (in dicta) that
estoppel does not apply to a ground that was <u>asserted in an IPR petition</u> and was denied
institution.  *HP Inc. v. MPHJ Tech. Inv., LLC*, 817 F.3d 1339, 1347 (Fed. Cir. 2016); *Shaw
Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016).  As this
Court previously held (Dkt. 1068 at 2-3), this reasoning does not apply here, because HP never
asserted the Fisher-Woodmas-Chang ground in its IPR petition.

**II.     The Court should conclude, as a matter of law, that the claims were not obvious.**

        **A.     HP fails to show that any JMOL issue was waived.**

HP asserts that Network-1's Rule 50(a) motion waived all additional challenges (i.e., those below) to HP's failure to establish obviousness. [6]  Opp. 13-14; Mot. 11-28.  HP is wrong.

"The Fifth Circuit construes Rule 50(a) liberally, such that the adequacy of an oral Rule 50(a) motion depends in large measure on the context in which the motion is made." *Orion IP, LLC v. Hyundai Motor Am*., 605 F.3d 967, 973 (Fed. Cir. 2010); *Blackboard, Inc. v. Desire2Learn, Inc*., 574 F.3d 1371, 1379-80 (Fed. Cir. 2009).  When an opposing party has previously been placed on notice of the moving party's position as to missing evidence in the opposing party's case, a cursory JMOL motion is sufficient to give notice that the moving party is challenging the previously identified missing evidence.  "Even a cursory motion" suffices when "it is clear from the context that neither the court nor [the nonmovant's attorneys] needed any more enlightenment about [the movant's] position on those issues." *Orion*, 605 F.3d at 973.

For example, in *Orion*, the plaintiff said only "we seek partial judgment as a matter of law based on prior art." *Id*.  This was sufficient because it was "clear from the context" of that case—e.g., the parties' previous positions, the evidence, and the jury instructions on obviousness—"that neither the court nor Orion needed any further explanation about Hyundai's position on those issues."  Similarly, in *Adaptix, Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:12-CV-22 (E.D. Tex. March 30, 2016) (attached as Ex. 46), the plaintiff said only that "there's not specific evidence to determine obviousness." *Id.* at *6.  The Court found that sufficient because,

---

[6] HP lumps objective factors into its waiver argument.  Opp. 14.  But the application of an undisputed objective factor is an issue of law that the Court is required to consider in reaching its ultimate conclusion on obviousness. *See* Mot. 25; *infra* n. 16.  Because this is a pure issue of law and does not implicate a failure of factual proof by HP, the issue was not subject to waiver.  Moreover, HP was fully aware of Network-1's position on the objective factor of industry respect as shown by licenses.  Ex. 7 at 131:23-133:6; Ex. 42 at 181-82.

in the context of that litigation, "each side was fully aware of the other's positions." *Id.*

In Network-1's Rule 50(a) motion, we argued that "HP's entire validity case should be rejected as a matter of law," that "applying the Court's claim construction correctly … the combination doesn't render the patent obvious" as HP's "own expert admitted," and that "there's not sufficient evidence for which any reasonable jury could conclude that the patent is obvious." Ex. 36 at 180:21-181:3. This motion was sufficient because HP was fully aware, based on the context, of Network-1's position on the relevant issues.

Network-1 had repeatedly asserted that HP's combination was missing the "low level current," "secondary power source," and "main power source" elements. Network-1's expert identified, in his report, each of these as elements that HP's expert had failed to prove. *See, e.g.*, Ex. 42 at 128-131. In doing so, Network-1 expressly gave notice to HP that its trial evidence was missing these elements (because HP's expert testimony was HP's trial evidence for obviousness). Moreover, Network-1 obtained admissions from HP's expert at his deposition that the "low level current" and "main power source" were not found in HP's combination (a fact HP's expert recognized in his own report). Ex. 36 at 45:9-46:5, 47:25-48:10, 50:1-22, 54:4-16; Ex. 44 at ¶205 n.190, ¶400; Ex. 41 at 63:7-64:2, 57:8-14. In addition, HP knew that establishing a "secondary power source," with physically separate "driving points," was an essential requirement because it was addressed in five rounds of briefing and five orders. Mot. 18, n.10. HP's expert, in his supplemental report, expressly acknowledged that HP would have to establish these detailed requirements for "secondary power source." Ex. 45 at 2-5. And Network-1's expert, in his supplemental report, confirmed that HP had failed to do so. *See* Ex. 43.

Moreover, as in *Orion*, the "jury instructions contained specific, detailed instructions as to … obviousness." *Orion*, 605 F.3d at 973. In particular, HP knew that the jurors were given, and instructed to apply, detailed constructions for "low level current" and "secondary power

source." [7]  Ex. 38; Ex. 37 at 51:1-8.  In addition, Network-1 cross-examined HP's expert to

establish HP's failure to prove the "low level current" element (Ex. 36 at 49:17-57:4) and the

"secondary power source" element (*id*. at 39:8-10, 39:18-22), which HP's expert had asserted

was a "key piece[]" of the claim.  Mot. 17.  For "main power source," HP's invalidity expert

testified that HP had to show that this element was in HP's obviousness combination.  Ex. 36 at

19:10-15.  And HP itself repeatedly emphasized the two-fold requirement of a "main power

source," Mot. 19, but then failed to provide evidence on these requirements. Ex. 36 at 19-21.

Accordingly, because "each side was fully aware of the other's positions," *Adaptix* (Ex.

46) at *6, Network-1's Rule 50(a) motion was sufficient on all relevant issues. [8]

Furthermore, greater specificity is not needed in a Rule 50(a) motion if greater specificity

would not have resulted in the opposing party reopening its case.  *Adaptix* (Ex. 46) at *6

(Defendant "made no claim in the briefing that it would have sought to reopen its case" upon a

more specific Rule 50(a) motion.).  HP does not assert that greater specificity would have caused

it to reopen its case.  Opp. 13-14.  And HP had no trial time available to put on additional

evidence.  Ex. 36 at 160:20-21, 165:12-13, 168:10-11.  Moreover, the Court likely would not

have granted HP a (second) time extension for this purpose.  After receiving its first time

extension, Ex. 35 at 101:9-10, HP made the tactical decision to shortcut its invalidity expert's

testimony, and to instead use much of its remaining time on other issues (e.g., damages,

infringement, distancing HP's counsel from the Dr. Davis copying fiasco).  Ex. 36 at 6:18-12:14,

27:22-23, 68:13-81:20, 125:9-128:9, 160:20-169:8.  Greater specificity in a Rule 50(a) motion

---

[7] In addition, Network-1's expert presented pages of trial testimony discussing the detailed requirements of a secondary power source. Mot. 17-18.
[8] The context of this case similarly shows that HP knew Network-1's position on HP's motivation to combine evidence.  The report of Network-1's expert identified HP's motivation to combine as insufficient.  Ex. 42 at 124-28.  And the requirement that HP show a motivation to combine was described in the jury instructions.  Ex. 37 at 64:13-65:13; *Orion*, 605 F.3d at 973.

would not have resulted in HP reopening its case.

**B.     HP's obviousness combination was missing a "low level current."**

HP asserts that Dr. Neikirk "specifically testified that applying the Court's claim construction of 'low-level current' to the Woodmas Patent, the '930 Patent is obvious." Opp. 15. But HP only identifies statements where Dr. Neikirk expresses this conclusion. *Id*. at 15-16.  HP does not identify any underlying factual support for this assertion—i.e., testimony showing how the structural elements in Woodmas match the requirements of the Court's construction.  This failure is fatal.  *InTouch Tech's, Inc. v. VGO Commc'ns, Inc*., 751 F.3d 1327, 1351 (Fed. Cir. 2014) ("notwithstanding Dr. Yanco's conclusory opinion to the contrary," "[w]e find that there is no evidence, much less substantial evidence, from which the jury could conclude that Dudenhoeffer discloses the type of arbitrator [element in the claim]") (reversing denial of validity JMOL); *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc*., 694 F.3d 1312, 1327 (Fed. Cir. 2012) (JMOL of no invalidity is proper when "obviousness testimony by [Defendant's] expert was conclusory and factually unsupported").

When Dr. Neikirk did compare Woodmas to the Court's actual construction as Federal Circuit law requires, he unambiguously admitted that Woodmas does <u>not</u> disclose requirements of the Court's "low level current" construction: "given that the Court said that the low level current must be sufficient to begin start up of the access device and not sufficient to sustain start up of the device, I do not -- I could not find that element in the art I used" and thus "my opinions would not have all the elements required for an obviousness conclusion." Ex. 7, 50:8-22. [9]

---

[9] Dr. Neikirk agreed that the Woodmas current never even *reaches* an access device, much less begins to start it up, as the Court's construction requires. Mot. 13; Ex. 7, 48:1-49:16. HP fails to address these fatal admissions and instead argues they should be disregarded as "statements outside of the record."  Opp. 18.  HP is wrong.  Each critical admission was read into the trial record and confirmed as "truthful testimony" by Dr. Neikirk at trial. Ex. 36, 45:14-46:5, 48:1-10, 50:8-22, 54:7-16.  Moreover, the pretrial record is relevant to demonstrate why HP

HP asserts that we "ignore the full trial record" and "misconstrue Dr. Neikirk's opinion."

Opp. 15.  That is false.  The trial testimony HP cites confirms exactly what we said in our

motion—Dr. Neikirk opined that the Court's construction is satisfied only <u>if the construction is

given the interpretation HP attributes to Dr. Knox</u>.  Opp. 15-16 ("as Dr. Knox is applying it")

("under Plaintiff's application of 'low-level current'") ("Using [Dr. Knox's] analysis and the

way he's applying it") ("as applied by Dr. Knox") ("Applying the Court's constructions … as the

Plaintiff has, then yes, it is present") ("based on Dr. Knox's application of the Court's

construction of 'low-level current'").  But if that interpretation is applied, then it is no longer the

Court's construction.  Instead, it is an erroneous construction that omits two material

requirements—"non-data signal current" and "current that is sufficient to begin start up."  Mot.

15.  These material omissions result in a construction that HP admits is "completely different to

what Judge Schroeder says," i.e., the Court's actual construction.  Ex. 8 at 117:1-16. [10]

We showed that *Realtime Data* could not support HP's approach because the Court in

*Realtime Data* permitted "an invalidity expert to apply a patentee's infringement theories in his

or her analysis, <u>provided that these theories rely on the court's claim construction</u>."  *Realtime

Data, LLC v. Actian Corp*., No. 6:15-cv-463-RWS-JDL, Dkt. 491 at 4 (E.D. Tex. Apr. 3, 2017)

(emphasis added).  It did not permit a validity expert to apply a theory that interprets the claims

in a way that materially differs from the Court's construction.  Mot. 15.  HP fails to address,

much less rebut, this point.

---

could not rely on Dr. Neikirk to match up components in Woodmas with requirements in the
Court's construction—i.e., because Dr. Neikirk held the opinion that they did <u>not</u> match up.
  [10] HP falsely asserts that, during *Daubert* proceedings, the Court already "considered and
rejected" the contention that Dr. Neikirk cannot rely on his erroneous construction of "low-level
current."  Opp. 16.  At *Daubert*, Network-1 challenged Dr. Neikirk's opinions on two specific
obviousness combinations.  Dkt. 1065 at 4.  The Court ruled that because HP was estopped from
presenting these two combinations, "Neikirk cannot opine" as to those two combinations and,
therefore, the *Daubert* issue regarding Dr. Neikirk's erroneous construction was "moot."  *Id.*

HP cites to testimony where Dr. Knox concludes that when HP's detection current flows through the circuitry of an IEEE standard-compliant access device, it is a "low level current." HP-Ex. 3 at 66:23-67:7 ("you say within the PD.  We're talking about the devices that are compliant with the standard").  But Dr. Knox did not reach this conclusion by applying the erroneous construction.  (In fact, he testified that such an erroneous construction would improperly ignore the "sufficient to begin start up" requirement.  Ex. 9 at 68:20-69:6.)  Instead, Dr. Knox established that HP's detection current would "begin start up" of a standard-compliant access device because he could "measure the power that [the access device components] consume," and he demonstrated that key components of the access device "are operating."  *Id.*; Ex. 4 at 62:1-23.  Dr. Neikirk performed no such tests or analysis on Woodmas. [11]

**C.      HP's obviousness combination was missing a "secondary power source."**

Quoting from *Cellular Commc'ns Equip., LLC v. Apple Inc*., No. 6:14-CV-251, 2016 WL 6884076 (E.D. Tex. Aug. 30, 2016), HP asserts that Dr. Neikirk's testimony was sufficient because it provided "*some evidence* to show a jury" that Chang disclosed a "secondary power source."  Opp. 18-19.  HP omits that, in *Cellular*, the Court held what the Federal Circuit has held: the "*some evidence*" must be testimony identifying the "corresponding structural elements"

---

[11] HP includes two footnotes asking the Court to credit its "alternative theories of invalidity," i.e., "evidence that [other] detection methods" were generally "known in the art at the time of the invention."  Opp. 18, n.12, n.13.  But HP did not present any alternative theories. HP asserted a single theory of obviousness based on the combination of "the Fisher patents, the Fisher system, Woodmas, and Chang."  Ex. 8, 63:15-17.  From this combination, HP relied exclusively on Woodmas for the "low level current" element.  Ex. 7 at 39:11-13; *id*. at 40:11-16; Opp. 14-15 ("HP did not assert that … 'low-level current[]' was disclosed by every prior art reference" of the combination, but instead provided "evidence that under Plaintiff's application of 'low-level current,' the Woodmas Patent disclosed" the element.).

Moreover, evidence that general detection methods were known in the art is irrelevant. Neither HP nor its expert asserted that the detection method in any other prior art discloses the *claimed* detection method—i.e., one that includes a "low level current" as construed by the Court.  *See InTouch Tech's, Inc. v. VGO Commc'ns, Inc*., 751 F.3d 1327, 1350 (Fed. Cir. 2014) (that the prior art "includes the term 'arbitration'" is "insufficient to permit the conclusion that it refers to the same type of arbitration [claimed] in the [asserted] patents").

in the prior art that satisfy each part of the Court's claim construction.  *Cellular*, 2016 WL 6884076 at *3-4; Mot. 16-17.  In *Cellular*, the expert testimony "include[d] specific examples" of prior art components that were "consistent with the court's construction."  *Cellular* at *3-4.

Dr. Neikirk gave no such testimony.  HP points to his testimony that Chang "talks about providing the electrical power from the hub … to the access device."  Opp. 19 (quoting HP-Ex. 6 at 28:5-16).  But this does not identify any component in Chang as a secondary power source, or identify the requirements of the Court's construction (e.g., physically separate "driving points").

HP asserts that Dr. Neikirk used a demonstrative "to show the jury where the Chang Patents disclose the 'secondary power source.'"  Opp. 19.  This is false.  The cited demonstrative was never used at trial (Dr. Neikirk used only his slides 21-26 for Chang and skipped slide 27).  HP-Ex. 6 at 27:22-31:1; Ex. 40.  Moreover, demonstratives are not evidence and "are never a part of the record."  *Stoker v. Stemco, LP*, No. 2:11-cv-00214-JRG-RSP, 2013 WL 3786346, at *4 (E.D. Tex. July 17, 2013); *Pierce v. Ramsey Winch Co.*, 753 F.2d 416, 431 (5th Cir. 1985).

HP asserts that Dr. Neikirk's testimony was sufficient because he testified that Chang taught the "controlling" claim element, which recites a "secondary power source."  Opp. 19-20.  But he testified only that Chang "had … a controlling element" and that controlling means "whether power is applied or not."  HP-Ex. 6, 30:22-31:1.  He said nothing about a "secondary power source" (and certainly nothing that would explain to the jury how Chang taught one applying the Court's complex construction). [12]

### D.    HP's obviousness combination was missing a "main power source."

HP admits that to establish obviousness, it must prove that the "combined system using

---

[12] HP asserts that, because Dr. Knox gave "extensive testimony" identifying a secondary power source *in HP's products*, the jury did not "receive Dr. Neikirk's testimony in a vacuum." Opp. 20.  But no expert identified a secondary power source in HP's *obviousness combination*. And without this testimony, HP failed to meet its burden.  Mot. 16-19.

the elements found in" "Fisher, Chang and Woodmas" includes a "'main power source' in the same way claimed in the '930 Patent," Opp. 20; and that to include a "main power source" in the same way claimed in the '930 patent, HP's combination must have "<u>one power source</u> that does A and B, powers the data node and delivers detection current." Ex. 8 at 117:22-119:1.

But HP's brief confirms Dr. Neikirk's combination includes <u>two separate power sources</u>, one from Fisher (or Chang [13]) that (A) "suppl[ies] power to a data node," and one from Woodmas that (B) "deliver[s] a 'low-level current' to the access device." Opp. 20.  What is missing is any suggestion (much less clear and convincing evidence) that one of ordinary skill would modify these two separate power sources to create a single power source as claimed in the '930 patent.  Dr. Neikirk never offered this opinion. [14]  Nor could he because it is contrary to the opinions he offered in his report.  Ex. 44 at ¶205 n.190, ¶400; Ex. 41 at 63:7-64:2, 57:8-14 (the asserted combination "does not disclose … [the Court's] construction of 'main power source'").

HP attempts to fill this hole with a general citation to Dr. Neikirk's testimony about his combined system and seven demonstratives.  Opp. 20.  But if any portion of his testimony explained how or why one of ordinary skill would modify the two separate power supplies into a single "main power source," HP would have identified this critical testimony with particularity.  No such testimony exists.  *See* HP-Ex. 6 at 34:2-36:11.  The cited pages do not even mention the concepts of power for a detection current, power for the data node, a single power supply, or "main power source."  *Id*.  Moreover, the demonstratives are not evidence (and some were not even used).  *See Stoker v. Stemco, LP*, 2013 WL 3786346, at *4 (E.D. Tex. July 17, 2013).

---

[13] HP asserts Dr. Neikirk's combined system also relied on Chang for "a power source supplying power to a data node."  Opp. 20.  This assertion finds no support in the record.

[14] HP's own witness testified that there were compelling reasons not to combine a power supply that powers a data node with a power supply that delivers current to an access device.  Ex. 33 at 105:7-10.

**E.      HP failed to provide sufficient motivation to combine the Fisher-Chang-
Woodmas references.**

HP contends that Dr. Neikirk's testimony "provided a specific motivation to combine."

Opp. 21-22.  But HP's first quoted excerpt states only that "[t]here's a motivation to combine the

prior art in [that] way," without actually providing any such motivation.  HP-Ex. 6 at 38:2-10.

The only reason given in the other cited excerpts is that adding the Chang hub would make

Fisher "simpler."  *Id*. at 34:16-19, 35:5-6.  This was a conclusory statement unsupported by "the

necessary 'articulated reasoning with some rational underpinning.'"  *InTouch Techs., Inc. v.*

*VGO Commc'ns, Inc*., 751 F.3d 1327, 1351 (Fed. Cir. 2014) (quoting *KSR Int'l Co. v. Teleflex,*

*Inc.*, 550 U.S. 398, 418 (2007)).  The Fisher patents already had a hub and Dr. Neikirk provided

zero explanation for why adding Chang's hub would make the combination simpler. [15]

**F.      The Court should conclude the claims were not obvious based on unusually
strong objective evidence of non-obviousness.**

HP argues that its "strong prima facie case of obviousness" cannot be "overcome" by

"secondary considerations of non-obviousness."  Opp. 25.  But HP's prima facie case was not

strong; it was deficient for multiple reasons.  *See* Mot. 3-25.  Moreover, a strong prima facie case

<u>can</u> be overcome by compelling secondary considerations of non-obviousness, like Network-1's

evidence.  *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc*., 617

F.3d 1296, 1305 (Fed. Cir. 2010). [16]

HP argues that there was no "testimony" that Network-1's licensees licensed the '930

patent "because of the Patent's objective validity" rather than "face the costs and burdens of a

---

[15] HP also cites to Dr. Neikirk's slides and Dr. Fisher's testimony at trial.  Dr. Neikirk's
slides were not in evidence and, moreover, do not identify any motivation to combine Fisher and
Chang.  Similarly, Dr. Fisher did not provide any motivation to alter the Fisher system, much
less a motivation to combine Fisher with Chang.

[16] HP falsely implies the weight to be given to Network-1's licenses is "a jury issue."
Opp. 26.  We demonstrated that, when objective evidence is undisputed, as here, the Court must
consider it despite a general jury verdict of obviousness.  Mot. 25.

trial." Opp. 1, 25.  *First*, there was testimony from Network-1's expert. Ex. 7 at 131:23-133:6.

Moreover, this testimony was unrebutted.  *Second*, there was no need for further testimony from

Network-1's licensees.  "Actions speak louder than words, and, in ascertaining what the parties

intended, it is permissible to look to what the parties did …."  *In re Gill*, 92 F.2d 810, 811 (5th

Cir. 1937).  The licensees did not pay small amounts to avoid further litigation.  They paid large

license fees far exceeding the costs and associated burdens of trial—collectively over $100

million. Ex. 26 at 8-9, 11.  This shows overwhelming "industry respect" for the '930 patent and

is "objective evidence of non-obviousness" under Federal Circuit law.  *WMS Gaming, Inc. v.*

*Int'l Game Tech*., 184 F.3d 1339, 1359 (Fed. Cir. 1999). [17]

## III.    The Court should also conditionally grant a new trial on validity.

Network-1's motion demonstrated that a new trial on validity should be granted because

(A) the jury's obviousness verdict was against the great weight of the evidence, Mot. 28-29,

(B) Dr. Fisher's testimony should have been excluded, *id*. at 29-30, and (C) HP made improper

arguments in closing, *id*. at 30-33.  For (A) and (B), HP's Response repeats the same flawed

arguments addressed above.  For (C), HP makes three flawed arguments that we rebut in turn.

Waiver.  HP asserts that Network-1 "failed to object" to HP's improper closing

arguments. Opp. 28.  But "under Fifth Circuit law this ostensible waiver … does not preclude

the district court from exercising its discretion to consider the issue."  *LaserDynamics, Inc. v.*

*Quanta Computer, Inc*., 694 F.3d 51, 70 (Fed. Cir. 2012).  Courts exercise this discretion "where

the interest of substantial justice is at stake."  *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276,

286 (5th Cir. 1975); *Commil USA, LLC v. Cisco Sys., Inc*., 2:07-CV-341, 2010 WL 11484496, at

---

[17] That the licensees did not expressly "admi[t]…infringement or validity," Opp. 25, 2, in no way supports a contrary inference.  It is unheard of for license agreements to include such admissions because, absent formal judgment, no sophisticated technology company would admit it was infringing a valid patent.

15

*1-2 (E.D. Tex. Dec. 29, 2010).  Substantial justice is at stake when counsel makes assertions during closing that are "either false or without basis in the record."  *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5ᵗʰ Cir. 2014) (internal quotations omitted).  In its closing, HP falsely asserted, with no basis in the record, that Cummings disclosed a "low level current" and that HP's Patent Office expert had never seen so much evidence of invalidity.  Mot. 30-33.  Thus substantial justice is at stake, and the Court should exercise its discretion to grant a new trial. [18]

<u>Cummings argument</u>.  HP asserts that it never "suggested that the Cummings Patent disclosed the 'low-level current' of the '930 Patent."  Opp. 29.  This is false.  HP argued: "So say Woodmas doesn't disclose it [the "low-level current"] … what else was out there?"  Ex. 37, 129:2-20.  HP then pointed to Cummings: "So there's so much evidence of this low current going to detection circuitry. Who else do we have? … the Cummings patent."  *Id.,* 131:16-132:1.

HP asserts that its Cummings argument was proper because its non-infringement expert, Dr. Davis, testified that Cummings "disclosed detection 'with a low level – a low current power signal.'"  Opp. 29.  But in fact Dr. Davis testified that the "low level current" of the '930 patent was *different* from the "low current power" in Cummings.  Ex. 34 at 16:3-17:24.  And no expert testified that Cummings taught a "low level current," or that Cummings supported HP's obviousness defense in any way. [19, 20]

---

[18] HP asserts that its arguments were "harmless" because the jury was instructed that "statements of counsel were not evidence."  Opp. 28.  But instructions may only cure improper arguments that "do[] not rise to the level affecting substantial justice."  *In re Isbell Records, Inc.*, 774 F.3d 859, 872 (5th Cir. 2014); *Commil USA, LLC v. Cisco Sys., Inc.*, 2:07-CV-341, 2010 WL 11484496, at *2 (E.D. Tex. Dec. 29, 2010) (granting a new trial, despite a "curative instruction," because improper arguments affected substantial justice).

[19] Moreover, because HP never disclosed Cummings in its Invalidity Contentions, it was improper for HP to assert this reference for obviousness.  Mot. 31.

[20] HP asserts that its argument was proper because Cummings "was simply used to demonstrate what Mr. Horowitz admitted during trial—that the detection scheme in the '930 Patent might be obvious."  Opp. 29.  But neither Mr. Horowitz, nor any witness at trial, said anything about Cummings making the '930 patent obvious.

Godici argument.  HP suggests that its argument was innocuous because it merely commented on "the 'amount' of prior art" (not the invalidity of the patent), which is "not material to any claim or defense."  Opp. 29.  But HP did not merely comment on the amount of prior art—HP asserted that Mr. Godici, the former Director of the PTO, stated that "he could not believe … how much evidence this case had with respect to this patent being invalid."  Mot. 33.

HP asserts that its argument was supported by Mr. Godici's testimony about the "large number of prior art references that placed the validity of the '930 Patent into question," i.e., those presented during prosecution and reexamination.  Opp. 29-30.  But Mr. Godici testified about references that were considered by the PTO, and found *not invalidating*, during prosecution and reexamination.  This is not "evidence…with respect to this patent being invalid."

HP asserts that its argument was not like the one found improper in *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 285 (5th Cir. 1975), because HP did not "introduc[e] an 'admission' that the jury had never seen or heard about."  Opp. 29.  But HP did exactly what the Fifth Circuit has held requires a new trial—it "plac[ed] material facts not in evidence before the jury," *Edwards*, 512 F.2d at 285, by making assertions that were "false or without basis in the record," *In re Isbell*, 774 F.3d at 872.


Date: March 16, 2018                          Respectfully submitted,

                                              By:  /s/ *Sean A. Luner*
                                              Sean A. Luner
                                              CA State Bar No. 165443
                                              Gregory S. Dovel
                                              CA State Bar No. 135387
                                              Christin Cho
                                              CA State Bar No. 238173
                                              Jonas Jacobson
                                              CA State Bar No. 269912
                                              DOVEL & LUNER, LLP
                                              201 Santa Monica Blvd., Suite 600

Santa Monica, CA 90401
Telephone:  310-656-7066
Email:  sean@dovel.com
Email:  greg@dovel.com
Email:  christin@dovel.com
Email:  jonas@dovel.com

T. John Ward, Jr.
State Bar No. 00794818
Claire Henry
State Bar No. 24053063
Andrea Fair
State Bar No. 24078488
WARD, SMITH & HILL, PLLC
1127 Judson Road, Suite 220
Longview, Texas 75601
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
Email: jw@wsfirm.com
Email: claire@wsfirm.com
Email: andrea@wsfirm.com

ATTORNEYS FOR PLAINTIFF,
NETWORK-1 TECHNOLOGIES, INC.

## **Certificate of Service**

I certify that this document is being filed electronically and, as a result, is being served on counsel of record through the Electronic Filing System on the filing date listed above.

/s/ *Sean A. Luner*
Sean A. Luner