**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| NETWORK-1 TECHNOLOGIES, INC.<br><br>   Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY AND HEWLETT PACKARD ENTERPRISE COMPANY<br><br>   Defendants. | CASE NO. 6:13-cv-072-RWS<br><br>JURY TRIAL DEMANDED |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S
<u>MOTION FOR NEW TRIAL ON INFRINGEMENT</u>**

## TABLE OF CONTENTS

**Page**

I. HP's switches never deliver detection currents from a main power source. ...................... 1

II. HP's switches do not have the required main power source. .............................................. 5

III. HP's products do not use a low level current. ..................................................................... 6

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Biscotti Inc. v. Microsoft Corp.*,
   No. 2:13-cv-01015-JRG, 2018 WL 1457309 (E.D. Tex. Mar. 23, 2018) .............................. 2, 7

*Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*,
   No. 6:11-cv-492-RWS-KNM, Dkt. 964 (E.D. Tex. Sept. 14, 2017) ......................................... 7

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
   841 F.3d 669 (5th Cir. 2016) ................................................................................................. 8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................................................................. 4

*Roman v. W. Mfg., Inc.*,
   691 F.3d 686 (5th Cir. 2012) ................................................................................................. 8

*SSL Servs., LLC v. Citrix Sys., Inc.*,
   940 F. Supp. 2d 480 (E.D. Tex. 2013) .................................................................................. 2

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
   778 F.3d 1365 (Fed. Cir. 2015) .......................................................................................... 4, 5

*z4 Techs., Inc. v. Microsoft Corp.*,
   507 F.3d 1340 (Fed. Cir. 2007) ............................................................................................. 6

**TABLE OF EXHIBITS**

| Exhibit[1] | Description |
|---|---|
| 1 | HP-Dkt.[2] 75 – 11/7/17 a.m. trial transcript |
| 2 | HP-Dkt. 76 – 11/7/17 p.m. trial transcript |
| 3 | HP-Dkt. 77 – 11/8/17 a.m. trial transcript |
| 4 | HP-Dkt. 78 – 11/8/17 p.m. trial transcript |
| 5 | HP-Dkt. 79 – 11/9/17 a.m. trial transcript |
| 6 | HP-Dkt. 80 – 11/9/17 p.m. trial transcript |
| 7 | HP-Dkt. 83 – 11/10/17 p.m. trial transcript |
| 8 | HP-Dkt. 84 – 11/13/17 trial transcript (first excerpt) |
| 9 | DX87 – IEEE Standard 802.3at-2009 |
| 10 | DX88 – IEEE Standard 802.3af-2003 |
| 11 | HP-Dkt. 84 – 11/13/17 trial transcript (second excerpt) |

---

[1] Exhibits 1-10 were submitted with HP's response brief (Dkt. 109). Exhibit 11 is submitted with the present brief.

[2] "HP-Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Hewlett-Packard Company and Hewlett Packard Enterprise Company*, Case No. 6:13-cv-00072. "Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, C.A. 6:11-cv-492-RWS-KNM (E.D. Tex.).

At trial and in response to Network-1's new trial motion, HP established that three separate patent claim elements are absent from HP's products—thus demonstrating three independent grounds for upholding the jury's non-infringement verdict. In its reply brief, Network-1 continues to ignore the vast majority of HP's evidence. Rather than address the evidence, Network-1 raises untimely claim construction arguments at odds with the Court's construction and its own expert's concessions to the jury. The jury's non-infringement verdict rests on ample evidence properly applying the Court's constructions. The Court should thus deny Network-1's motion for a new infringement trial.

I. **HP's switches never deliver detection currents from a main power source.**

As HP's response explains, three separate HP witnesses—Tremblay,[3] Dwelley,[4] and Davis[5]—testified that HP's switches never deliver detection currents from a power source. Network-1's reply ignores all of this evidence, once again leaving HP's strong showing of non-infringement uncontroverted.

Rather than confront this evidence, Network-1 attempts to circumvent it by raising a straw man. Network-1 claims, "HP asserts that, in its switches, a downstream PoE chip limits the current delivered from an upstream power source."[6] But HP has made no such assertion. Rather, as HP's response explains, the PoE chips in HP's switches create detection currents and the PoE chips then deliver those currents.[7] That the PoE chips receive power from an upstream power

---

[3] Dkt. 109 ("Response") at 3-5 (citing Response Ex. 5 (Tremblay) at 31:25-32:16, 28:16-21, 30:16-31:13, 63:1-7, 87:14-17.
[4] Ex. 5 (Dwelley) at 68:10-17, 94:2-7, 94:13-19, 98:2-4, 111:20-23, 112:3-5, 112:6-113:12, 128:13-20.
[5] Ex. 5 (Davis) at 12:21-23, 50:6-13, 50:16-20, 58:18-59:9.
[6] Dkt. 115 ("Reply") at 1 (emphasis added). To support its incorrect assertion, Network-1 misquotes Dwelley's testimony. *See* Reply at 1 n. 3 (quoting Motion Ex. 6 (Dwelley) at 111:21-111:22). At the quoted lines, Dwelley testified that "the detection test currents are generated inside the [Linear] 4270 chip," consistent with HP's position. Opening Br. Ex. 6 (Dwelley) at 111:21-22 (emphasis added).
[7] Response at 2-8.

source is not equivalent to that power source "delivering" detection currents.[8] Because it is the PoE chips themselves that create detection currents, those detection currents do not exist at the power supplies upstream of the PoE chips.[9] Thus, in HP's switches, detection currents cannot be delivered from the power supplies for the simple reason that the detection currents do not exist at the power supplies—they are first created downstream at the PoE chips.

For this same reason, Network-1's related arguments also fail. For example, Network-1 claims, without any evidence, that "[i]t is undisputed that HP's detection current flows from the upstream power source,"[10] but that is simply incorrect. What is undisputed is that detection currents <u>never</u> flow from, or even exist at, any of the power supplies in HP's switches. Three separate witnesses testified that this is how HP's switches work, and Network-1 failed entirely to offer any evidence to the contrary.

Unable to argue that the jury lacked sufficient evidence to support their verdict, Network-1 resorts to its familiar argument that HP "fails to apply the Court's construction and instead applies a construction that was rejected by the Court."[11] At the outset, Network-1's eleventh-hour claim construction argument—first raised in its reply—cannot form the basis for a new trial. *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG, 2018 WL 1457309, at *11 (E.D. Tex. Mar. 23, 2018). Network-1 also waived all objections to the evidence it targets with its tardy claim construction theory by failing to object to that evidence at trial. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 940 F. Supp. 2d 480, 492 (E.D. Tex. 2013) ("SSL has waived any objection it

---

[8] For this reason, Network-1's assertion that "if the upstream power source were turned off, there would be no detection current" is misplaced. *See* Reply at 2. Network-1 also incorrectly suggests that HP is "requiring the 'main power source' to <u>directly</u> do the 'delivering.'" *See* Reply at 2 n.5 (emphasis added). Consistent with witness testimony, HP asserts that no power source ever delivers detection currents—either directly or indirectly.
[9] *Id.*
[10] Reply at 2. Network-1 relies on Knox's misplaced analogy, but that analogy fails as discussed in HP's response. *See* Response at 5-6.
[11] Reply at 8; *see also* Reply Ex. 28 at 17.

<u>**SUR-REPLY IN OPPOSITION TO MOTION FOR NEW INFRINGEMENT TRIAL**</u> – Page 2

might have had to the testimony presented at trial because it failed to object to such testimony during the direct examination at trial."). But even if considered, Network-1's new claim construction argument fails for several reasons.

First, the Court did not construe the language "delivering … from said main power source" but instead gave that language its plain and ordinary meaning.[12] Thus, contrary to Network-1's suggestion, HP cannot have "fail[ed] to apply the Court's construction" of this language as there is no such construction.

Also incorrect is Network-1's suggestion that HP narrowed the claim language "delivering" to "supplying" or "creating."[13] HP's witnesses consistently testified that HP's detection currents are <u>delivered</u> from PoE chips and not delivered from any power sources. For example, HP's expert, Dr. Nathaniel Davis, testified that "Hewlett-Packard products' detection currents are <u>not delivered from</u> the main power source" and that the PoE chip "<u>delivers</u> the detection currents."[14] Consistent with Dr. Davis' testimony, HP's resident PoE expert, David Tremblay, and former PoE chip designer David Dwelley both confirmed that the PoE chips, and not the power sources, are what <u>deliver</u> detection currents.[15] All three witnesses further explained that the PoE chips in HP's switches create detection currents, but none testified that they believed the claim language "delivering … from" is limited to creating or supplying detection currents. Rather than testify about what the claims mean, each witness explained how HP's switches work, underscoring that the switches cannot deliver detection currents from a power supply because

---

[12] Reply Ex. 28 at 17.
[13] Network-1 misstates HP's position as "a 'main power source' must be where the detection current is 'created,'" and does so by quoting misleadingly from HP's response brief. *See* Reply at 1 (purporting to quote Response at 8 but eliminating an intervening sentence with ellipses). That assertion nowhere appears in HP's response.
[14] Ex. 6 (Davis) at 12:21-23.
[15] Ex. 5 (Tremblay) at 31:25-32:16, 28:16-21, 30:16-31:13, 63:1-7, 87:14-17; *see id.* (Dwelley) at 68:10-17, 94:2-7, 94:13-19, 98:2-4, 111:20-23, 112:3-5, 112:6-113:12, 128:13-20.

those currents are created downstream of the power supplies. Again, the power supplies cannot deliver detection currents because those currents do not exist at the power supplies—they only come in existence downstream at the PoE chips.

Network-1 also asserts incorrectly that HP's "non-infringement theory was rejected by the Court in claim construction."[16] The Court's claim construction order did not address non-infringement theories. Again, the order held that the "delivering…from" language should be given its plain meaning.[17] Network-1 suggests this ruling somehow bars HP from referencing where detection currents originate,[18] but the plain claim language imposes no such restriction. Indeed, on direct examination, Network-1's own expert, Knox, testified that he understands this claim language in reference to where the current "has to originate":

> One of the requirements, one of the steps, if you will, of this [claim language] is that we need to deliver a low level current. In other words, <u>we have to have a low level current from the main power source – that's where it has to originate</u>….[19]

Knox's admission underscores that HP did not restrict the "delivering … from said main power source" language but rather applied its ordinary and customary meaning to persons of ordinary skill in the art, consistent with Federal Circuit precedent and this Court's instructions to the jury.[20] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention.").

---

[16] Reply at 1.
[17] Reply Ex. 28 at 17.
[18] Reply at 1-2.
[19] Ex. 1 (Knox) at 111:1-6 (emphasis added).
[20] Ex. 11 (jury instructions) at 51:18-20 ("The claim language I have not interpreted for you in your notebook is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.").

For this reason, Network-1's reliance on *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365 (Fed. Cir. 2015), is also misplaced. In *Warsaw*, the court rejected a party's attempt in post-trial briefing to offer "a new and more detailed interpretation of the claim language and test the jury verdict by that new and more detailed interpretation." *See id.* at 1373. Here, by contrast, HP has not offered a new or more detailed interpretation of the "delivering … from said main power source" claim language. HP and its witnesses applied the exact words of the claim language and did so in a manner that was consistent with Network-1's own expert's understanding of that claim language.

Network-1 also relies incorrectly on deposition testimony that was never before the jury. On page 3 of its reply, Network-1 quotes deposition testimony from Dr. Dean Neikirk, HP's invalidity expert, in which Dr. Neikirk opined on a hypothetical divorced from both the claim language and the operation of the accused products. Dr. Neikirk's deposition testimony has no bearing on the meaning of the "delivering…from" claim language. The deposition testimony is also not germane here because it is not part of the trial record. Network-1's resort to material outside the trial record simply highlights its weak infringement case.[21]

## II.     HP's switches do not have the required main power source.

As HP's response details, HP established with overwhelming evidence that HP's switches do not have a "main power source" that meets the dual requirements of the claim language.[22] In reply, Network-1 makes <u>no</u> effort to address any of this evidence, but simply repeats the

---

[21] Network-1's resort to the '930 patent's preferred embodiment similarly fails. *See* Reply at 3 n.6. Contrary to Network-1's assertion, HP is not "[p]recluding downstream circuitry from limiting the current 'from said main power source' to a low level." *See id.* As discussed above, the PoE chips in HP's switches <u>create</u> detection currents—not limit them—and thus those detection currents simply do not exist upstream of those PoE chips.
[22] Response at 8-13.

arguments in its opening brief. Pages 8-13 of HP's response fully address why Network-1's arguments lack merit. HP briefly re-addresses Network-1's primary argument below.

Network-1 claims HP did not demonstrate that two types of HP switches lack the "main power source." To the contrary, as detailed in HP's response, HP demonstrated that every HP switch lacks the "main power source." Tremblay made this point unambiguously:

> Q. Is there any one PoE switch that Hewlett-Packard makes where one power supply provides power both to the switch circuitry and also delivers the detection current?
> A. No, ma'am. There is no power supply that could do that.[23]

So did Dowling:

> Q. Is there one power supply that powers both this – the switchboard and the PoE board in the HP Power over Ethernet switches?
> A. No.[24]

Consistent with Tremblay and Dowling, Davis testified that "Hewlett-Packard products' detection currents are not delivered from the main power source that also supplies power to the data node."[25] Therefore, contrary to Network-1's assertion, three separate HP witnesses established that no HP switch meets the dual requirements of the claimed "main power source."

### III. HP's products do not use a low level current.

As HP's response explains, HP presented three separate witnesses who independently established that no HP switch uses a "low level current" as that term was construed by the Court.[26] In reply, Network-1 once again ignores the vast majority of this evidence.

Instead, Network-1 mischaracterizes the evidence, asserting that "HP cites only to general conclusions" and "conclusory testimony."[27] Even a cursory review of pages 13-18 of HP's

---

[23] Ex. 5 (Tremblay) at 42:13-16.
[24] Ex. 4 (Dowling) at 106:12-15.
[25] Ex. 6 (Davis) at 12:21-23; *see id.* at 46:19-22.
[26] Response at 13-18.

response shows Network-1 is wrong here. Through three separate witnesses, documentary evidence, and a live demonstration, HP established overwhelmingly that HP's detection currents cannot begin start up of an access device—and thus HP does not satisfy the "low level current" element.[28]

Network-1 next resorts to another straw man, asserting that "HP does not present any evidence (or even attorney argument) to prove that beginning to start up <u>essential components</u> of the access device is not beginning to start up the 'access device.'"[29] But HP has no obligation to rebut Network-1's misinterpretation of the Court's construction. As HP's response explains, the construction of "low level current" is not that the current must be sufficient to "begin start up of <u>essential components</u>" in an access device (whatever that means).[30]

Network-1 also claims that "undisputed evidence" undermines Dwelley's analogy likening an access device to a picture on the wall.[31] First, Mr. Dwelley offered explicit and detailed explanation concerning the operation of the accused devices, not just an analogy.[32] And again, as HP's response explained, Network-1's "evidence" on this point is irrelevant to the Court's construction of "low level current"—that "evidence" only applies to Network-1's misinterpretation of the construction.[33] Applied to the actual construction, Dwelley's analogy

---

[27] Reply at 4-5.
[28] Therefore, *z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340 (Fed. Cir. 2007), does not apply here. *See* Reply at 5. Here, unlike *z4*, the testimony supporting the jury's non-infringement finding is far from conclusory.
[29] Reply at 5-6.
[30] Response at 17. To the extent Network-1 is now urging that the construction of "low level current" requires that the current be sufficient to "begin start up of <u>essential components</u>" in an access device, that argument cannot form the basis for a new trial. *See Biscotti*, 2018 WL 1457309, at *11. Before submitting its new trial motion, Network-1 never once argued that the term "essential components" belongs in the construction of "low level current."
[31] Reply at 7.
[32] Ex. 5 (Dwelley) at 115:5, 115:14-15, 115:16-25, 116:5-12.
[33] Response at 16-17.

<u>SUR-REPLY IN OPPOSITION TO MOTION FOR NEW INFRINGEMENT TRIAL</u> – Page 7

taken together with all of the other testimonial and documentary evidence fully supports a finding that no HP product uses a "low level current."[34]

Last, and perhaps least, Network-1 urges this Court to re-weigh evidence and re-judge witness credibility.[35] That argument must fail because "it is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (citing *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012)). The jurors weighed the facts and determined that the evidence supports a finding of non-infringement. The jury's determination should not be disturbed.

* * *

There is ample evidence supporting the jury's non-infringement verdict. The Court should deny Network-1's motion for a new trial on the issue of infringement.

---

[34] Network-1 does not dispute that it failed to object at trial to whatever evidence it now argues "appl[ied] an improper claim construction," and that Network-1 thereby waived that argument. *See* Reply at 7 n.13. Instead, Network-1 misplaces reliance on this Court's *Daubert* ruling. *See id.* In denying Network-1's *Daubert* motion, this Court rejected Network-1's accusation that Dr. Davis misapplied the Court's construction, and did so on the basis that "Plaintiff [Network-1] mischaracterizes Dr. Davis's testimony." *See Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, Case No. 6:11-cv-492-RWS-KNM, Dkt. 964 at 7 (E.D. Tex. Sept. 14, 2017). As HP's response explains, Network-1 similarly mischaracterizes testimony in its new trial motion. *See* Response at 17-18.
[35] Reply at 5.

        Respectfully submitted,

        */s/ Jennifer H. Doan*
        Jennifer H. Doan
        Texas Bar No. 08809050
        Joshua R. Thane
        Texas Bar No. 24060713
        HALTOM & DOAN
        6500 Summerhill Road, Suite 100
        Texarkana, TX 75503
        Telephone: (903) 255-1000
        Facsimile: (903) 255-0800
        Email: jdoan@haltomdoan.com
        Email: jthane@haltomdoan.com

        Hersh H. Mehta
        IL Bar No. 6306586
        McDermott Will & Emery LLP
        444 West Lake Street
        Chicago, IL 60606-0029
        Telephone: (312) 372-2000
        Facsimile: (312) 984-7700
        hmehta@mwe.com

        Jodi Benassi
        CA Bar No. 309048
        McDermott Will & Emery LLP
        275 Middlefield Road, Suite 100
        Menlo Park, CA 94025
        Telephone: (650) 815-7415
        Facsimile: (650) 815-7401
        Email: jbenassi@mwe.com

        Natalie A. Bennett
        McDermott Will & Emery LLP
        500 North Capitol Street, N.W.
        Washington, D.C.  20001
        (202) 758-8000
        Email:  nbennett@mwe.com

                Mark E. Ferguson
                IL Bar No. 6185448
                Mark S. Ouweleen
                IL Bar No. 6231188
                Faye E. Paul
                IL Bar No. 6306719
                Bartlit Beck Herman Palenchar & Scott LLP
                54 W. Hubbard Street, Ste. 300
                Chicago, IL 60654
                Telephone: (312) 494-4400
                Facsimile: (312) 494-4440
                Email: mark.ferguson@bbhps.com
                Email: mark.ouweleen@bbhps.com
                Email: faye.paul@bbhps.com

                **ATTORNEYS FOR DEFENDANTS HEWLETT-PACKARD COMPANY AND HEWLETT PACKARD ENTERPRISE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned certifies all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 30th day of March, 2018.

                */s/ Jennifer H. Doan*
                Jennifer H. Doan