# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

NETWORK-1 TECHNOLOGIES, INC.

        Plaintiff,

vs.

HEWLETT-PACKARD COMPANY AND
HEWLETT PACKARD ENTERPRISE
COMPANY

        Defendants.

CASE NO. 6:13-cv-072-RWS

JURY TRIAL DEMANDED

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR NEW TRIAL ON VALIDITY

# TABLE OF CONTENTS

I.    PLAINTIFF'S RENEWED REQUEST FOR JMOL SHOULD BE DENIED .................. 1

    A.    Physical and Documentary Evidence Corroborate the Open, Publicly Used Fisher System ............................................................................................................ 2

        1.    The Fisher System Itself [DX500] and Dr. Fisher's Patents Corroborate Dr. Fisher's Compelling Testimony .......................................................... 2

        2.    The Fisher System was Public; Not Confidential or Secret ...................... 5

    B.    Plaintiff's Estoppel Argument is Contrary to Federal Circuit Authority ............... 6

    C.    Plaintiff's Silence Waived the Remainder of The Grounds .................................. 6

    D.    There is Substantial Evidence For the Jury to Find the Patent Obvious ............... 7

        1.    The Alleged Secondary Considerations Cannot Overcome the Jury's Verdict .................................................................................................... 7

        2.    The Obviousness Combination Disclosed "Low-level current" ................ 9

        3.    The Obviousness Combination Disclosed "Secondary Power Source" ... 12

        4.    The Obviousness Combination Disclosed "Main Power Source" ............ 13

    E.    Dr. Neikirk Provided a Detailed Motivation to Combine the Prior Art References .................................................................................................................... 14

II.   PLAINTIFF'S RULE 59 REQUEST FOR NEW TRIAL SHOULD BE DENIED ......... 14

    A.    Plaintiff's Late Complaints of Jury Confusion and Improper Closing Statements Lack Merit ........................................................................................................ 14

        1.    The Cummings Patent was Properly Referenced in Closing with Other Prior Art Showing Early Detection Methods. ........................................... 15

        2.    Mr. Godici's Testimony was Properly and Accurately Included in Closing. .................................................................................................... 17

        3.    The Jury's Verdict Is Supported by the Great Weight of Evidence and the Fisher System is Prior Art ...................................................................... 17

III.  CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*ActiveVideo Networks, Inc. v. Verizon Communications, Inc.*,
   694 F.3d 1312 (Fed. Cir. 2012) ................................................................. 6

*Alza Corp. v. Mylan Labs., Inc.*,
   464 F.3d 1286 (Fed. Cir. 2006) ............................................................... 14

*Barry v. Medtronic, Inc.*,
   230 F. Supp. 3d 630 (E.D. Tex. 2017) ..................................................... 2

*Baxter Int'l, Inc. v. COBE Labs., Inc.*,
   88 F.3d 1054 (Fed. Cir. 1996) ................................................................. 5

*Biscotti, Inc. v. Microsoft Corp.*,
   No. 2:13-CV-01015-JRG, Dkt. No. 333 (E.D. Tex. Mar. 23, 2018) ........ 14

*Blackboard, Inc. v. Desire2Learn Inc.*,
   574 F.3d 1371 (Fed. Cir. 2009) ............................................................... 7

*Cellular Commc'ns Equip., LLC v. Apple Inc.*,
   No. 6:14-CV-251, 2016 WL 6884076 (E.D. Tex. Aug. 30, 2016) .................... 12, 13

*Checkpoint Sys., Inc. v. All-Tag Sec. SA*,
   412 F.3d 1331 (Fed. Cir. 2005) ............................................................... 3

*Commil USA, LLC v. Cisco Sys., Inc.*,
   2:07-CV-341, 2010 WL 11484496 (E.D. Tex. Dec. 29, 2010) ................. 15

*Computer Sys. Eng'g, Inc. v. Qantel Corp.*,
   740 F.2d 59 (1st Cir. 1984) ..................................................................... 15

*Cordance Corp. v. Amazon.com, Inc.*,
   658 F.3d 1330 (Fed. Cir. 2011) ............................................................... 15

*Decorte v. Jordan*,
   497 F.3d 433 (5th Cir. 2007) ................................................................. 6, 9

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   534 F. Supp. 2d 224 (D. Mass. 2008) ..................................................... 11

*Dey, L.P. v. Sunovion Pharm., Inc.*,
   715 F.3d 1351 (Fed. Cir. 2013) ............................................................... 5

*Eli Lilly & Co. v. Aradigm Corp.*,
  376 F.3d 1352 (Fed. Cir. 2004) ............................................................... 2

*Eolas Techs. Inc. v. Microsoft Corp.*,
  399 F.3d 1325 (Fed. Cir. 2005) ............................................................... 5

*Finnigan Corp. v. Int'l Trade Comm'n*,
  180 F.3d 1354 (Fed. Cir. 1999) ........................................................... 3, 4

*Glass v. Petro–Tex Chemical Corp.*,
  757 F.2d 1554 (5th Cir.1985) ................................................................. 1

*HP Inc. v. MPHJ Tech. Invs., LLC*,
  817 F.3d 1339 (Fed. Cir. 2016) ............................................................... 6

*In re Jolley*,
  308 F.3d 1317 (Fed. Cir. 2002) ............................................................... 3

*In re Mouttet*,
  686 F.3d 1322 (Fed. Cir. 2012) ............................................................. 13

*InTouch Technologies v. VGO Comm.*,
  751 F.3d 1327 (Fed. Cir. 2014) ......................................................... 11, 12

*Knorr v. Pearson*,
  671 F.2d 1368 (C.C.P.A. 1982) ............................................................... 4

*KSR Intern. Co. v. Teleflex Inc.*,
  550 U.S. 398 (2007) ............................................................................. 16

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) ................................................................. 15

*Netscape Commc'ns Corp. v. Konrad*,
  295 F.3d 1315 (Fed. Cir. 2002) ............................................................... 5

*NFC Tech., LLC v. Matal*,
  871 F.3d 1367 (Fed. Cir. 2017) ............................................................... 3

*Nissho–Iwai Co. v. Occidental Crude Sales, Inc.*,
  848 F.2d 613 (5th Cir.1988) ................................................................. 15

*OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*,
  841 F.3d 669 (5th Cir. 2016) .................................................................. 2

*Orion IP, LLC v. Hyundia Motor Am.*,
  605 F.3d 967 (Fed. Cir. 2010) ............................................................... 7

*Rideau v. Parkem Indus. Servs., Inc.*,
   917 F.2d 892 (5th Cir. 1990) ................................................................................................ 1

*Roman v. W. Mfg., Inc.*,
   691 F.3d 686 (5th Cir. 2012) ................................................................................................ 2

*Rosco, Inc. v. Mirror Lite Co.*,
   120 F. App'x 832 (Fed. Cir. 2005) ...................................................................................... 4

*Rothman v. Target Corp.*,
   556 F.3d 1310 (Fed. Cir. 2009) ........................................................................................... 8

*Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*,
   817 F.3d 1293 (Fed. Cir. 2016 ............................................................................................. 6

*Thomas & Betts Corp. v. Litton Sys.*, Inc.,
   720 F.2d 1572 (Fed. Cir. 1983) .......................................................................................... 16

*United States ex rel. Harman v. Trinity Indus., Inc.*,
   166 F. Supp. 3d 737 (E.D. Tex. 2015), rev'd on other grounds, 872 F.3d 645 (5th Cir. 2017) 10

*Voter Verified, Inc. v. Premier Election Solutions*,
   698 F.3d 1374 (Fed. Cir. 2012) ........................................................................................... 5

*Wyers v. Master Lock Co.*,
   616 F.3d 1231 (Fed. Cir. 2010) .......................................................................................... 14

# TABLE OF EXHIBITS[1]

| Exhibit | Description |
|---|---|
| 1 | HP-Dkt.[2] 75 – 11/6/17 trial transcript (excerpts) |
| 2 | HP-Dkt. 76 – 11/7/17 p.m. trial transcript (excerpts) |
| 3 | HP-Dkt. 77 – 11/8/17 a.m. trial transcript (excerpts) |
| 4 | HP-Dkt. 80 – 11/9/17 p.m. trial transcript(excerpts) |
| 5 | HP-Dkt. 82 – 11/10/17 a.m. trial transcript (excerpts) |
| 6 | HP-Dkt. 83 – 11/10/17 p.m. trial transcript (excerpts) |
| 7 | HP-Dkt. 84 – 11/13/17 trial transcript (excerpts) |
| 8 | P1 – U.S. Patent No. 6,218,903 |
| 9 | P186 - Settlement Agreement and Patent License Agreement – between Network-1 & Sony |
| 10 | P187 - Settlement Agreement and Patent License Agreement – between Network-1 & ALE |
| 11 | P188 - Settlement Agreement, Patent License Agreement, Stipulation Of Dismissal, And Order Dismissing – between Network-1 & Alcatel-Lucent |
| 12 | P253 – Information Disclosure Sheet |
| 13 | DX27 - September 29, 2003 Email from Corey Horowitz to George Conant titled Merlot Patents2 |
| 14 | DX89 - Fisher System Images |
| 15 | DX119 - U.S. Patent No. 5,345,592 ("Woodmas") |
| 16 | DX123 - WO 98/54843 ("Fisher International") |
| 17 | DX124 - WO 98/57248 ("Chang International") |
| 18 | DX138 - U.S. Patent No. 6,496,105 ("Fisher") |
| 19 | DX139 - U.S. Patent No. 6,710,704 ("Fisher") |
| 20 | DX144 - U.S. Patent No. 5,991,885 ("Chang") |
| 21 | DX157 - U.S. Patent No. 5,994,998 ("Fisher") |
| 22 | DX314 – Settlement and License Agreement between Network-1 and Cisco |
| 23 | DX315 - Settlement and License Agreement between Network-1 and Transition Networks |
| 24 | DX316 - Settlement and License Agreement between Network-1 and Motorola |
| 25 | DX317 - Settlement and License Agreement between Network-1 and GarrettCom |
| 26 | DX319 - Settlement and License Agreement between Network-1 and NEC |
| 27 | DX320 - Settlement and License Agreement between Network-1 and Samsung |
| 28 | DX322 - Settlement and License Agreement between Network-1 and ShoreTel |
| 29 | DX324 - Settlement and License Agreement between Network-1 and Dell |
| 30 | DX325 - Settlement and License Agreement between Network-1 and Polycom |
| 31 | DX500 - Fisher System – Physical Exhibit |
| 32 | DDX5 – Dr. Dean Neikirk's Demonstratives |
| 33 | Rebuttal Expert Report of Nathaniel Davis on Infringement (excerpts) |

---

[1] Exhibits 1−34 were submitted with HP's Response (Dkt. No. 111). Exhibits 35−38 are submitted with the present brief.
[2] "HP-Dkt." refers to the docket in *Network-1 Technologies, Inc. v. Hewlett-Packard Company and Hewlett Packard Enterprise Company*, Case No. 6:13-cv-00072.

| | |
|---|---|
| 34 | Amended Expert Report of Dean Neikirk on Invalidity (excerpts) |
| 35 | DX146 - U.S. Patent No. 5,406,260 |
| 36 | HP-Dkt. 83 – 11/10/17 p.m. trial transcript (additional excerpts) |
| 37 | HP-Dkt. 78 – 11/8/17 p.m. trial transcript (excerpts) |
| 38 | HP-Dkt. 84 – 11/13/17 trial transcript (additional excerpts) |

Plaintiff surprisingly concedes one compelling fact— ████████████

████████████████████████████████████████████████

████████████████████████████████ With this foundation, the jury received extensive testimony, prior art patents, a physical prior art system, and expert testimony establishing with clear and convincing evidence that the detection method claimed in the '930 Patent was not new.

Plaintiff also ignores the great deference that must be afforded to the jury's verdict, and it improperly asks this Court to overturn the verdict by reinterpreting intensely-factual issues for which there is more than sufficient evidence to support the jury's verdict of invalidity. Plaintiff repeatedly quotes piecemeal testimony, while ignoring the context and the evidence surrounding the testimony, and relies on inapposite case law. HP's Response includes substantial record evidence supporting the jury's general verdict of invalidity. Plaintiff's request for this Court to impermissibly reweigh the evidence and rejudge witness credibility must be rejected.

There is no basis to disturb the jury's verdict finding all of the asserted claims invalid, and Plaintiff's motion should be denied.

## I. PLAINTIFF'S RENEWED REQUEST FOR JMOL SHOULD BE DENIED

Fifth Circuit law consistently instructs that when analyzing a motion for judgment as a matter of law the court shall not "reweigh the evidence or [] re-evaluate credibility of witnesses." *Rideau v. Parkem Indus. Servs., Inc.*, 917 F.2d 892, 897 (5th Cir. 1990) (citing *Glass v. Petro–Tex Chemical Corp.*, 757 F.2d 1554, 1559 (5th Cir.1985). This is exactly what Plaintiff is requesting. It impermissibly asks the Court to weigh, for example, whether Dr. Fisher's testimony was believable and whether one expert's testimony should be believed over another. "[I]t is the function of the jury as the traditional finder of the facts, and not for the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *OneBeacon Ins. Co. v. T.*

*Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016) (citing *Roman v. W. Mfg., Inc.*, 691 F.3d 686, 692 (5th Cir. 2012)). The jury weighed the facts and determined that the asserted claims are invalid. That determination should not be disturbed.

**A.     Physical and Documentary Evidence Corroborate the Open, Publicly Used Fisher System**

Plaintiff concedes that the jury's determination that the Fisher System was in public use "must be upheld 'unless the jury was not presented with substantial evidence to support *any* set of implicit findings sufficient under the law to arrive at the conclusion.'" Opp. at 6 (quoting *Barry v. Medtronic, Inc.*, 230 F. Supp. 3d 630, 654 (E.D. Tex. 2017) (citing *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1362–63 (Fed. Cir. 2004))) (emphasis added). Plaintiff also concedes that the Fisher System was implemented and used at 3Com before the priority date of the '930 Patent. Reply at 1. And it is undisputed that the jury received evidence corroborating the foundational PoE inventions embodied in the Fisher System. Reply at 4 ("HP's evidence corroborated only (a portion of) the design of the Fisher System."). Thus, only one inquiry remains from Plaintiff's tortured argument—whether the Fisher System was cloaked with an expectation of confidentiality. As HP demonstrated in its opposition, there is **<u>no</u>** evidence that the Fisher System was confidential or secret. Opp. at 4-7. Thus, Plaintiff's argument fails.

The record evidence demonstrates that Dr. Fisher implemented and publicly used the Fisher System at 3Com without any expectation of privacy.

**1.     The Fisher System Itself [DX500] and Dr. Fisher's Patents Corroborate Dr. Fisher's Compelling Testimony**

Plaintiff does not contest that HP presented physical evidence of the Fisher System. *See* Ex. 31 [DX500]. It does not contest that HP presented U.S. patents and an international patent application to corroborate the Fisher System. *See* Exs. 16, 18, 19, and 21. And it does not contest that Dr. Neikirk provided substantive expert testimony to corroborate Dr. Fisher's description of

the Fisher System.  *See* Exs. 6 and 32.[3]  Unable to rebut the mountain of evidence, Plaintiff retreats

and now asserts that only a portion of the Fisher System was not corroborated.

Even so, the Federal Circuit is clear that "'corroboration of every factual issue contested

by the parties is not a requirement of the law.'"  *NFC Tech., LLC v. Matal*, 871 F.3d 1367, 1374

(Fed. Cir. 2017) (quoting *In re*

*Jolley*, 308 F.3d 1317, 1328 (Fed.

Cir. 2002).  HP's obvious

combination relied on the Fisher

System's disclosure of a (1) data

node, (2) access device, (3) data

signaling pair, and (4) main power



source—nothing more.  Ex. 32 (DDX-5.11) (see image above); *see* Ex. 6 at 23:22-24:5.  It is

unquestionable that HP presented physical evidence[4] (the actual Fisher System) made

contemporaneously with the inventive process ("All Rights Reserved © 1996"), which is the most

reliable proof that HP could present to corroborate Dr. Fisher's testimony.  *See* Ex. 7 at 67:9-11

(The Court's Final Jury Instructions stating that physical evidence is the "most reliable" proof of

corroboration).

Moreover, Plaintiff's reliance on *Finnigan* and *Rosco* are misplaced.  Even though HP

pointed out Plaintiff's flawed reliance on *Finnigan* in its Response, Plaintiff continues to press

---

[3] "Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other
than the alleged inventor or an interested party, may corroborate."  *Checkpoint Sys., Inc. v. All-
Tag Sec. S.A.,* 412 F.3d 1331, 1339 (Fed. Cir. 2005).
[4] In *NFC Tech.*, the Federal Circuit also noted that consideration should be given to the amount of
time that has passed since the invention (here approximately 23 years) when determining whether
testimony is adequately corroborated.   871 F.3d at 1374.

forward with the inapposite case. Opp. at 9-10. In *Finnigan*, the defendant asserted **anticipation** based on public use, but the **sole evidence** was the inventor's testimony. *Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1369-70 (Fed. Cir. 1999) (emphasis added). Similarly, in *Rosco*, the defendant asserted **anticipation** based on his own prior invention. *Rosco, Inc. v. Mirror Lite Co.*, 120 F. App'x 832, 834-837 (Fed. Cir. 2005) (non-precedential). In those cases, the Court found that the defendant failed to present corroborating evidence of an element of the claimed invention for an *anticipatory* reference. As this Court is well aware, unlike an obviousness challenge, anticipation requires "the presence in a *single prior art disclosure* of *all elements* of a claimed invention arranged as in the claim." *Id.* at 835-836 (emphasis added).

Plaintiff's reliance on *Finnigan* and *Rosco*, where a single element in an *anticipation* case was not proven, to support Plaintiff's skewed argument that every feature of the Fisher System (a single reference in a multi-reference obviousness case) must be corroborated totally independent of Dr. Fisher's testimony is disingenuous at best. As HP noted in its Response, "[t]he law does not impose an impossible standard of 'independence' on corroborative evidence by requiring that every point [necessary to prove invalidity] be corroborated by evidence having a source totally independent of the inventor. . . ." *Knorr v. Pearson*, 671 F.2d 1368, 1374 (C.C.P.A. 1982).

Unlike the inventors in *Rosco* and *Finnigan*, Dr. Fisher's inventor testimony was overwhelmingly corroborated by (1) the actual PoE system he developed in 1996 (with a stenciled Copyright date) [Ex. 14 & Ex. 31], (2) the Fisher Patents [Ex. 16, Ex. 18, Ex. 19, & Ex. 21], and (3) Dr. Neikirk's expert testimony. HP presented exactly the type of "devices, schematics, or other materials that typically accompany the inventive process" in order to corroborate Dr. Fisher's convincing testimony. *See Finnigan*, 180 F.3d at 1366. Plaintiff's appeal to have the Court reweigh this evidence should rejected.

## 2. The Fisher System was Public; Not Confidential or Secret

There is no evidence that the Fisher System was confidential, secret, private, clandestine, or otherwise not public. Plaintiff's revisionist history ignores the true facts. The overwhelming record evidence demonstrates that the Fisher System was used at 3Com, and Dr. Fisher testified that he was not aware of any evidence that the system was concealed from the public. Ex. 5 at 131:20-132:1; 138:13-17. The same is not true for the cases Plaintiff relies upon. In *Dey*, a witness testified that the prior art was "unavailable to the public" and "confidential." *Dey, L.P. v. Sunovion Pharm., Inc.*, 715 F.3d 1351, 1354 (Fed. Cir. 2013).[5] Here, there is no testimony or documentary evidence demonstrating any confidentiality. Public use of the Fisher System draws more similarity to the prior art disclosure in *Voter Verified, Inc. v. Premier Election Solutions*, where the court found that a prior art reference was sufficiently accessible to the public when it was posted online, regardless of whether it could be found using a search engine. 698 F.3d 1374 (Fed. Cir. 2012).

In addition, Plaintiff's assertion that Dr. Neikirk's testimony was unsupported and conclusory fails. Dr. Neikirk's testimony regarding the Fisher System was based on a wealth of evidence including: (1) nearly 30 minutes of detailed testimony from Dr. Fisher, (2) a lengthy telephone conversation with Dr. Fisher that was referenced during trial, (3) thorough analysis of the actual Fisher System, and (4) comparison of the Fisher System with the disclosures in the Fisher Patents. Ex. 36 (11/10 PM 14:18-15:15:17). Grasping for straws, Plaintiff quotes one sentence from *ActiveVideo* that misrepresents the holding. In *ActiveVideo*, the expert "failed to

---

[5] Plaintiff ignores the statements in *Dey* that "Even limited disclosure to those who are skilled enough to know, understand, and 'easily demonstrate the invention to others,' may mean that there was no reasonable expectation of secrecy and that the invention was therefore in public use." *Id.* at 1355–56 (citing *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1321 (Fed. Cir. 2002); *see also, Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1334 (Fed. Cir. 2005); *Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1058 (Fed. Cir. 1996) (invention was in public use when observers included "co-workers, who were under no duty to maintain . . . confidential[ity]").)

explain how specific references could be combined, which combination(s) of elements in specific references would yield a predictable result, or how any specific combination would operate or read on the asserted claims." *ActiveVideo Networks, Inc. v. Verizon Communications*, *Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012). Dr. Neikirk's testimony does not suffer any of these deficiencies. *See* Opp. at 4.

Plaintiff did not counter the clear and convincing evidence presented to the jury through Dr. Fisher's testimony, the Fisher Patents, the actual Fisher System, and HP's expert testimony. As such, Plaintiff cannot prevail as a matter of law.

## B. Plaintiff's Estoppel Argument is Contrary to Federal Circuit Authority

As HP pointed out in response and Plaintiff concedes, inclusion of the Fisher System in the obviousness combination bars Plaintiff's estoppel argument. Because the Fisher System was properly included in the prior art combination before the jury, Plaintiff's estoppel argument fails.

Contrary to Plaintiff's assertions, HP appropriately and accurately relies on the Federal Circuit's holdings in both *Shaw* and *HP*. Rather, it is Plaintiff that chooses to ignore the findings in *Shaw* and *HP* that an "IPR does not begin until it is instituted[,]" *Shaw Indus. Grp., Inc. v. Automated Creel Sys., Inc.*, 817 F.3d 1293, 1300 (Fed. Cir. 2016), and "the noninstituted grounds do not become a part of the IPR." *HP Inc. v. MPHJ Tech. Invs., LLC,* 817 F.3d 1339, 1347 (Fed. Cir. 2016). The Fisher, Chang, and Woodmas Patents were never part of an instituted IPR; thus, they could not have been raised during an IPR. As such, HP is not estopped from asserting the Fisher, Chang, and Woodmas Patents combination.

## C. Plaintiff's Silence Waived the Remainder of The Grounds

Fifth Circuit law requires a party to go beyond a bare-bones pre-verdict motion in order to meet the requirements of Rule 50(a) to "specify . . . the law and facts" that would entitle the movant to the judgment. *See, e.g., Decorte v. Jordan*, 497 F.3d 433, 438 (5th Cir. 2007) ("We caution that

Rule 50(a) motions should be far more specific [than a "bare bones" recitation of insufficient evidence], as required by Rule 50(a)(2)."). The record in this case indicates that Plaintiff was aware of this requirement, because Plaintiff's Rule 50(a) motion included detailed facts for the three issues it preserved. *See* Ex. 6 at 179:21-181:3. However, Plaintiff's Rule 50(b) motion was the first time that HP was alerted to Plaintiff's dispute related to the sufficiency of the evidence *presented at trial* to prove "low-level current," "secondary power source," "main power source," and motivations to combine the prior art. Putting the Court and HP on fair notice of the alleged evidentiary deficiencies is especially vital in this case, where the crux of Plaintiff's newly raised Rule 50(b) motion is a belated attack on HP's expert testimony to try to show deficiencies on nit issues that could easily be addressed by briefly recalling the expert.

Contrary to Plaintiff's assertion, the two cases Plaintiff relies upon do not hold that Rule 50(a) merely requires a "cursory motion." Plaintiff glosses over the fact that in *Orion* and *Blackboard* the motions were sufficient only because they were made shortly after extended discussions of the jury instructions and evidence relating to anticipation and obviousness, and it was clear from the context that neither the court nor the attorneys needed any more enlightenment about the moving party's position on those issues. *Orion IP, LLC v. Hyundia Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010); *Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1380 (Fed. Cir. 2009). Plaintiff did not put HP on notice and, thus, waived the remainder of the issues raised.

### D. There is Substantial Evidence For the Jury to Find the Patent Obvious

#### 1. The Alleged Secondary Considerations Cannot Overcome the Jury's Verdict.

Once again, Plaintiff requests this Court to impermissibly reweigh the evidence and also fails to rebut the controlling precedent cited in HP's Response. The settlement agreements that Plaintiff paraded in front of the jury hopeful that the jury would find HP "guilty" because others

paid to resolve litigation were unavailing and properly rejected by the jury. As the Federal Circuit noted in *Rothman*, which Plaintiff revealingly ignored in its Reply, the Court "must presume that the jury adequately weighed this factual evidence [of secondary considerations] and found it insufficient to support a finding of validity." *Rothman v. Target Corp.*, 556 F. 3d 1310, 1322 (Fed. Cir. 2009).

Plaintiff also distorts the amount of the settlement agreements in an attempt to paint them as something more than costs of defense settlements. The jury, however, saw the truth—the settlement agreements, while numerous, are for generally small, cost of defense amounts.



Moreover, Plaintiff again misstates the record by asserting that its "objective evidence" was undisputed. Indeed, Plaintiff's counsel questioned Dr. Neikirk regarding the objective evidence related to licenses, and Dr. Neikirk disputed Plaintiff's rational:

> Q. **One of the objective indicators of non-obviousness is whether people, companies have licensed the patent, right**?
>
> A. That's frequently one that people look at, yes.

> Q. And the reason people look at that is big companies like Dell and Samsung and Cisco, they don't go out and spend a lot of money paying royalties on a patent if it's likely the patent is obvious, true?
>
> A. I -- I wouldn't put myself in the mind of them. They -- why they might decide to take a license, I don't know.
>
> Q. Well, then explain to the jury why do we look at license agreements as an indicator of non-obviousness?
>
> A. Well, in some cases it might indicate that. **In other cases it might indicate some other reason that they took a license.**

Ex. 36 (11-10 PM at 58:6-19). The parties obviously disputed the reason that each licensee entered into an agreement to resolve its disputes with Plaintiff, and the jury was properly instructed to weigh the rational before reaching the invalidity verdict—another point that Plaintiff does not dispute. Opp. at 26; Ex. 7 at 65:18-67:3.

The Court must draw all reasonable inferences in HP's favor, "disregard[ing] all evidence favorable to the moving party that the jury is not required to believe." *Decorte*, 497 F.3d at 437. The jury considered and rejected Plaintiffs' alleged secondary considerations, which do not control the obviousness conclusion in any event. As such, Plaintiff's arguments should be rejected and the jury's verdict upheld.

### 2. The Obviousness Combination Disclosed "Low-level current"

Plaintiff's strained argument ignores Dr. Neikirk's substantive testimony (which HP clearly replicated in its Response and restates below) describing how the Woodmas Patent discloses a "low-level current" applying the Court's claim construction:

> Q. By delivering this 15mA current before full operating power is supplied and looking for a return voltage representative of the full low level current, both the presence and functionality of power delivery unit 76 are checked before full power is imposed on cable 30 [Referring to Figure 1 in Woodmas]. Do you see that?
>
> A. I do. That's –

Q. And that would be **applying Judge Schroeder's claim construction of beginning to start up the access device but insufficient to sustain start up,** as Dr. Knox [Plaintiff's expert] is applying it, right?

A. **Yes, that's correct.**

Q. Using his analysis and the way he's applying it, these patents are invalid?

A. **Yes, they are.**

Ex. 6 at 67:6-20 (emphasis added); Ex. 32 (DDX-5.32). Dr. Neikirk also directed the jury to the specific references in the Woodmas Patent where the "low-level current" is disclosed:

> output. As explained further hereinbelow, this low level 50 of output power is applied to cable 30 when power delivery unit 34 is initially energized. The second level of current limiting is for high level or operating power and conventionally includes a power field effect transistor (FET) (MTP8P10) used as a power switch and a 55 second transistor (MPSA93) which monitors the voltage drop across a resistor in series with the FET power switch as a current limiter. Detector/limiter 44 receives

Ex. 15 (Woodmas Patent) at 3:50-58.

> By limiting the output current to 15 ma., a short circuit in cable 30 causes a voltage drop which can be detected 25 safely before full operating power is imposed. As those

Ex. 15 (Woodmas Patent) at 7:24-26. Dr. Neikirk's expert testimony matched the disclosures in the Woodmas Patent with the Court's claim construction for "low-level current"—a far cry from the mere conclusory testimony Plaintiff attempts to fabricate. Rather, it is substantial evidence supporting the jury's verdict.[6] Contrary to controlling precedent, Plaintiff's ask the Court to

---

[6] HP also moves to strike Mr. Dovel's untimely declaration. Evidence outside of the record is not proper for consideration in a Rule 50(b) or Rule 59 context, and Plaintiff's attempt to create evidence that HP has no means to disprove based on the evidence and demonstrative disclosures at trial should be telling. *United States ex rel. Harman v. Trinity Indus., Inc.*, 166 F. Supp. 3d 737, 761 (E.D. Tex. 2015) (finding that facts that did not exist before the trial and were never before the jury cannot constitute any part of the analysis under Federal Rule of Civil Procedure 50(b).), rev'd on other grounds, 872 F.3d 645 (5th Cir. 2017). The

reweigh Dr. Neikirk's credibility. Plaintiff's merely highlight a factual dispute between competing experts regarding what Woodmas discloses. However, as the Federal Circuit noted in *InTouch Tech.*, a case cited by Plaintiff, the Court should "presume the jury resolved the underlying factual disputes in favor of the verdict [ ] and leave those presumed findings undisturbed" because there is "at least some evidence on the record from which [the jury] could find that [Woodmas] discloses [low-level current]. *InTouch Techs. v. VGO Comm.*, 751 F.3d 1327, 1339, 1349 (Fed. Cir. 2014).

Plaintiff also falsely asserts that Dr. Neikirk did not rely on the court's claim construction for "low-level current." First, as the transcript excerpt above demonstrates, not only did Dr. Neikirk rely on the claim construction, he applied it when determining that the asserted claims of the '930 Patent are invalid. Ex. 6 at 67:6–20. Second, in a last ditch effort to revive royalty payments, Plaintiff now suggests that it willingly put on an expert, Dr. Knox, to testify contrary to the Court's claim construction of "low-level current," which Dr. Neikirk justifiably relied upon in forming his expert opinions.[7] Reply at 10 ("But if that interpretation [Dr. Knox's interpretation] is applied, then it is no longer the Court's construction."). Again, Plaintiff improperly seeks a reweighing of the evidence—seeking to supplant the jury's fact-finding inquiry. This request is improper; however, as the record evidence demonstrates there is substantial support for the jury's conclusion that the '930 Patent is invalid.

---

trial transcript clearly indicates that Mr. Dovel showed the jury pages 43 and 44 of Dr. Davis's expert report. Ex. 4 at 94:13–18. Any unilateral attempt to contradict the record at this stage is improper and misplace.
[7] *See Deputy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 534 F. Supp. 2d 224, 227 (D. Mass. 2008) (awarding sanctions based on a party taking advantage of the complexities in a patent case by employing misleading strategies, including "essentially urg[ing] the jury to adopt an interpretation of the patent claims developed by their experts instead of the construction mandated by the Federal Circuit.").

### 3. The Obviousness Combination Disclosed "Secondary Power Source"

In a rushed attempt to discredit this Court's statements in *Cellular*, which sink Plaintiff's arguments, Plaintiff omits highly relevant language and overlooked the Federal Circuit's application of the same "some evidence" standard in *InTouch Techs.*, a case Plaintiff relies on throughout its Reply. HP correctly cited and applied the Court's holding from *Cellular*, where this Court stated:

> The common thread running through *Fresenius* and *Koito* is that the challenger must present *some evidence* to show a jury that the prior art reference anticipates the patent claims, <u>*including its corresponding structural elements*</u>.

*Cellular Commc'ns Equip., LLC v. Apple Inc.*, No. 6:14-CV-251, 2016 WL 6884076, at *4 (E.D. Tex. Aug. 30, 2016) (emphasis added). Plaintiff's Reply misleads the Court to believe that the "some evidence" standard is only applied to the disclosure of structural elements. When in fact, the Court requires "some evidence" to show an element is disclosed by the prior art, *including* structural elements. *Id.* Plaintiff cannot cite any reference limiting the "some evidence" standard to structural element disclosure. Similarly, the Federal Circuit in *InTouch Techs.* applied the same "some evidence" standard to analyze a non-structural element disclosure. *See InTouch Techs., Inc.*, 751 F.3d at 1349 (emphasis added) ("Because we must infer that the jury resolved the underlying factual disputes in favor of [the non-moving party] and *we find at least some evidence* on the record from which it could find that [the prior art] discloses the possibility of using two remote terminals, we proceed on the assumption that it does."). In addition, Plaintiff concedes that "[i]t is for the jury to decide whether in fact what the experts reference is sufficient to render the claims invalid." *Cellular*, 2016 WL 6884076, at *4.

HP presented evidence through Dr. Neikirk that the Chang Patents disclose the "secondary power source" element and the "controlling" element, which includes the "secondary power

source" limitation.  *See* Ex. 6 at 27:23–31:1; Exs. 17, 20, and 32.  Plaintiff once again asks the Court to improperly reweigh the evidence[8]—taking on the jury's responsibility as fact-finder. Drawing all reasonable inferences in favor of HP, the Court should deny Plaintiff's belated request to enter judgment of non-obviousness.

### 4.  The Obviousness Combination Disclosed "Main Power Source"

Once again, Plaintiff ignores the full trial record and confuses the fact that HP presented an obviousness defense, not anticipation.  Plaintiff's assertion that Dr. Neikirk "never offered this opinion" that one of ordinary skill would modify Fisher's/Chang's network hub to include Woodmas' "low-level current" power source is blatantly false.  As Dr. Neikirk meticulously walked through the obvious combination he stated:

> "So we'll take the power delivery unit [from Woodmas] and put it
> in the hub [from Chang]."

Ex. 6 at 35:19–20.  Dr. Neikirk could not have been clearer—he combined the two separate power sources (the network hub from Chang and the power delivery unit from Woodmas) and put them together to create a single power source, the "main power source."  Moreover, Plaintiff's hypertechnical assertion that an obvious combination requires physical substitution of elements from the separate prior art references is contrary to law.  *See, e.g.*, *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012) ("It is well-established that a determination of obviousness based on teachings from multiple references does not require an actual, physical substitution of elements.").

Plaintiff's argument is without merit.  The Court should deny Plaintiff's request to enter judgment of non-obviousness.

---

[8] Plaintiff assertion that Dr. Neikirk never used DDX-5.27 is a red herring.  Dr. Neikirk testified about the disclosures in the Chang Patents, including a source of power providing power from the network hub [data node] to the presence detector [access device] using network wiring, and used demonstratives to help convey his testimony to the jury.  Ex. 6 at 28:5-31:1.

### E. Dr. Neikirk Provided a Detailed Motivation to Combine the Prior Art References

Plaintiff cannot dispute that Dr. Neikirk, using six different detailed demonstratives slides, testified for nearly four pages in the trial transcript and walked the jury through the motivations to combine the Fisher System, Fisher Patents, Chang Patents, and Woodmas Patent. *See, e.g.*, *Biscotti, Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG, Dkt. No. 333 (E.D. Tex. Mar. 23, 2018) ("Further, while the demonstrative itself is not evidence, *[the expert's] testimony properly employing the demonstrative as a jury aid is evidence . . . .*") (emphasis added). As detailed in HP's Response, Dr. Neikirk meticulously tied each piece of the prior art together with the reason why a person of ordinary skill would make the improvement. Opp. at 22–24. As Plaintiff concedes, there is no rigid test that requires an actual teaching to combine and that sometimes the question comes down to common sense. *See Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1291 (Fed. Cir. 2006) ("There is flexibility in our obviousness jurisprudence because a motivation may be found *implicitly* in the prior art. We do not have a rigid test that requires an actual teaching to combine . . . ."); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 (Fed. Cir. 2010) ("[T]he ultimate inference as to the existence of a motivation to combine references may boil down to a question of 'common sense' . . . .").

Given the overwhelming evidence demonstrating the interrelation of the prior art, the Court should reject Plaintiff's argument and not overturn the jury's finding of invalidity.

## II. PLAINTIFF'S RULE 59 REQUEST FOR NEW TRIAL SHOULD BE DENIED

### A. Plaintiff's Late Complaints of Jury Confusion and Improper Closing Statements Lack Merit

Plaintiff does not contest the Fifth Circuit's holding in *Nissho-Iwai* that failure to object to the impropriety of closing statements bars a party "'from urging the improper arguments as grounds for a new trial after the jury had returned its verdict.'" *Nissho–Iwai Co. v. Occidental*

*Crude Sales, Inc.*, 848 F.2d 613, 619 (5th Cir.1988) (citing *Computer Sys. Eng'g, Inc. v. Qantel Corp.*, 740 F.2d 59, 69 (1st Cir. 1984)).[9]  This is fatal to Plaintiff's arguments regarding the Cummings Patent and Mr. Godici's testimony.  Similarly, Plaintiff concedes that a request for new trial under Rule 59 should be denied if any basis of invalidity is supported.  *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1339 (Fed. Cir. 2011) ("A failure of proof with respect to any single item of evidence does not justify a grant of either JMOL or a new trial.").  Again, this is fatal to Plaintiff's arguments regarding the Fisher System.  Plaintiff has not demonstrated that the jury's verdict is against the great weight of the evidence; therefore, the motion for new trial should be denied.

## 1. The Cummings Patent was Properly Referenced in Closing with Other Prior Art Showing Early Detection Methods.

The Cummings Patent, issued on April, 11 1995, unquestionably discloses a method for detecting the presence of remote equipment.  Ex. 35 [DX146] ("A system and method are provided for monitoring the connection of electronic equipment, such as remote computer workstations, to a network via a communication link and detecting the disconnection of such equipment from the network.")  It was admitted into evidence without objection.  Ex. 36 at 186:1–4).  It was shown to and discussed with HP's expert, without objection.  Ex. 4 at 16:3–17:5).  And, it was properly discussed during HP's closing statements, without objection.  Ex. 38 at 131–132.)  Why did Plaintiff not object?  Because the Cummings Patent was properly presented to the jury in order to describe the state of the art during the relevant time period.  *See, e.g., Thomas & Betts Corp. v.*

---

[9] Plaintiff's citation to *LaserDynamics* and *Commil* are misplaced.  In *LaserDynamic*, the court was faced with whether it was error to let the entire market value rule go to the jury.  There, the court found that it could properly correct the legal error even though it was waived.  *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).  Plaintiff does not assert any such legal error in this instance.  In *Commil*, the court was faced with a request for new trial based upon statements regarding the religious preference of the owner and inventor of the patent-in-suit.  *Commil USA, LLC v. Cisco Sys., Inc.*, 2:07-cv-341, 2010 WL 11484496 (E.D. Tex. Dec. 29, 2010).  This issues Plaintiff raises are not comparable.

*Litton Sys.*, Inc., 720 F.2d 1572, 1581 (Fed. Cir. 1983) ("Thus, the [manuals], though not technically prior art, were, in effect, properly used as indicators of the level of ordinary skill in the art to which the invention pertained."); *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) ("Often, it will be necessary for a court to look to interrelated teachings of multiple patents; . . . and the background knowledge possessed by a person having ordinary skill in the art, all in order to determine whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue.").  For Plaintiff to assert that it was presented as something more than state of the art again ignores the full trial record.  Dr. Davis's testimony properly describing the state of the art during the relevant period, included a discussion of the Cummings Patent:

> Q. Did the '930 patent inventor invent the idea of doing detection of remote equipment over Ethernet lines?
>
> A. No, they did not.
>
> Q. Is there something you're aware of, some prior work that you're aware of that touched on that?
>
> A. Yes, sir. I showed on the next slide a patent issued to Cummings.
>
> * * *
>
> Q. Okay. Now, in light of all that background, all this other prior art we've been talking about, what is it, in your view, that the '930 patent did contribute to the **state of the art** with their '930 patent invention?
>
> A. It's my opinion that the '930 patent contributed a very narrowly defined different way of performing the detection step.

Ex. 4 at 16:3–9; 17:8–-14) (emphasis added).  This testimony, which Plaintiff did not object to, was properly incorporated into HP's closing argument in a similar discussion of the state of the art.  HP did not present any new facts during the closing argument—Dr. Davis's testimony and the

Cummings Patent were in evidence and properly included in closing statement. Plaintiff's argument to the contrary ignores the full transcript and should be rejected.

### 2. Mr. Godici's Testimony was Properly and Accurately Included in Closing.

Plaintiff's Reply simply rehashes the belated arguments presented in its Motion, which HP dispelled. Mr. Godici presented testimony regarding the abundance of prior art considered by the PTO, included a list of 26 different patents that Plaintiff introduced. Ex. 5 at 66:21–24, 78:1–5, 70:21–72:15, 106:3–18; Ex. 12 (P253). Plaintiff did not object.

Nothing new was raised in HP's closing statement. Mr. Godici's testimony along with the abundance of art presented to the jury support counsel's truthful statements. Therefore, Plaintiff is not prejudiced by the statements and a new trial is not warranted.

### 3. The Jury's Verdict Is Supported by the Great Weight of Evidence and the Fisher System is Prior Art.

Faced with the reality that it cannot demonstrate the jury's verdict is against the great weight of evidence, Plaintiff clutches to its failed arguments relating to the Fisher System. For all of the reasons stated in HP's Response, Plaintiff's request for a new trial on these grounds should be denied.

## III. CONCLUSION

For the reasons stated here and in HP's Response, HP respectfully requests that the Court deny Plaintiff's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial on Validity.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Joshua R. Thane
Texas Bar No. 24060713
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: jthane@haltomdoan.com

Hersh H. Mehta
IL Bar No. 6306586
McDermott Will & Emery LLP
444 West Lake Street
Chicago, IL 60606-0029
Telephone: (312) 372-2000
Facsimile: (312) 984-7700
hmehta@mwe.com

Jodi Benassi
CA Bar No. 309048
McDermott Will & Emery LLP
275 Middlefield Road, Suite 100
Menlo Park, CA 94025
Telephone: (650) 815-7415
Facsimile: (650) 815-7401
Email: jbenassi@mwe.com

Natalie A. Bennett
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 758-8000
Email: nbennett@mwe.com

Mark E. Ferguson
IL Bar No. 6185448
Mark S. Ouweleen
IL Bar No. 6231188
Faye E. Paul
IL Bar No. 6306719
Bartlit Beck Herman Palenchar & Scott
LLP
54 W. Hubbard Street, Ste. 300
Chicago, IL 60654
Telephone: (312) 494-4400
Facsimile: (312) 494-4440
Email: mark.ferguson@bbhps.com
Email: mark.ouweleen@bbhps.com
Email: faye.paul@bbhps.com

**ATTORNEYS FOR DEFENDANTS
HEWLETT-PACKARD COMPANY
AND HEWLETT PACKARD
ENTERPRISE COMPANY**

## CERTIFICATE OF SERVICE

The undersigned certifies all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 30th day of March, 2018.

*/s/ Jennifer H. Doan*
Jennifer H. Doan