**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| NETWORK-1 TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>HEWLETT-PACKARD COMPANY, HEWLETT PACKARD ENTERPRISE COMPANY,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL ACTION NO. 6:13-CV-00072-RWS** |

**ORDER**

Before the Court is Plaintiff Network-1 Technologies, Inc.'s ("Network-1") Motion for Judgment as a Matter of Law or New Trial (Docket No. 99). For all the reasons set forth below, Network-1's motion is **GRANTED-IN-PART** and **DENIED-IN-PART**. The Court denies Network-1's request for judgment as a matter of law but grants its request for a new trial. The Court **SETS** this case for trial to begin August 2, 2021, at 9 a.m. in Tyler, Texas.

## I. BACKGROUND

In 2011, Network-1 sued Hewlett-Packard Company, Hewlett Packard Enterprise Company (collectively, "HP") and several other defendants for infringing U.S. Patent No. 6,218,930 (the "'930 patent").[1] The Court severed the cases, with Network-1 ultimately trying its infringement claims against HP in November 2017.

[1] The '930 patent relates to power over ethernet. At a general level, it allows a device to automatically determine whether a remote device can accept remote power over ethernet.

HP prevailed at trial. The jury found that HP did not infringe the asserted claims and that the claims were invalid as obvious. After trial, the Court denied Network-1's motion for a new trial on infringement but granted its request for judgment as a matter of law ("JMOL") on validity. Docket No. 151. Both parties appealed, with the Federal Circuit ultimately vacating this Court's judgment of non-infringement and the JMOL on validity.

**A. This Court's Post-Trial Order**

At trial, HP presented a single invalidity theory—that the '930 patent was invalid as obvious by combining four references: (1) the Fisher system, (2) the Fisher patents, (3) Woodmas and (4) Chang. Docket No. 84 (11/13/17 Trial Tr.) at 63:15–17. After trial, the Court granted JMOL in Network-1's favor and overturned the jury's invalidity verdict based on two findings. First, the Court held that HP had not shown that the Fisher system was prior art. Docket No. 151 at 6–10. HP failed to prove that the system was publicly available before the '930 patent's priority date or to corroborate the testimony of the system's creator, David Fisher. *Id*. at 6–14. As such, from HP's original invalidity theory, only three references remained (the Fisher patents, Woodmas, and Chang).

Second, because those three remaining references were printed publications, the Court found that 35 U.S.C. § 315(e)(2)'s estoppel provision precluded HP from presenting an invalidity theory based on those references. Docket No. 151 at 15–18. That provision precludes an *inter partes* review ("IPR") petitioner from asserting in a district court that a patent claim is invalid "on any ground that the petitioner raised or reasonably could have raised" during an unsuccessful IPR challenge. 35 U.S.C. § 315(e)(2). HP had joined an IPR initially filed by another defendant (Avaya), with the Patent Trial and Appeal Board ("PTAB") ultimately finding the claims not invalid. In its JMOL ruling, the Court found that HP could have raised its invalidity theory based

on the Fisher patents, Woodmas, and Chang during the IPR and so it was estopped from pursuing that challenge in this case. Docket No. 151 at 18.

After trial, Network-1 also sought a new trial on infringement, claiming that the jury's verdict was against the great weight of the evidence. Specifically, Network-1 contended that (1) a finding that HP's detection current is not a "low level current" would be against the great weight of the evidence and (2) a finding that no HP accused product used a "main power source" would be against the great weight of the evidence. The Court rejected both arguments and denied Network-1's motion for a new trial on infringement. Docket No. 151 at 19–24. It then entered judgment of non-infringement. Docket No. 153.

**B. The Federal Circuit's Decision**

On appeal, the Federal Circuit vacated the Court's judgment of non-infringement. *Network-1 Techs., Inc. v. Hewlett-Packard Co.*, 981 F.3d 1015, 1023–26 (Fed. Cir. 2020). The Federal Circuit held that the Court erroneously construed the term "main power source" by excluding AC power sources. *Id*. at 1023–25. The Federal Circuit instructed that "neither the claims nor the specification of the '930 patent require a departure from [the] ordinary meaning" of main power source, which "includes both AC and DC power sources." *Id*. at 1024. It thus "vacate[d] the district court's judgment of non-infringement and remand[ed] for a new trial to determine whether HP infringes the asserted claims based on the correct construction of 'main power source.' " *Id*. at 1022.

The Federal Circuit also vacated this Court's decision granting JMOL for Network-1 on validity. *Id*. at 1026–28. It held that the Court misapplied 35 U.S.C. § 315(e)(2)'s estoppel provision because HP only joined Avaya's IPR and was unable to raise additional grounds for invalidating the '930 patent. *Id*. It concluded "that HP was not statutorily estopped under § 315(e)

from challenging the asserted claims of the '930 patent based on the Fisher patents, Woodmas, and Chang, which were not raised in the Avaya IPR and which could not have reasonably been raised by HP." *Id*. at 1027.

In vacating this Court's ruling on Network-1's invalidity JMOL, the Federal Circuit recognized that Network-1 raised additional grounds for JMOL or a new trial on validity. The Federal Circuit declined to rule on those additional grounds in the first instance. *Id*. at 1028. It thus "remand[ed] to the district court for further proceedings consistent with [its] opinion, which include[s] ruling in the first instance on Network-1's entitlement to JMOL (notwithstanding this court's holding on estoppel) and its new-trial motion." 981 F.3d at 1028. The Court rules on Network-1's additional grounds for JMOL or a new trial on validity now.

## II. LEGAL STANDARD

Judgment as a matter of law is only appropriate when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). The Court will "uphold a jury verdict unless the facts and inferences

point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary." *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001); *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 296 (5th Cir. 2005). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007) (citing *Laxton v. Gap, Inc.*, 333 F.3d 572, 577 (5th Cir. 2003)).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that [the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013). Although the court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001). However, a court may not make credibility determinations or weigh the evidence, as those are solely functions of the jury. *See id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)). The Court gives "credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Arismendez*, 493 F.3d at 606.

Under Federal Rule of Civil Procedure 59(a), a new trial may be granted on any or all issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Federal Circuit reviews the question of a new trial under the law of the regional circuit. *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1347 (Fed. Cir. 2007). The court can grant a new trial "based on its appraisal of the fairness of the trial and the reliability of the jury's verdict." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985). "Courts grant a new trial when it is reasonably clear that prejudicial error has crept into

the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distributing, Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith*, 773 F.2d at 612–13. The decision to grant or deny a new trial is committed to the sound discretion of the district court. *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980). "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great not merely the greater weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980).

## III. ANALYSIS

With the case back from appeal, Network-1 continues to seek JMOL or a new trial on validity. Docket Nos. 99, 201. The Court finds that a new trial is appropriate.

### A. New Trial

Network-1 presents three grounds for a new trial: (1) evidence of the Fisher system should have been excluded and its inclusion prejudiced Network-1; (2) the jury's verdict was against the great weight of the evidence; and (3) HP made improper closing arguments.

On the first ground, Network-1 relies on the Court's post-trial order finding that HP failed to corroborate the testimony of the Fisher system's creator, David Fisher, and to prove the Fisher system was prior art. Network-1 says that because that system was not prior art and Mr. Fisher's testimony was uncorroborated, neither should have been presented to the jury. Docket No. 201 at 26–29; Docket No. 99 at 29–30. Network-1 contends that the inclusion of this evidence was so prejudicial as to warrant a new trial. *Id.*

HP disagrees. It argues that even though the Fisher system was not prior art, it was still admissible because it had the tendency to make a consequential fact more probably—*i.e.*, that certain limitations were present in the prior art. Docket No. 202 at 19. HP also says that even if the Fisher system was not admissible, Network-1 was not prejudiced by its admission because the remaining prior art references render the '930 patent invalid on their own. Docket No. 202 at 19–22.

A new trial is appropriate here because Network-1 suffered substantial prejudice from HP's reliance on Mr. Fisher's testimony and the Fisher system at trial. The party seeking a new trial based on an erroneous evidentiary ruling has the burden of proving that the error prejudiced a substantial right of that party. *See Munn v. Algee*, 924 F.2d 568, 571 (5th Cir. 1991). Here, Network-1 had the right to a jury determination on validity that did not include a legally inadequate theory. *Griffin v. United States*, 502 U.S. 46, 59 (1991); *Northpoint Tech., Ltd. v. MDS Am., Inc.*, 413 F.3d 1301, 1311–12 (Fed. Cir. 2005). It is undisputed that an obviousness finding based on Mr. Fisher's uncorroborated testimony, or the Fisher system more generally, is legally inadequate. HP failed to prove that the system was publicly available before the '930 patent's priority date. Docket No. 151 at 6–10. And despite presenting video deposition testimony from Mr. Fisher, it failed to corroborate that testimony. Docket No. 10–14 (quoting *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998) ("Throughout the history of the determination of patent rights, oral testimony by an alleged inventor asserting priority over a patentee's rights is regarded with skepticism, and as a result, such inventor testimony must be supported by some type of corroborating evidence.")). HP did not appeal the Court's finding that Mr. Fisher's testimony was uncorroborated or that HP failed to show the Fisher system was publicly available before the '930 patent's priority date. Docket No. 201-2 (HP's Opening Federal Circuit Brief) at 62, n.2.

Contrary to HP's assertions, neither Mr. Fisher's testimony nor the Fisher system itself should have been before the jury. HP claims that "[e]vidence of the Fisher System overcomes the 'low' bar of relevance as it has at least a 'tendency' to make a consequential fact (presence of certain limitations in the prior art) more probable." Docket No. 202 at 19. HP says the Federal Circuit's decision in *Thomas & Betts Corp. v. Litton Sys., Inc.*, 720 F.2d 1572, 1581 (Fed. Cir. 1983), would have allowed the Fisher system evidence to go to the jury here. In that case, the court held that references, "though not technically prior art," were "properly used as indicators of the level of ordinary skill in the art to which the invention pertained." *Id*. But HP used the Fisher system for far more than establishing the level of ordinary skill in the art. It used it as an invalidating reference in its sole obviousness combination.

That distinction makes a world of difference. The precise date on which a reference was publicly available matters less when determining the level of ordinary skill in the art, as the level of skill is unlikely to change significantly from one day to the next. In contrast, the precise date on which potential prior art was publicly available can be the difference between a valid and invalid patent. Here, to the extent that the Fisher system evidence had any relevance to the case, it was outweighed by its prejudicial effect and it should have been excluded. FED. R. CIV. P. 403.

HP next argues that the Fisher system's inclusion was harmless because the Fisher patents covered the same material. Docket No. 202 at 19–21. In making that argument, HP effectively claims that it presented a second obviousness combination to the jury based on the Fisher patents, Woodmas, and Chang by themselves.

HP says that in this scenario *Northpoint Tech.,* 413 F.3d at 1311, requires the Court to uphold the jury's invalidity finding because there was a factually sufficient basis for that finding. In *Northpoint*, the defendants used five different prior art references to prove anticipation under

35 U.S.C. § 102. In its post-trial motion, the plaintiff argued that a failure of proof for one of the prior art references necessitated a new trial. The Federal Circuit rejected the plaintiff's argument because the five prior art references were separate factual bases for the jury to consider regarding a single legal theory—anticipation. Thus, even if one factual basis failed, there were still four others that supported the jury's finding. And where a jury's general verdict rests on several different factual grounds and one of those grounds is later shown to be inadequate, a reviewing court should assume the jury's decision was based on a factually sufficient theory.

Here, HP presented a single factual theory to support its legal theory of obviousness. HP represented to the Court that its sole ground for obviousness was a combination of the Fisher system, the Fisher patents, Woodmas, and Chang. Docket No. 82 (11/10/17 AM Trial Tr.) at 94:18–95:4 ("[O]ur combination is not Fisher, Chang, and Woodmas on the patents only. . . . Ours is . . . the Fisher system, Fisher, Chang, and Woodmas. . . . That was [how] we charted it. That's how we presented the defense from the beginning."). And HP's expert, Dr. Neikirk, told the jury that he was relying on the combination of "the Fisher system, the three Fisher patents, the Chang patents and Woodmas" in his obviousness analysis. Docket No. 83 (11/10/17 PM Trial Tr.) at 34:2–6 ("Q. Tell us about this combination. Is this what you're combining, all three of them together? A. So I'm combining the Fisher system, the three Fisher patents, the Chang patents and Woodmas."). HP never presented any other obviousness combination to the jury.[2]

HP claims otherwise by pointing to a single demonstrative slide that Dr. Neikirk discussed in front of the jury titled "Fisher/Chang/Woodmas Combination":

[2] "[A] subset of an obviousness combination constitutes a different combination. That is to say, obviousness combination A+B+C+D is not the same as the combination A+B." *Finjan, Inc. v. Proofpoint, Inc.*, Case No. 13-cv-5808-HSG, 2015 WL 9460295 at *1-2 (N.D. Cal. Dec. 23, 2015).




Docket No. 111-33 at DDX-5.40. According to HP, this demonstrative "illustrated that the Fisher/Chang/Woodmas combination, by itself, meets all of the claim limitations[.]" Docket No. 202 at 21.

HP's argument fails for several reasons. First, demonstratives are not evidence. *See* Docket No. 68 (Final Jury Instructions) at 5 ("The attorneys have used slides and other visual aids, sometimes referred to as 'demonstrative exhibits,' while presenting or examining a witness. Demonstrative exhibits are not evidence."). HP does not cite any testimony from Dr. Neikirk or anyone else that submitted to the jury an obviousness combination without the Fisher system. Also, just a few slides earlier, Dr. Neikirk illustrated that when using the shorthand "Fisher/Chang/Woodmas Combination," the term "Fisher" referred to both the Fisher system and the Fisher patents:




Docket No. 111-33 at DDX-5.35.

HP centered its invalidity case on the Fisher system. The system sat on counsel table throughout the trial, HP referenced it repeatedly in both its opening and closing statements and HP explored it in depth via expert testimony. Docket No. 74 (11/6/17 Trial Tr.) at 202:13–203:24 ("We have the original product from Mr. Fisher. It's here on the table . . . ."), 210:8–16, 217:24–218:4 ("In this particular case the prior art of the Fisher system has never been reviewed by the Patent Office, ever. You're the first group of people to listen to all this evidence in combination. They have never seen it."), 218:20–219:9 ("We also have the Fisher system that was in 1996. . . . We want you to consider all this art together and you will see that this patent is invalid."); Docket No. 83 (11/10/17 PM Trial Tr.) at 15:6–17, 19:21–25, 23:1–24:5, 34:2–19); Docket No. 84 (11/13/17 Trial Tr.) at 124:13–126:8 ("So Patent Offices can make mistakes. We wish they didn't. But more importantly, it can only be as good as the information that's presented to the Patent Office. And the Fisher system and the combination that you heard has never been presented to the Patent Office."). The system went to the jury room during deliberations and HP urged the jury to

look at it further. Docket No. 84 (11/13/17 Trial Tr.) at 124:22–125:18. HP also conceded that the Fisher system covered specific gaps in the prior art, including gaps in the Fisher patents. Docket No. 74 (11/6/17 Trial Tr.) at 210:8–16 ("I will tell you that the '998 patent does not cover detection. That has to be covered through something else. But the 1996 system did."). In these circumstances, where the Fisher system and the uncorroborated testimony of its creator should not have been before the jury, a new trial is appropriate.[3]

**B. JMOL**

Network-1 asks the Court to go further than granting a new trial by also seeking JMOL on invalidity. It says JMOL is appropriate because: (1) HP failed to present sufficient evidence on the "low level current" element, (2) HP failed to present sufficient evidence on the "secondary power source" element, (3) HP did not show any motivation to combine the prior art references and (4) objective considerations of non-obviousness, such as licenses with third parties, preclude an obviousness finding. Docket No. 99 at 11–27; Docket No. 201 at 3–26.

Network-1 waived all but one of these arguments by not raising them via a Rule 50(a) motion during trial.[4] The Federal Circuit in *Medisim Ltd. v. BestMed, LLC* described Rule 50's two-step process for challenging the sufficiency of the evidence:

> Federal Rule of Civil Procedure 50 sets forth the procedural requirements for challenging the sufficiency of the evidence in a civil jury trial and establishes two stages for such challenges. Rule 50(a) allows a party to challenge the sufficiency of the evidence prior to submission of the case to the jury. Rule 50(b), by contrast, sets forth the procedural requirements for renewing a sufficiency of the evidence challenge after the jury verdict. These two provisions are linked together, as a

[3] Having concluded that a new trial is warranted based on the inclusion of the Fisher system and testimony of Mr. Fisher, the Court declines to address Network-1's additional grounds for new trial.

[4] As discussed below, in its Rule 50(a) motion, Network-1 argued that HP's expert conceded that the "low level current" element was missing in the prior art. *See* Docket No. 83 (11/10/17 PM Trial Tr.) at 180:21–181:3. Network-1 thus preserved that argument.

> motion under Rule 50(b) is not allowed unless the movant sought relief on similar grounds under Rule 50(a) before the case was submitted to the jury.

758 F.3d 1352, 1355–56 (Fed. Cir. 2014) (internal quotations and citations omitted). Network-1's Rule 50(b) motion improperly exceeds the scope of its Rule 50(a) motion.

Network-1 argues that Rule 50(a) motions are construed liberally and that it broadly moved for JMOL based on insufficient evidence at the close of evidence. Docket No. 116 at 6–9; Docket No. 201 at 10–11, 19–21. The record belies that argument. As the basis for its current Rule 50(b) motion, Network-1 relies entirely on the following Rule 50(a) motion at trial:

> There's another basis, that HP's entire validity case should be rejected as a matter of law. Their own expert admitted that applying the Court's claim construction correctly, there is -- that the combination doesn't render the patent obvious.
>
> Given that admission, there's not sufficient evidence for which any reasonable jury could conclude that the patent is obvious.

Docket No. 83 (11/10/17 PM Trial Tr.) at 180:21–181:3.

In that Rule 50(a) motion, Network-1 argued that HP's invalidity expert, Dr. Neikirk, admitted that the Court's claim construction precluded an obviousness finding. Network-1 now attempts to expand that 50(a) motion to encompass several additional reasons why the jury's invalidity decision lacked sufficient evidence. Docket No. 201 at 6–26. That is impermissible. Network-1 based its pre-verdict JMOL on an alleged concession from Dr. Neikirk, not that the prior art failed to teach or suggest any claim limitation (as Network-1 now argues).

Network-1 asks the Court to overlook any deficiencies in its Rule 50(a) motion because the Fifth Circuit construes such motions "liberally." Docket No. 201 at 11, 19 (quoting *Orion IP, LLC v. Hyundai Motor Am.*, 605 F.3d 967, 973 (Fed. Cir. 2010)). But even the most liberal construction cannot save Network-1's motion here. In *Duro-Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1107 (Fed. Cir. 2003), the Federal Circuit (applying Fifth Circuit law) explained that a trial court cannot overlook a lack of specificity in a Rule 50(a) motion. "In view of a litigant's

Seventh Amendment rights, it would be constitutionally impermissible for the district court to re-examine the jury's verdict and to enter JMOL on grounds not raised in the pre-verdict JMOL." *Duro-Last*, 321 F.3d at 1107 (citing *Morante v. Am. Gen. Fin. Ctr.*, 157 F.3d 1006, 1010 (5th Cir. 1998)). Network-1's Rule 50(a) motion did not sufficiently alert HP to the currently alleged deficiencies in its obviousness defense. That lack of notice is dispositive. *Duro-Last*, 321 F.3d at 1107.

Network-1 did, however, preserve the specific argument that it made in its Rule 50(a) motion—that HP's expert allegedly admitted non-obviousness. Docket No. 201 at 4–6. That argument fails though because Network-1 reads too much into Dr. Neikirk's alleged admission. During his deposition, Dr. Neikirk testified that, based on his understanding of the Court's claim construction, the '930 patent was not invalid. Docket No. 83 (11/10/17 PM Trial Tr.) at 45:14–46:3. But at trial, he clarified that his understanding of the claim construction also precluded an infringement finding. *Id*. at 67:6–20. So, Dr. Neikirk's position was essentially that under his interpretation, HP wins on infringement but loses on validity. But Dr. Neikirk was also adamant that if the jury disagreed and instead applied the Court's claim constructions in the same way that Network-1's expert (Dr. Knox) applied them on infringement, then the patent was invalid. *Id*. Based on this "argument in the alternative," the jury had a sufficient basis for its invalidity determination. JMOL is thus inappropriate.

Lastly, even if Network-1 was entitled to relief under Rule 50(b), the Court finds that a new trial would be appropriate rather than entering judgment in Network-1's favor on invalidity. Rule 50(b) permits the Court to order a new trial rather than direct the entry of judgment as a matter of law. FED. R. CIV. P. 50(b)(2) and (3) ("In ruling on the renewed motion, the court may: . . . (2) order a new trial; or (3) direct the entry of judgment as a matter of law.") (emphasis added). The

Federal Circuit has ordered this Court to conduct a new trial on infringement. *Network-1*, 983 F.3d at 1022 ("We therefore vacate the district court's judgment of non-infringement and remand for a new trial to determine whether HP infringes the asserted claims. . . ."). As the parties and the Court will be completing substantial work to prepare the infringement case for trial, fairness and judicial efficiency would warrant trying HP's invalidity defense too. That is particularly true here because the Federal Circuit has modified the Court's claim constructions and clarified the scope of IPR estoppel. Thus, had Network-1 prevailed on its Rule 50(b) motion, the appropriate relief would be a new trial, not judgment as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, it is

**ORDERED** that Network-1's Motion for Judgment as a Matter of Law or New Trial (Docket No. 99) is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is further

**ORDERED** that the parties shall prepare and submit a joint motion attaching a joint proposed docket control order within the time periods contained in the schedule below. Furthermore, it is

**ORDERED** that the following schedule of deadlines shall be incorporated into the proposed docket control order:

| | |
|---|---|
| Jury Trial | *August 2, 2021, immediately following jury selection in Tyler, Texas |
| Jury Selection | *August 2, 2021, at 9:00 a.m. in Tyler, Texas |
| Pre-trial Conference | *July 14, 2021, at 10:00 a.m. in Texarkana, Texas |
| Dispositive Motion Deadline | *June 17, 2021 (responses due July 1, 2021; replies due July 8, 2021) |
| File Proposed DCO | May 14, 2021 |

**So ORDERED and SIGNED this 7th day of May, 2021.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE